**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
Alexander Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
John M. Lyons (*pro hac vice*)
James Keyte (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: (212) 446-2332
jlyons@bsfllp.com
jkeyte@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Joshua Michelangelo Stein, CA Bar No. 298856
Margaux Poueymirou, CA Bar No. 356000
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
brichardson@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

**LAW OFFICES OF LINGEL H. WINTERS**
Lingel H. Winters, CA Bar No. 37759
A Professional Corporation
2900 Shasta Rd.
Berkeley, California 94708
sawmill2@aol.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JAMES ATTRIDGE, ZACHARY CROWELL, CHRISTOPHER WEBER, and TRACY ROSENBERG, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:25-cv-02775-RFL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

INTRODUCTION ........ 1
ARGUMENT ........ 4
I. LEGAL STANDARD ........ 4
II. PLAINTIFFS PLEAD ANTITRUST STANDING ........ 4
A. Plaintiffs Plausibly Allege Antitrust Injury Based on a Lack of Compensation ........ 4
B. Plaintiffs Plausibly Allege Antitrust Injury Based on a Lack of Privacy Protections and Reduced Advertising ........ 7
C. Google's Assertion That the BFW is Implausible is Incorrect and Premature ........ 8
D. Plaintiffs Plausibly Allege Other Antitrust Standing Factors ........ 11
III. PLAINTIFFS' CLAIMS ARE TIMELY ........ 12
A. Google's Statute of Limitations Defense Fails ........ 13
B. Google's Laches Defense Fails Again ........ 17
IV. PLAINTIFFS PLAUSIBLY ALLEGE TWO STATE LAW CLAIMS ........ 18
V. THERE IS NO BASIS FOR ANY STAY ........ 20
VI. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE ........ 20

# TABLE OF AUTHORITIES

## Cases

*A.J. v. LMND Med. Grp., Inc.*,
No. 23-CV-03288-RFL, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) .................................... 19

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) .................................................................................................11

*Arcell v. Google LLC*,
744 F. Supp. 3d 924 (2024) ............................................................................................. 4, 5, 20

*Arcell v. Google LLC*,
No. 22-CV-02499-RFL, 2025 WL 210877 (N.D. Cal. Jan. 16, 2025) ................................ passim

*Aryeh v. Canon Bus. Sols., Inc.*,
55 Cal. 4th 1185 (2013) ...................................................................................................... 17-18

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ................................................................................................................. 12

*Azurity Pharms., Inc. v. Bionpharma Inc.*,
650 F. Supp. 3d 269 (D. Del. 2023) ..........................................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................... 4

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) .................................................................................................. 10

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ................................................................... 13, 17, 18

*Brown v. Google LLC*,
No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .................................. 18

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ..............................................................................................................8, 11

*Carrillo v. Lowe's Home Ctrs., LLC*,
No. 2:24-CV-01215-DAD-SCR, 2025 WL 950324 (E.D. Cal. Mar. 28, 2025) ......................... 20

*Chamberlin v. BNSF Ry. Co.*,
No. 22-CV-00005-RS, 2022 WL 717818 (N.D. Cal. Mar. 10, 2022) ....................................... 17

*City of Oakland v. Oakland Raiders*,
20 F.4th 441 (9th Cir. 2021) .................................................................................................... 12

*Clinton v. Jones*,
520 U.S. 681 (1997) .......... 20

*Columbia Steel Casting Co., Inc. v. Portland Gen. Elec. Co.*,
111 F.3d 1427 (9th Cir. 1996) .......... 15

*Copeland v. Energizer Holdings, Inc.*,
716 F. Supp. 3d 749 (N.D. Cal. 2024) .......... 10, 11, 12

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
150 F.4th 1056 (9th Cir. 2025) .......... 18

*Crowder v. LinkedIn Corp.*,
No. 22-cv-00237-HSG, 2024 WL 1221956 (N.D. Cal. Mar. 21, 2024) .......... 10-11

*Doe I v. Google LLC*,
No. 23-CV-02431-VC, 2025 WL 1616720 (N.D. Cal. June 6, 2025) .......... 19

*Doe v. GoodRx Holdings, Inc.*,
No. 23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 18, 19

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) .......... 18

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 19

*Federated Indians of Graton Rancheria v. United States Dep't of the Interior*,
No. 24-CV-08582-RFL, 2025 WL 2522376 (N.D. Cal. Sept. 2, 2025) .......... 20

*Feitelson v. Google Inc.*,
80 F. Supp 1019 (N.D. Cal 2015) .......... 10

*Floyd v. Am. Honda Motor Co., Inc.*,
966 F.3d 1027 (9th Cir. 2020) .......... 20

*Free FreeHand Corp. v. Adobe Sys. Inc.*,
852 F. Supp. 2d 1171 (N.D. Cal. 2012) .......... 15

*Gamboa v. Apple Inc.*,
No. 24-cv-01270-EKL, 2025 WL 660190 (N.D. Cal. Feb. 28, 2025) .......... 14-15

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
352 F.3d 367 (9th Cir. 2003) .......... 11-12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
Nos. 06-MDL-1775 (JG)(VVP) & 10-CV-639 (JG)(VVP), 2010 WL 10947344 (E.D.N.Y. Sept. 22, 2010) .......... 15

*In re Animation Workers Antitrust Litig.*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015) ........ 13, 16, 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ........ 19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 19

*In re Glumetza Antitrust Litig.*,
611 F. Supp. 3d 848 (N.D. Cal. 2020) ........ 15, 18

*In re Google Play Store Antitrust Litig.*,
147 F.4th 917 (9th Cir. 2025) ........ 9

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019) ........ 11

*In re Online DVD Rental Antitrust Litig.*,
No. M 09-2029 PJH, 2011 WL 1629663 (N.D. Cal. Apr. 29, 2011) ........ 12

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
No. 22-cv-08217-RFL, 2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ........ 19

*Kaiser Found. Health Plan Inc. v. Merck & Co. Inc.*,
No. 21-cv-05497-HSG, 2025 WL 844415 (N.D. Cal. Mar. 18, 2025) ........ 11

*Klein v. Facebook*,
580 F. Supp. 3d 743, 804 (N.D. Cal. 2022) ........ passim

*Klein v. Meta Platforms, Inc.*,
766 F. Supp. 3d 956 (N.D. Cal. 2025) ........ 6

*Kloth v. Microsoft Corp.*,
444 F.3d 312 (4th Cir. 2006) ........ 12

*KPH Healthcare Servs., Inc. v. Mylan N.V.*,
No. 20-2065-DDC-TJJ, 2022 WL 3153687 (D. Kan. Aug. 8, 2022) ........ 11

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........ 20

*Lau v. Gen Digital Inc.*,
No. 22-CV-08981-RFL, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ........ 18-19

*Little v. Pac. Seafood Procurement, LLC*,
No. 23-CV-01098-AGT, 2025 WL 500893 (N.D. Cal. Jan. 17, 2025) ........ 13

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ........ 20

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .................................................................................... 4

*Marshall v. Danone US, Inc.*,
402 F. Supp. 3d 831 (N.D. Cal. 2019)................................................................... 18

*Oliver v. SD-3C LLC*,
751 F.3d 1081 (9th Cir. 2014) .................................................................................. 17

*Parducci v. Overland Solutions, Inc.*,
399 F. Supp. 3d 969 (N.D. Cal. 2019)................................................................... 18

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
32 F.4th 824 (9th Cir. 2022) ........................................................................................ 8

*Reveal Chat Holdco LLC v. Facebook, Inc.*,
No. 20-CV-00363-BLF, 2021 WL 1615349 (N.D. Cal. Apr. 26, 2021) ..................... 17

*Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*,
No. 21-15863, 2022 WL 595696 (9th Cir. Feb. 28, 2022) ........................................ 17

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023).................................................................... 19

*Samsung Elecs. Co., Ltd. v. Panasonic Corp.*,
747 F.3d 1199 (9th Cir. 2014) .................................................................................. 14

*SEIU Health & Welfare Fund v. Philip Morris Inc.*,
249 F.3d 1068 (D.C. Cir. 2001)...................................................................................... 9

*Smith v. eBay Corp.*,
No. C 10-03825 JSW, 2012 WL 27718 (N.D. Cal. Jan. 5, 2012) ............................. 15

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ..................................................................................... 18

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) ..................................................................................... 13

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
No. 24-cv-03567-NW, 2025 WL 2637507 (N.D. Cal. Sept. 12, 2025)........................ 15

*United States v. Google LLC*,
747 F. Supp. 3d 1 (D.D.C. 2024).................................................................... 7, 9, 13

*United States v. Google LLC*,
No. 20-cv-3010 (APM), 2025 WL 2523010 (D.D.C. Sept. 2, 2025)..................... 9, 10

*United States v. Microsoft Corp.*,
253 F.3d 34, 58 (D.C. Cir. 2001)...................................................................................... 9

*Volk v. D.A. Davidson & Co.*,
816 F.2d 1406 (9th Cir. 1987) ........ 17

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
372 F.3d 899 (7th Cir. 2004) ........ 15

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
401 U.S. 321 (1971) ........ 13

*Zulily, LLC v. Amazon.com, Inc.*,
761 F. Supp. 3d 1368 (W.D. Wash. 2024) ........ 11

**Statutes**

28 U.S.C. §1332(d) ........ 20

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 4

**Other Authorities**

3 Areeda & Hovenkamp, *Antitrust Law* ¶ 653f (1st ed. 1996) ........ 10

Jun. 18, 2024 Hr'g Tr., *Arcell v. Google LLC*, No. 3:22-cv-2499-RFL (N.D. Cal.), ECF 114 ........ 2

Mot. to Dismiss Pls.' Third Am. Compl., *Arcell v. Google LLC*, No. 3:22-cv-2499-RFL (N.D. Cal. Nov. 6, 2024), ECF 129 ........ 2

Reply in Further Supp. of Mot. to Dismiss Pls.' Third Am. Compl., *Arcell v. Google LLC*, No. 3:22-cv-2499-RFL (N.D. Cal. Nov. 26, 2024), ECF 135 ........ 2

Plfs.' Notice of Voluntary Dismissal at 1, *Feitelson v. Google Inc.*, No. 5:14-CV-02007 BLF (N.D. Cal. Apr. 3, 2015), ECF 55 ........ 10

Exs. UPX0129, UPX0608, UPX2111, *United States v. Google*,
No. 20-cv-3010 (APM) (D.D.C.) ........ 13

## INTRODUCTION

Google does not, and could not, assert that Plaintiffs have failed to adequately allege that Google has illegally monopolized the market for general search services. Instead, Google asserts (1) that Plaintiffs have not been injured and (2) that Plaintiffs have been injured for such a long time that they cannot now sue.

As the Supreme Court regularly reminds us, the primary purpose of the antitrust laws is to protect consumers. A fundamental principle of economics, and the premise of the antitrust laws, is that competition provides consumers with better prices, terms, and conditions and increased quality, choice, and innovation—and that monopoly deprives consumers of these benefits.

Google's Motion to Dismiss largely ignores the actual allegations of the Second Amended Complaint ("SAC"), Dkt. 46, in which Plaintiffs allege in detail three examples of the injury they have suffered. Instead, Google offers an alternative factual narrative. At summary judgment and trial, Plaintiffs will demonstrate that Google's narrative is inconsistent with principles of economics, the premise of the antitrust laws, expert analysis, actual market facts, and common sense. However, at this stage it is sufficient that Google's narrative is unsupported by, and indeed flatly inconsistent with, the well-pleaded allegations of the SAC.

***Antitrust Injury & Standing.*** In *Arcell*, the Court held (on allegations much less extensive than the allegations here) that the plaintiffs pled antitrust injury based on the deprivation of greater privacy protections and reduced advertising. The Court should now reject Google's remaining antitrust injury argument because the SAC provides the missing real-world examples of general search engines ("GSEs") that attempted to compete by paying compensation to users, and also details how Google's conduct thwarted competition and caused harm to Plaintiffs.

In *Arcell*, Google did obtain dismissal of the plaintiffs' theory that GSEs would compensate users by assuring the Court that (i) no company had "ever paid for" search data; (ii) "real search engines have never paid anyone"; and (iii) competitors such as Microsoft (with its Bing GSE) have never paid users for search, with Google asking rhetorically "why did Bing (or anyone else) not start

paying users in order to grow market share in the real world?"[1] At oral argument, Google's counsel again asked: "Where in the history of search through whatever time period, whatever lens that they want to look at, when was there ever a world in which somebody paid a user?" Jun. 18, 2024 Hr'g Tr. at 22:12-14, *Arcell v. Google LLC*, No. 3:22-cv-2499-RFL (N.D. Cal.), ECF 114. Unrelented, Google's counsel then criticized the *Arcell* plaintiffs as "imagining" a world in which GSEs are "paying you to use their services," and arguing that this "fairytale land" "cannot get them antitrust standing." *Id.* at 22:22-24.

If applied to the SAC in this case, Google's argument confuses what has happened in a monopolized market with what would happen in a competitive market. There is no plausible dispute, and the SAC certainly alleges, that Plaintiffs' search data is very valuable, and that Google makes large profits as a result. Plaintiffs also allege that in a more competitive market, competitors would compete away some or all of Google's excess profits.

Moreover, and dispositive, the SAC demonstrates that GSEs paying compensation and offering rewards to users is no fairytale and Google's representations to this Court were false. Plaintiffs identify real-world offerings by Microsoft, Scour, Brave, Presearch, Zotspot, and other GSEs that competed for users through compensation and rewards. SAC ¶¶ 8, 198-99. Plaintiffs also cite (i) internal documents showing that Google itself considered compensating users of its GSE and tracked Microsoft's "cash back" rewards program (*id.* ¶¶ 191, 201); (ii) testimony from Google's expert in the recent DOJ remedies trial acknowledging that competitors such as Microsoft and Brave offer compensation and rewards to users (*id.* ¶ 202); and (iii) testimony from the DOJ's expert economist who opined that one way to "encourage users to use Google search" in a competitive market would be to "[p]ay users directly for searching" (*id.* ¶ 195). Hence, in contrast to *Arcell*, the SAC sets forth in detail how Google's conduct thwarted the development of a competitive market

---

[1] Mot. to Dismiss Pls.' Third Am. Compl. at 9, *Arcell v. Google LLC*, No. 3:22-cv-2499-RFL (N.D. Cal. Nov. 6, 2024), ECF 129 ("Plaintiffs cannot cry foul for not being paid for data that no company in the industry (or countless free, ad-supported websites) has ever paid for …."); Reply in Further Supp. of Mot. to Dismiss Pls.' Third Am. Compl. at 4, *Arcell* (Nov. 26, 2024), ECF 135 (incorrectly asserting that "*consumers* … have never before been paid … for their *search data* (for which real search engines have never paid anyone)"); *id.* at 4 n.3 ("Indeed, why did Bing (or anyone else) not start paying users in order to grow market share in the real world?").

in which GSEs competed through, among other things, offering compensation to users. *Id.* ¶¶ 5-13.

Google nevertheless recycles its *Arcell* playbook, attacking the SAC as somehow reflecting an "imagination" where "GSEs paid users" as part of some "harebrained scheme[]" in a "never-before-seen market." Mot. at 1, 6. As this obviously is not true, Google pivots to disparaging these real-world competitive offerings as "low-value 'rewards' schemes" that only offer "paltry sums" and "spare change," like the "quarter a day" users can earn by searching Microsoft Bing. *Id.* at 9. In attacking those offerings, Google fails to acknowledge that Judge Koh in *Klein v. Facebook*—where the *same* attorneys representing Google here represented the defendant—cited the allegedly "low-value" Microsoft Rewards program in *denying* Facebook's motion to dismiss. 580 F. Supp. 3d 743, 804 (N.D. Cal. 2022) (Koh, J., sitting by designation). Moreover, the issue again is not what has happened, but what would happen under competition. Here, real-world compensation for search is pled in the SAC, and the extent to which it would have expanded in the "but-for" world ("BFW") absent Google's unlawful conduct is a merits and expert issue.

***Causation.*** Google also challenges standing by retreading its argument that the quality of Google's GSE would inevitably have put it "on top" in the BFW. Mot. at 12-14. That assertion has no support in, and is in fact inconsistent with, the SAC's allegations. It is also at odds with the unchallenged (at this stage) allegations that Google is "on top" not because of its quality but because of its illegal monopolization. The SAC pleads causation by alleging facts that more than plausibly connect Google's exclusive default distribution agreements to the harm suffered by Plaintiffs. Including by relying on findings in the DOJ case, the SAC details how Google's default agreements harmed consumers by depriving rival GSEs of critical scale, disincentivizing investment and innovation, and constructing a protective "moat" around Google's monopoly in general search services. SAC ¶¶ 162-71. As Judge Mehta explained, and the SAC pleads, Google's unlawful conduct limited the ability of rivals to effectively develop and offer innovative, multi-dimensional, quality GSEs and offer improved prices, terms, and conditions that would have benefited consumers. *Id.* These facts easily establish the required casual connection.

***Timeliness.*** Google's motion focuses on whether Plaintiffs may seek recovery for the period *before* October 20, 2016—four years before the DOJ search case was filed. Mot. at 16-17. Plaintiffs

detail new and ongoing violations by Google during the limitations period, which renders their claims timely. SAC ¶¶ 243-53. Plaintiffs also quote statements by Google and its senior executives over the years constituting active fraudulent concealment, which makes Plaintiffs' claims timely for the entire class period. *Id.* ¶¶ 221-29. The Court already rejected Google's laches argument.

***State Law Claims.*** There is no basis to dismiss these claims. Plaintiffs assert a separate unjust enrichment claim consistent with prior decisions by this Court and the Ninth Circuit, and allege facts supporting their UCL claim that are predicated on both their Sherman Act claim and Google's "false representations regarding privacy and Google's controls." SAC ¶ 237; *see also id.* ¶¶ 149-50. Google's suggestion that the Court decline to exercise supplemental jurisdiction (Mot. at 2) invites error—this Court has jurisdiction over the state law claims under CAFA.

## ARGUMENT

## I. LEGAL STANDARD

"To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Arcell v. Google LLC*, 744 F. Supp. 3d 924, 929 (2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he court 'accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.'" *Id.* at 930 (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

## II. PLAINTIFFS PLEAD ANTITRUST STANDING

### A. Plaintiffs Plausibly Allege Antitrust Injury Based on a Lack of Compensation

Plaintiffs plead how compensating users for search has existed as real-world competition for many years, but one that never fully developed because of Google's unlawful conduct. SAC ¶¶ 3-18, 181-204. For example, Microsoft offered compensation starting with Live Search in 2008 and then with its SearchPerks! and Microsoft Rewards programs. *Id.* ¶¶ 8(a), 199(a)-(c). Scour, a GSE launched in 2008, allowed users to earn points for every search that could be redeemed for Visa gift cards. *Id.* ¶¶ 8(b), 199(g). More recently, Brave and Presearch have offered compensation to users of their GSEs. *Id.* ¶¶ 8(d)-(e), 199(d) & (f). The SAC also details how Google (and Yahoo!)

considered compensating users (*id.* ¶¶ 8(c), 11, 191, 199(h)),[2] quotes expert testimony from the DOJ trial that competition through compensation has existed in the past and could develop further in a competitive general search services market (*id.* ¶ 202), and explains how competition through compensation is a routine practice in many adjacent platform markets (*id.* ¶¶ 15, 205-07).[3]

In *Arcell*, this Court "reject[ed] Google's sweeping claim that a damages-seeking plaintiff can never suffer antitrust injury from the use of products, like Google's search engine, that do not charge a fee." 744 F. Supp. 3d at 931-32. "The problem with that argument is that, as Plaintiffs allege, Google is not free: its users 'pay a price' by 'trading personal data for the search results and by making themselves subject to targeted advertising that will follow them wherever they travel on the internet through Google.'" *Id.* at 932 (citation omitted). The *Arcell* Court thus concluded that "a private plaintiff could conceivably state an antitrust injury from anticompetitive conduct that blocks the development of competitive high-quality search offerings that offer greater privacy protections or compensate users for their collected data." *Id.* (citation omitted). "Such an injury would have to be shown by factual allegations supporting a plausible inference that in a competitive market, viable search alternatives would have emerged that either paid users for the data that Google now acquires without compensation or limited the user data collected through enhanced privacy features." *Id.* Here, Plaintiffs have done just that, alleging the real-world facts missing in *Arcell*, which "plausibly allege antitrust injury based on their theory that Google's default contracts have stifled the development of search engines that compensate users for their search data." *Arcell v. Google LLC*, No. 22-CV-02499-RFL, 2025 WL 210877, at *1 (N.D. Cal. Jan. 16, 2025).

The *Klein* case does not help, and is actually fatal to, Google's Motion to Dismiss. Citing the recent *Daubert* decision, Google fails to disclose that—in that same case—Judge Koh ruled that

---

[2] Google downplays a proposal from its Director of Marketing for Google Search to compensate users as something that "never came to fruition" (Mot. at 7), but that is exactly the point. Google did not need to pay compensation because it successfully stifled competition. *E.g.*, SAC ¶¶ 9-18.

[3] Plaintiffs identify compensation offered by Google and by other platforms to users in closely related adjacent markets. SAC ¶¶ 15, 206-07; *see also id.* ¶¶ 193-94, 198 (GSEs paid other sites to direct users to their GSE). These examples further demonstrate the plausibility of Plaintiffs' claims. *Cf. Klein*, 580 F. Supp. 3d at 804.

the plaintiffs *had* adequately *pleaded* causal antitrust injury in connection with their antitrust claim at the motion to dismiss stage, and that there was "no doubt that Consumers' 'information and attention' has 'material value'" through which Facebook profited. 580 F. Supp. 3d at 802-04 (citation omitted). The *Klein* court recognized that the plaintiffs—like Plaintiffs here—had pled "examples of companies that have been willing to pay users for information and attention" and "pay users for their data." *Id.* at 803-04. In concluding that the plaintiffs had "adequately allege[d] that their injury 'flows' from Facebook's monopolization," Judge Koh specifically identified Microsoft's payments for search data *as one of those examples*: "When consumers agree to *use Microsoft's 'Bing' search engine* and allow Microsoft to collect their data, *Microsoft … compensates consumers with items of monetary value.*" *Id.* at 804 (alterations in original, emphases added). *Klein* thus weighs heavily against Google's motion—especially when this decision was issued in 2022, two years before Google made its false "fairytale" assertions to this Court in *Arcell* in 2024.

Nor is Judge Donato's *Daubert* decision (or his summary judgment order) in *Klein* the "complete refutation of Plaintiffs' theory" that Google claims. Mot. at 7 (citing *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956 (N.D. Cal. 2025)). First, Judge Donato's *Daubert* opinion focused not on the general search services market but on the market for personal social network services ("PSNS"). 766 F. Supp. 3d at 958. Second, and critical, Judge Donato found that the *Klein* "plaintiffs [did] not even allege, let alone establish with evidence, that *any* other participant in the PSNS market has *ever* competed by paying users." *Id.* at 963 (emphases added). Here Plaintiffs make the allegations missing in *Klein*; whether Plaintiffs support the allegations with evidence must await the *Daubert* and summary judgment stages after discovery and expert reports.

The Court should also reject Google's attempt to prematurely resolve disputed questions concerning the scope and amount of compensation in the BFW, which likewise will be the subject of discovery and expert opinion. *See* Section II(C), *infra.* For example, Google argues that the compensation and rewards offered by competing GSEs are nothing more than "low-value 'rewards' schemes" that only offer "paltry sums" and "spare change" like a "quarter a day." Mot. at 9. But whether it is "half of one cent" for each search, "a quarter a day," or some other form of compensation (*id.*), the deprivation of such compensation for consumers is a real-world antitrust

injury. Simple math shows that, even with an actual-world example, a "quarter a day" from Microsoft Rewards can add up to over $90 a year, and over $1,440 per person during the class period beginning in 2009 (or $810 since 2016). This is no different than any other rewards program, be it airline miles, hotel points, or other loyalty points and cashback programs. While one mile, one point, or one cent may alone not be much, they quickly add up (and, as alleged, would likely expand in the BFW). Such rewards programs benefit consumers by spurring healthy competition in competitive markets, as demonstrated by numerous successful rewards programs across many industries. In any event, the Microsoft Rewards that Google mocks as "spare change" was sufficient for Judge Koh to find that the plaintiffs in *Klein* adequately pled antitrust injury. 580 F. Supp. 3d at 804.

### B. Plaintiffs Plausibly Allege Antitrust Injury Based on a Lack of Privacy Protections and Reduced Advertising

Google concedes that this Court "credited a version of [a] theory of injury" in *Arcell* that Google's "default agreements have prevented competitors from offering search engines that are more privacy protective or ad-free." Mot. at 10 (citing *Arcell*, 2025 WL 210877, at *1). As in *Arcell*, Plaintiffs plead this antitrust injury. *Compare* SAC ¶¶ 16, 163, 166, 211 (alleging facts regarding how Google's conduct undermined competition by DuckDuckGo and Neeva, as well as other privacy-protective or ad-free GSEs) *with Arcell*, 2025 WL 210877, at *1 (finding similar allegations sufficient to proceed). The Court should reject Google's arguments that the more detailed allegations in the SAC somehow now demonstrate "implausibility." Mot. at 10.

*First*, the fact that Google considered, but as a monopolist chose not to implement, "privacy initiatives" (*id.* (quoting *United States v. Google LLC*, 747 F. Supp. 3d 1, 54 (D.D.C. 2024))) hardly makes the possibility of greater privacy alternatives in a but-for competitive world implausible. *Arcell*, 2025 WL 210877, at *1. Plaintiffs allege that Google would have competed by offering more privacy or fewer ads, or that without Google's anticompetitive conduct competitors would have done so, or both. In either case, Plaintiffs plausibly allege antitrust injury. SAC ¶¶ 16, 163, 166, 211.

*Second*, Google's argument regarding DuckDuckGo (Mot. at 10-11) mischaracterizes Plaintiffs' allegations. Google twists a statement by DuckDuckGo that "some of the results you're used to getting when you search will be different" (SAC ¶ 211(a)) into some sort of concession that

DuckDuckGo's "search results are suboptimal" and that its "lack of success" therefore has "nothing to do with the alleged exclusionary conduct." Mot. at 10. That is not what the SAC says or what DuckDuckGo said. The statement quoted in the SAC about "different" search results in fact states that DuckDuckGo does not "alter results based on someone's previous search history," explaining that "since we don't track our users, we don't have access to search histories at all!" SAC ¶ 211(a). Nothing in this quote supports Google's request for the wholesale dismissal of claims that this Court previously found plausible in *Arcell*, especially where Google ignores the allegation that DuckDuckGo and other more privacy protective GSEs identified in the SAC were "unable to achieve critical scale as a result of Google's anticompetitive conduct." *Id.* ¶ 211; *see also id.* ¶ 16.

*Third*, ongoing efforts by Kagi and Brave to compete by offering reduced-ad GSE options are in no way "fatal" to this theory. Mot. at 11. Google wants to have it both ways: if no other GSEs attempted to offer reduced-ad alternatives, Google would launch the same attacks it made in *Arcell* about how Plaintiffs present a "fairytale." Because some startups attempted to compete with differentiated products—despite the headwinds created by Google's unlawful conduct—Google argues that it is immune from liability. Mot. at 11. Google cites no authority for this "heads-Google-wins, tails-Plaintiffs-lose" proposition. *See PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 840-41 (9th Cir. 2022) (companies need not be "driven from the market" for antitrust injury to exist (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 n.14 (1977))).[4]

*Fourth*, Google's suggestion that Plaintiffs need to allege that they used other GSEs to establish antitrust injury (Mot. at 11-12) lacks both authority and common sense. Plaintiffs—regardless of what GSE they used—were deprived of the benefits of a competitive market where GSEs offered compensation, privacy protections, and reduced ads to compete for users.

### C. Google's Assertion That the BFW is Implausible is Incorrect and Premature

Google asserts that the BFW is too speculative and uncertain to find that Google's anticompetitive conduct could have plausibly caused Plaintiffs' harm (Mot. at 2, 12-14), yet it also argues that the Court should conclude with certainty that in a BFW Google would have maintained

[4] Plaintiffs do allege that competitors, including Neeva, were driven from the market. SAC ¶ 166.

its monopoly based on its asserted quality advantage (*id.* at 8-9, 13). In its view, (i) Google could not be dislodged from its monopoly position given the purported inferior quality of its rivals, and (ii) no meaningful GSE competition would emerge in a BFW. *Id.* at 13.[5]

Not only is Google prematurely arguing the contours of the BFW, it also grossly mischaracterizes Judge Mehta's findings on the significant competitive advantages Google obtained from its exclusive default agreements and how they injured consumers. *See United States v. Google LLC*, No. 20-cv-3010 (APM), 2025 WL 2523010, at *38 (D.D.C. Sept. 2, 2025) (describing "moats" created by Google); *Google*, 747 F. Supp. 3d at 152 (to be condemned as exclusionary a "monopolist must harm the competitive *process* and thereby harm consumers" (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001))); *see also, e.g.*, SAC ¶¶ 162-71. Moreover, Judge Mehta rejected Google's self-serving quality-based arguments: "Notwithstanding its innovation and successful business strategy, Google still used illegal restraints to maintain its monopoly. It was 'not entitled to maintain and magnify' the relevant network effects by entrenching its dominance through anticompetitive conduct.'" *Google*, 2025 WL 2523010, at *38 (quoting *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 949 (9th Cir. 2025)). Google's BFW quality theory also makes no sense. The SAC explains that "Google would have only made these payments of billions of dollars a year to Apple, the Android partners, and browser developers if it believed there was a risk that rivals such as Microsoft or Yahoo! (and later DuckDuckGo and Neeva) could challenge Google's monopoly, including by attracting users with compensation." SAC ¶ 163; *see id.* ¶¶ 173-74.[6]

---

[5] The one decision cited by Google confirms the weakness of its argument. Mot. at 13 (citing *SEIU Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068 (D.C. Cir. 2001)). That appeal involved actions against tobacco companies alleging a conspiracy to deceive the public about the dangers of smoking, not by consumers but by labor-management health trust funds and three foreign countries. *SEIU Health*, 249 F.3d at 1068-71. The key to that ruling was that "injuries of the third-party payors are too remote to have been proximately caused by the defendants' alleged conduct." *Id.* at 1069.

[6] Google also ignores (i) facts pled in the SAC disputing that it would win on quality in the BFW, including testimony regarding how GSE results have *not* meaningfully improved in 20 years (SAC ¶ 180), and (ii) allegations regarding a recent study showing that users who are paid a "switch bonus" were willing to try Microsoft's Bing GSE, and "[o]f those who switched to Bing, 33 percent kept using Bing after making an unincentivized active choice" (*id.* ¶ 203). The DOJ presented evidence at trial regarding how the quality of Google's GSE was in some respects worse than Bing, and how Google failed to make certain quality-related investments, but these are not pleading issues.

As detailed in the SAC, consumers would have benefited from GSEs that could achieve scale and compete across multiple dimensions in a BFW—including through offering compensation to users, greater privacy protections, and reduced advertising. *E.g.*, SAC ¶¶ 181-217; *see also id.* ¶¶ 31, 162 (detailing importance of network effects). In this BFW—fully supported by Judge Mehta's decisions—there is no basis for Google to ask the Court to conclude at the pleading stage that Google, alone, would offer a quality search product. *Cf. Google*, 2025 WL 2523010, at *32 n.4 (because one can never know the exact parameters of a BFW, "the monopolist bears the risk of the uncertain consequences created by its exclusionary acts") (quoting 3 Areeda & Hovenkamp, *Antitrust Law* ¶ 653f (1st ed. 1996)). While Google asserts that it would still "come out on top" (Mot. at 13), Plaintiffs' case is in no way dependent on rivals displacing Google. Rather, Plaintiffs' case and injury are based on a BFW in which compensation to users, privacy-related offerings, and ad-reduced products are aspects of competition that all rivals, including Google, would have to offer to attract and retain users. SAC ¶¶ 181-217.[7]

The SAC lays out facts establishing that a BFW with quality rival GSEs is plausible, and any disputes over the scope and extent of the offerings in the BFW should be the subject of discovery and expert opinion. "[A]t the pleading stage, plaintiffs are only required to 'sketch the outline of the injury to competition with allegations of supporting factual detail' that are enough to 'raise a reasonable expectation that discovery will reveal evidence of an injury to competition.'" *Copeland v. Energizer Holdings, Inc.*, 716 F. Supp. 3d 749, 766-67 (N.D. Cal. 2024) (quoting *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012)); *see also Crowder v. LinkedIn Corp.*, No. 22-cv-00237-HSG, 2024 WL 1221956, at *4 (N.D. Cal. Mar. 21, 2024) (denying motion to dismiss

[7] Google's reliance on *Feitelson v. Google Inc.* (Mot. 12) is misplaced. In *Feitelson*, the court focused on how there were "no facts alleged to indicate that Defendant's conduct has prevented consumers from freely choosing among search products or prevented competitors from innovating." 80 F. Supp. 3d 1019, 1029 (N.D. Cal. 2015). Here, Plaintiffs detail how Google's conduct prevented consumers from freely choosing among search products by foreclosing high-quality alternatives and preventing competitors from innovating, including in terms of compensating users. SAC ¶¶ 5-18, 209, 211, 215. The court in *Feitelson* granted leave to amend, but those plaintiffs dismissed their claims without ever adding the relevant facts alleged here. 80 F. Supp. 3d at 1034; Plfs.' Notice of Voluntary Dismissal at 1, *Feitelson*, No. 5:14-CV-02007 BLF (N.D. Cal. Apr. 3, 2015), ECF 55.

based on allegations that conduct "increases barriers to entry or reduces consumer choice by excluding would-be competitors that would offer differentiated products," and that but-for this conduct "competitors would enter LinkedIn's market and erode its profits and market share with price competition" (citations omitted)).[8]

### D. Plaintiffs Plausibly Allege Other Antitrust Standing Factors

***Directness***. Plaintiffs are consumers directly harmed by Google's unlawful conduct. Google's directness argument (Mot. at 14-15) is just a variation of the same "speculative" causal links arguments the Court rejected in *Arcell*. *Compare* Mot. at 14 *with* Mot. to Dismiss Pls.' Third Am. Compl. at 10-11, *Arcell*, No. 3:22-cv-2499-RFL (N.D. Cal. Nov. 6, 2024), ECF 129 (presenting similar arguments). In *Arcell*, the Court concluded that the allegations "are not so speculative that Plaintiffs' injury is not sufficiently direct or cannot be adequately measured. *As consumers*, Plaintiffs plausibly allege a direct injury from their inability to access high-quality search products that are more privacy protective and less clogged with ads." *Arcell*, 2025 WL 210877, at *2 (emphasis added). Plaintiffs have standing as consumers directly injured by a monopolist. *See, e.g.*, *id.* (recognizing "the direct nature of Plaintiffs' alleged injury as consumers"); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) (observing that "consumers and competitors are most likely to suffer antitrust injury"); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1156 (9th Cir. 2019); *Copeland*, 716 F. Supp. 3d at 771. The Sherman Act was "conceived of primarily as a remedy" for people—"especially consumers." *Brunswick Corp.*, 429 U.S. at 486 n.10; *see also Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d

---

[8] *See also, e.g.*, *Kaiser Found. Health Plan Inc. v. Merck & Co. Inc.*, No. 21-cv-05497-HSG, 2025 WL 844415, at *8 (N.D. Cal. Mar. 18, 2025) ("Whether Plaintiff can actually prove its claim" related to "predicting what [third parties] would decide to do in a but-for world" is "for a later stage of the case."); *Zulily, LLC v. Amazon.com, Inc.*, 761 F. Supp. 3d 1368, 1391 (W.D. Wash. 2024) ("the question of 'whether the alleged procompetitive benefits of the [challenged conduct] outweigh its alleged anticompetitive effects [(i.e., procompetitive justifications)] is a factual question that the district court cannot resolve on the pleadings'" (alterations in original) (citations omitted)); *Azurity Pharms., Inc. v. Bionpharma Inc.*, 650 F. Supp. 3d 269, 278-79 (D. Del. 2023) (denying motion to dismiss premised in part on argument that the "but-for world is the same as the real world," where complaints plausibly alleged harm); *KPH Healthcare Servs., Inc. v. Mylan N.V.*, No. 20-2065-DDC-TJJ, 2022 WL 3153687, at *31 (D. Kan. Aug. 8, 2022) ("the 'but for' world requires the court to resolve factual questions," and "the court can't do that on a motion to dismiss").

367, 378 (9th Cir. 2003) ("customers are the intended beneficiaries of competition" and "presumptively those injured by its unlawful elimination"). The cases Google cites (Mot. at 14-15) are inapposite, involving indirect purchasers and non-purchasers.[9] The causal link between Google's monopolistic conduct and harm to competition is laid out in detail by Judge Mehta as well as the SAC. *See, e.g.*, SAC ¶¶ 9-18, 162-71. In turn, Google's conduct injured consumers who were deprived of that competition and, as such, are the correct parties to assert these claims against Google. *Klein*, 580 F. Supp. 3d at 802.

***Recovery & Apportionment***. As the Court ruled before, any resolution of the "damages-apportionment issues at this stage is premature." *Arcell*, 2025 WL 210877, at *2. Google is one of the largest data companies in the history of the world, and it should have data that can be used to both calculate and apportion any damages. *E.g.*, SAC ¶ 216. There is no basis to prejudge Plaintiffs' ability to obtain discovery that can be used to calculate and apportion damages. *Copeland*, 716 F. Supp. 3d at 771 ("That damages may be complex to measure does not mean they are speculative.... How much is a harder question for a later day, but the existence of that harm is not speculative."). The SAC pleads that such data is likely available, citing Judge Mehta's conclusions, testimony from Google's expert economist, and Google's internal modeling demonstrating the value Google derives from its default distribution agreements and the percentage of search volume it would lose without defaults. *See, e.g.*, SAC ¶¶ 61, 163, 216. The recent verdicts against Google in other consumer class actions (*Rodriguez v. Google* and *Csupo v. Google*) confirm the plausibility of experts modeling damages based on a variety of information sources—including data produced by Google.

## III. PLAINTIFFS' CLAIMS ARE TIMELY

Plaintiffs allege a class period going back to May 8, 2009. SAC ¶ 254. While some courts

[9] *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2011 WL 1629663, at *1, *7 (N.D. Cal. Apr. 29, 2011) (granting summary judgment on claims against a non-conspirator); *Kloth v. Microsoft Corp.*, 444 F.3d 312, 318 (4th Cir. 2006) (dismissal focused on how plaintiffs were indirect purchasers and seeking compensation for "societal harms"); *City of Oakland v. Oakland Raiders*, 20 F.4th 441,448-49, 459-460 (9th Cir. 2021) (ruling focused on how Oakland was a non-purchaser and how a "nonpurchaser's injury is less direct than the injuries of actual purchasers"); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540 (1983) (ruling focused on injury to union while recognizing that any "immediate victims" of the conduct would "have been injured by an antitrust violation" and "their injuries would be direct").

"defer ruling on the appropriate class-period length until Plaintiffs move for class certification," *Little v. Pac. Seafood Procurement, LLC*, No. 23-CV-01098-AGT, 2025 WL 500893, at *3 (N.D. Cal. Jan. 17, 2025), the Court can and should reject Google's timeliness arguments.

### A. Google's Statute of Limitations Defense Fails

With a statute of limitations defense, a "complaint cannot be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts that would establish the timeliness of the claim." *Klein*, 580 F. Supp. 3d at 795 (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) (same). It is also "generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators." *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015) (Koh, J.) (citation omitted).[10]

***Continuing & Different Violations***. Google's sole argument against application of the continuing violation doctrine is its assertion that Plaintiffs "repeatedly concede that later-entered agreements were 'routine[] renew[als].'" Mot. at 17 (alterations by Google) (quoting SAC ¶ 31). That is not true. Google's alterations change the meaning of this paragraph in the SAC, which quotes Judge Mehta's opinion: "They [GSE distributors] thus routinely renew the distribution deals with their exclusive terms." SAC ¶ 31 (quoting *Google*, 747 F. Supp. 3d at 159).[11] Google cannot re-

[10] A Sherman Act claim does not accrue, and the statute does not begin to run, at a minimum until "a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971). Google argues that Plaintiffs were *never* injured (Mot. at 6-13), but Google at the same time argues that Plaintiffs' claims are time-barred because Google had "dominance" by 2009 (*id.* at 16). The question under *Zenith* is not when Google was dominant, but instead when did Google's monopolization injure Plaintiffs—a disputed fact issue.

[11] While some of these agreements were disclosed in the DOJ case, they were heavily redacted. But Google's assertion that these contracts did not change during the limitations period is inconsistent with its own documents. *See, e.g.*, *United States v. Google LLC*, No. 20-cv-3010 (APM) (D.D.C.) Ex. UPX0129 (August 2019 internal Google presentation identifying updates to Google's MADAs "rolling out now"); Ex. UPX0608 (May 2020 internal Google emails discussing efforts of "hundreds of Googlers across multiple product areas [to obtain] the counter-signature of revenue share agreements" or RSAs); Ex. UPX2111 (May 2020 internal Google presentation discussing changes to revenue share agreement with Samsung with goal to: "[e]volve RSAs into master commercial agreements that drive core distribution, increased monetization and market outcomes").

write Plaintiffs' allegations to obtain dismissal. In any event, the Ninth Circuit has rejected Google's argument, holding that the mere fact that terms in a prior agreement are carried forward "is not evidence that the new [agreement] was a reiteration or extension of the prior agreement." *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1204 (9th Cir. 2014) (reversing dismissal).

In addition, Plaintiffs detail how Google after 2016 continued to engage in unlawful acts that readily establish new and continuing violations to maintain its monopoly. *See* SAC ¶¶ 243-53. Google's unlawful acts during the limitations period include not only that Google entered into or renewed exclusionary default search distribution agreements with Apple, the Android partners, and browser developers during the limitations period (*id.* ¶ 245), but also that:

- **Google sought to expand and enforce the exclusionary agreements**. For example, in 2017, after Verizon attempted to offer Yahoo! on its Android devices, Google decreed that "all go-forward agreements with carriers include exclusivity provisions and exceptions cannot be made." *Id.* ¶¶ 250-51. In 2018, Google used its anticompetitive agreements to stop Samsung from lowering "choice friction," which would have made it easier for users to switch their default GSE from Google to a competitor. *Id.* ¶ 249.
- **Google sought additional ways to embed Google as the default GSE**. For example, in July 2024 Google discussed "integrating Google Search suggestions into the Safari search bar and preferencing it over Apple's suggestions." *Id.* ¶ 247.
- **Licenses for new devices with Google as the exclusive default GSE**. For example, the SAC pleads that MADAs with Android OEMs are a "device-by-device license" and require setting Google's GSE as the default as a condition of loading the Google Play Store—an app essential to the operation of Android devices. *Id.* ¶¶ 83-85; *see id.* ¶ 245.
- **Google continued to "extract, collect, and monetize search data from Plaintiffs and class members during the limitations period,"** including with false representations to users who asked Google to stop doing this using Google's so-called privacy controls. *Id.* ¶¶ 149-50, 237, 252.

There is no basis to dismiss any claim given these detailed factual allegations. *See, e.g.*, *Samsung*, 747 F.3d at 1204 (allegations of new agreements sufficient); *Gamboa v. Apple Inc.*, No.

24-cv-01270-EKL, 2025 WL 660190, at *3 (N.D. Cal. Feb. 28, 2025) (denying motion to dismiss claims as time barred where plaintiffs alleged monopoly maintenance in part through "ongoing enforcement" of restrictions); *Smith v. eBay Corp.*, No. C 10-03825 JSW, 2012 WL 27718, at *5 (N.D. Cal. Jan. 5, 2012) (denying motion to dismiss based on continued modification to policy within limitation period); *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1187-88 (N.D. Cal. 2012) (Section 2 claim timely based on new and independent acts including, in part, channeling customers); *Klein*, 580 F. Supp. at 797 ("[I]f a defendant commits the same anticompetitive act multiple times, each new act restarts the statute of limitations for *all* the acts."); *In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 861 (N.D. Cal. 2020) ("original sin" earlier but "*conduct taken* to cause competitive harm continued well into the later four-year period").[12]

The Court should also reject Google's argument that continuing violations must be assessed on a contract-by-contract basis. Mot. at 16-17. Judge Wise recently rejected a similar argument that a plaintiff pursuing multiple theories of antitrust liability must establish a continuing violation as to each theory, explaining that "the Court considers all the conduct alleged as part of one continuing violation of the Sherman Act." *Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, No. 24-cv-03567-NW, 2025 WL 2637507, at *8 (N.D. Cal. Sept. 12, 2025); *id.* ("[W]ithin the current landscape of persuasive precedent, [the Court] should consider all conduct going to the overarching scheme in the aggregate."). Here, Plaintiffs plead a single theory of Google's anticompetitive conduct. Although the SAC identifies numerous continuing violations after October 20, 2016 (SAC ¶¶ 243-53), Google's admission that it entered into a new default distribution agreement with Mozilla in 2017 is on its own sufficient to apply the continuing violation doctrine and find all of Plaintiffs' claims timely after October 20, 2016. Mot. at 17 ("the 2017 Mozilla agreement is

---

[12] *See also In re Air Cargo Shipping Servs. Antitrust Litig.*, Nos. 06-MDL-1775 (JG)(VVP) & 10-CV-639 (JG)(VVP), 2010 WL 10947344, at *13-*15 (E.D.N.Y. Sept. 22, 2010) (continuing violation where "monopolist continues to use the power it has gained illicitly to overcharge its customers" (citation omitted)); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 902 (7th Cir. 2004) (reversing dismissal: "improperly prolonging a monopoly is as much an offense against the Sherman Act as is wrongfully acquiring market power in the first place"). Customer requests to Google to stop collecting and saving their search data using Google's so-called privacy controls are also part of the continuing violation based on Google's false representations. *See, e.g.*, *Columbia Steel Casting Co., Inc. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1444-45 (9th Cir. 1996).

plausibly, specifically alleged to have been entered within four years of October 20, 2020").

***Fraudulent Concealment***. Google's statute of limitations defense should also be rejected based on Plaintiffs' fraudulent concealment allegations. SAC ¶¶ 221-29. "The purpose of the fraudulent concealment doctrine is to prevent a defendant from 'concealing a fraud ... until such a time as the party committing the fraud could plead the statute of limitations to protect it.'" *Animation Workers*, 123 F. Supp. 3d at 1194 (alterations in original; quotation omitted). "To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Id.* (citation omitted). Plaintiffs allege facts that plausibly establish all three elements.

*First*, Google's attempt to re-cast its fraudulent statements as passive concealment or "failure to own up to illegal conduct" (Mot. at 17) is inconsistent with the SAC's allegations and the facts. The SAC does not allege passivity but instead identifies multiple affirmative acts of concealment by Google. Plaintiffs included over seven pages of factual allegations quoting statements by Google and its most senior executives to fraudulently conceal Google's anticompetitive conduct. SAC ¶¶ 221-34. These include for example Google's public statements regarding how its agreements with Apple are "not exclusive," that its Android "distribution agreements are not exclusive," and that its "browser agreements are not exclusive" (*id.* ¶¶ 227, 231-32); that "Google promotes competition and openness online" (*id.* ¶ 225); that Google "[m]ake[s] it easy for users to change" GSEs (*id.*); and that Google's "distribution agreements on Android haven't harmed competition; they've promoted it" (*id.* ¶ 232). Google also concealed that user search data "was being systematically collected, retained, and monetized as part of Google's anticompetitive scheme, including with false representations regarding privacy and Google's controls." *Id.* ¶ 237.

*Second*, based on the same facts, Plaintiffs allege their lack of actual and constructive knowledge. SAC ¶¶ 222-40. The SAC quotes Judge Mehta's finding that "[m]any users do not know that there is a default search engine, what it is, or that it can be changed," and cites internal Google studies showing users were unaware or confused about which GSE was the default. *Id.* ¶ 54. These allegations are sufficient given that "the question of constructive knowledge and inquiry notice

generally 'presents a question for the trier of fact.'" *Animation Workers*, 123 F. Supp. 3d at 1205 (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987)); *Brown*, 525 F. Supp. 3d at 1070 (fraudulent concealment where "Google's representations could have led a reasonable user to conclude that Google was not collecting this data"). Google has not explained how Plaintiffs would have allegedly been put on notice of Google's unlawful acts.[13]

*Third*, Google does not challenge diligence, and "courts have 'been hesitant to dismiss an otherwise fraudulently concealed antitrust claim for failure to sufficiently allege due diligence.'" *Animation Workers*, 123 F. Supp. 3d at 1205 (citation omitted). Arguing lack of diligence "puts the cart before the horse" as "Plaintiffs were not obligated to investigate their claims *until* Plaintiffs had reason to suspect the existence of their claims." *Id.* at 1204; *Brown*, 525 F. Supp. 3d at 1071 (same).

**B. Google's Laches Defense Fails Again**

"Google's laches defense raises factual questions about when Plaintiffs knew or should have known about the default contracts, the reasonableness of any delay in filing suit, and whether the delay prejudiced Google." *Arcell*, 2025 WL 210877, at *3. There is nothing about the allegations here that would warrant a different ruling, which the Court in *Arcell* recognized is "generally fact-intensive and ill-suited for resolution at the pleading stage." *Id.* (quoting *Chamberlin v. BNSF Ry. Co.*, No. 22-CV-00005-RS, 2022 WL 717818, at *2 (N.D. Cal. Mar. 10, 2022)). Google claims "prejudice" from needing to "relitigate the same claims and theories" (Mot. at 18), but this hyperbole rings hollow because Google is the party relitigating issues that it lost in *Arcell*. The Court should again reject Google's laches arguments. *See Arcell*, 2025 WL 218077, at *3; *see also Oliver v. SD-3C LLC*, 751 F.3d 1081, 1087 (9th Cir. 2014) (rejecting laches argument and reversing dismissal).[14]

---

[13] Google cites *Reveal Chat Holdco LLC v. Facebook, Inc.* (Mot. at 18), but in that case the same counsel representing Google here sought judicial notice of a state court complaint from outside the limitations period and two *Wall Street Journal* articles. No. 20-CV-00363-BLF, 2021 WL 1615349, at *4 (N.D. Cal. Apr. 26, 2021), *aff'd in part, appeal dismissed in part sub nom. Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*, No. 21-15863, 2022 WL 595696 (9th Cir. Feb. 28, 2022). Google argues that the fraudulent statements should have put Plaintiffs (who are individuals, not corporations) on notice. Google is trying to have it both ways: it denies these statements constitute fraudulent concealment, while also claiming that nobody should have believed Google's own words.

[14] Plaintiffs' UCL and unjust enrichment claims are also timely. *Aryeh v. Canon Bus. Sols., Inc.*, 55

## IV. PLAINTIFFS PLAUSIBLY ALLEGE TWO STATE LAW CLAIMS

***UCL.*** None of Google's arguments warrant dismissal of Plaintiffs' UCL claim. *First*, Plaintiffs' request for money damages does not mean Plaintiffs may not also assert a UCL claim. *See, e.g.*, *Marshall v. Danone US, Inc.*, 402 F. Supp. 3d 831, 834 (N.D. Cal. 2019) (Seeborg, J.) (rejecting this argument and denying motion to dismiss UCL claim).[15] *Second*, Google's Sherman Act violations are sufficient to state a claim under the UCL's unlawful and unfairness prongs. *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1064, 1068 (9th Cir. 2025). *Third*, Plaintiffs allege facts that state a claim under the UCL's fraudulent prong, including Google's "false representations regarding privacy and Google's controls." SAC ¶ 237; *id.* ¶¶ 149-50; *see, e.g.*, *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1138 (N.D. Cal. 2014) (denying motion to dismiss UCL claim based on false representations). *Fourth*, Plaintiffs' allegations regarding how Google took their valuable search data for Google's financial benefit also independently establish a claim under the UCL's unfairness prong. *E.g.*, SAC ¶¶ 6, 9, 15; *see also, e.g.*, *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *12 (N.D. Cal. July 22, 2025) (allegations of Google and others taking "data without compensating" class members "sufficient to state a claim under the 'intentionally broad' 'unfair' prong of the UCL" (citation omitted)); *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009, at *14 (N.D. Cal. Dec. 22, 2021) (Koh, J.) (allowing plaintiffs to proceed with UCL claim based on Google taking data).[16]

***Unjust Enrichment***. Plaintiffs allege all facts necessary to assert unjust enrichment as a standalone claim (SAC ¶¶ 285-90), consistent with two recent rulings by this Court. *Lau v. Gen*

---

Cal. 4th 1185, 1202 (2013) (continuous accrual based on "recurring unfair act" made UCL claim timely); *Glumetza*, 611 F. Supp. 3d at 867 (California "recognizes fraudulent concealment") (citations omitted); *Brown*, 525 F. Supp. 3d at 1071 (fraudulent concealment tolling).

[15] Google cites *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), but that was a case where the plaintiff sought to obtain the exact same monetary relief ($32 million) as "equitable restitution" that she previously sought as damages under the CLRA. *Id.* at 844. The plaintiff's failure "to explain how the same amount of money for the exact same harm is inadequate or incomplete" was "[m]ore important[]" than the complaint's failure to plead inadequacy of legal remedies. *Id.*

[16] Google cites *Parducci v. Overland Solutions, Inc.*, 399 F. Supp. 3d 969 (N.D. Cal. 2019) (Mot. at 19), but in that case the court dismissed as to the unlawful and fraudulent prongs and then dismissed the unfair prong because it "overlaps completely" with the fraudulent prong. *Id.* at 981-82.

*Digital Inc.*, No. 22-CV-08981-RFL, 2024 WL 1880161, at *5 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (permitting plaintiffs to proceed with standalone unjust enrichment claim alleging "the defendant received and unjustly retained a benefit at the plaintiff's expense"); *A.J. v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (Lin, J.) (same based on defendant's unauthorized use of data it took). The decision cited by Google predates those two decisions. Mot. at 20 (citing *In re Sequoia Benefits & Ins. Data Breach Litig.*, No. 22-cv-08217-RFL, 2024 WL 1091195 (N.D. Cal. Feb. 22, 2024)). The Ninth Circuit and other judges in this District have recognized that unjust enrichment may be asserted as a standalone claim, including if companies take valuable user data. *See, e.g.*, *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Doe I v. Google LLC*, No. 23-CV-02431-VC, 2025 WL 1616720, at *5 (N.D. Cal. June 6, 2025) (Chhabria, J.); *GoodRx Holdings, Inc.*, 2025 WL 2052302, at *16 (Martínez-Olguín, J.). Plaintiffs plead facts sufficient to satisfy the requirements set by the Ninth Circuit, including that Google "received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners*, 828 F.3d at 1038-39; SAC ¶¶ 286-88. Google's enrichment was unjust not only because of Google's violations of the Sherman Act and UCL but also because of Google's false promises regarding collection and control of users' search data. *See, e.g.*, SAC ¶¶ 149-50, 237. The allegations in Plaintiffs' SAC exceed all requirements to assert a claim for unjust enrichment, including based on the *Walmart* decision cited by Google (Mot. at 20). *See Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (unjust enrichment claim permissible if benefit obtained through fraud). Finally, the *CRT* decision cited by Google never mentions unjust enrichment and instead focuses on irrelevant limits on indirect purchasers seeking disgorgement under Section 16. Mot. at 20 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016)). Plaintiffs' separate unjust enrichment claim permits disgorgement. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) ("California law recognizes a right to disgorgement of profits resulting from unjust enrichment ….").

***Jurisdiction***. Google's request that the Court decline to exercise supplemental jurisdiction over these state law claims (Mot. at 2, 19) also provides no basis for dismissal. This is a nationwide class action with millions of class members seeking far more than $5 million in damages. SAC ¶ 27

(pleading CAFA jurisdiction); *id.* ¶ 254. Unlike in *Arcell*, the Court has original jurisdiction pursuant to CAFA, 28 U.S.C. §1332(d), and does not need to analyze whether it should exercise supplemental jurisdiction. *E.g.*, *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035-36 (9th Cir. 2020) (vacating dismissal based on supplemental jurisdiction analysis that ignored CAFA).

## V. THERE IS NO BASIS FOR ANY STAY

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *Landis*, 299 U.S. at 255 (movant "must make out a clear case of hardship or inequity"). Google's superficial request for a stay to have *Arcell* "proceed to decision" before this case (Mot. at 2, 10) should be rejected. *First*, Google has not even attempted to identify any hardship or inequity. *Second*, Google's request is untimely—it waited months after successfully relating this case to *Arcell* to ask for a stay. *Third*, Google's request lacks legal support, citing no example of courts staying a putative class action involving millions of people for an action involving just 26 individuals. *Fourth*, a stay would prejudice Plaintiffs, especially given Google's history of unchecked misstatements in *Arcell*. *See Landis*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). *Fifth*, a stay would delay important relief sought by Plaintiffs. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (vacating stay). *Sixth*, the request should be denied because Plaintiffs have an "interest in moving the case forward to final disposition." *Federated Indians of Graton Rancheria v. United States Dep't of the Interior*, No. 24-CV-08582-RFL, 2025 WL 2522376, at *3 (N.D. Cal. Sept. 2, 2025) (Lin, J.) (denying request for stay). *Seventh*, these cases are "before the same judge" so there is no "first-to-file" rule that could justify any stay. *Carrillo v. Lowe's Home Ctrs., LLC*, No. 2:24-CV-01215-DAD-SCR, 2025 WL 950324, at *2 (E.D. Cal. Mar. 28, 2025).

## VI. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE

This is the first time Google has moved to dismiss and the Court has considered Plaintiffs' pleading in *this* case. If the Court decides to grant any portion of Google's motion, Plaintiffs respectfully request an opportunity to "amend with the benefit of the Court's analysis." *Arcell*, 744 F. Supp. 3d at 934 (granting leave to file third amended complaint).

Dated: October 16, 2025

By: /s/ David Boies
David Boies

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
Alexander Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Joshua Michelangelo Stein, CA Bar No. 298856
Margaux Poueymirou, CA Bar No. 356000
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
brichardson@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
John M. Lyons *(pro hac vice)*
James Keyte (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: (212) 446-2332
jlyons@bsfllp.com
jkeyte@bsfllp.com

**LAW OFFICES OF LINGEL H. WINTERS**
Lingel H. Winters, CA Bar No. 37759
A Professional Corporation
2900 Shasta Rd.
Berkeley, California 94708
sawmill2@aol.com

*Counsel for Plaintiffs James Attridge, Zachary Crowell, Christopher Weber, Tracy Rosenberg and Interim Lead Counsel for All Others Similarly Situated*