WILMER CUTLER PICKERING
HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
CHRISTOPHER W. JOHNSTONE (SBN 242152)
Chris.Johnstone@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

*Attorneys for Defendant Google LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES ATTRIDGE, ZACHARY CROWELL, CHRISOPHER WEBER, and TRACY ROSENBERG, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>GOOGLE LLC,<br>　　　　　　　　　　Defendant. | Case No. 3:25-cv-02775-RFL<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Rita F. Lin<br>Courtroom 15, 18th Floor<br>Date: December 2, 2025<br>Time: 10:00 a.m. |

**TABLE OF CONTENTS**

I.  Plaintiffs Fail To Plausibly Allege Antitrust Standing ..................................................2
    A.    Plaintiffs Fail To Plausibly Allege Antitrust Injury..................................................2
    B.    Plaintiffs Fail To Plausibly Allege Other Antitrust Standing Factors....................5
II.  Plaintiffs' Claims Are Untimely ......................................................................................6
    A.    Plaintiffs Do Not Plausibly Allege A Continuing Violation ...................................6
    B.    Plaintiffs Do Not Plausibly Allege Fraudulent Concealment.................................8
    C.    Plaintiffs' Claims For Injunctive Relief Are Barred By Laches.............................9
III. Plaintiffs Fail To Plausibly Allege Their State Law Claims............................................9
IV. Dismissal Should Be With Prejudice..............................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ...................................................................................10

*Airweld v. Airco, Inc.*,
742 F.2d 1184 (9th Cir. 1984) .................................................................................................6

*American Ad Management, Inc. v. General Telephone Co. of California*,
190 F.3d 1051 (9th Cir. 1999) .................................................................................................5

*Arcell v. Google LLC*,
2024 WL 1090009 (N.D. Cal. Feb. 5, 2024) ...........................................................................6

*Copeland v. Energizer Holdings, Inc.*,
716 F. Supp. 3d 749 (N.D. Cal. 2024) ....................................................................................5

*Eclectic Properties East, LLC v. Marcus & Millchap Co.*,
751 F.3d 990 (9th Cir. 2014) ............................................................................................2, 4

*Gamboa v. Apple Inc.*,
2025 WL 660190 (N.D. Cal. Feb. 28, 2025) ...........................................................................8

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ....................................................................................8

*Klein v. Meta Platforms, Inc.*,
766 F. Supp. 3d 956 (N.D. Cal 2025) .....................................................................................3

*Klein v. Meta Platforms, Inc.*,
2025 WL 2772690 (N.D. Cal. Sep. 29, 2025) .........................................................................3

*Kloth v. Microsoft Corp.*,
444 F.3d 312 (4th Cir. 2006) ..................................................................................................5

*In re Late Fee Litigation*,
528 F. Supp. 2d 953 (N.D. Cal. 2007) ..................................................................................10

*Lau v. Gen Digital, Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) .........................................................................10

*Margolis v. Apple Inc.*,
777 F. Supp. 3d 1060 (N.D. Cal. 2025) ................................................................................10

*Marshall v. Danone US, Inc.*,
402 F. Supp. 3d 831 (N.D. Cal. 2019) ....................................................................................9

*Oakland v. Oakland Raiders*,
  20 F.4th 441 (9th Cir. 2021) ................................................................................................5, 6

*Reveal Chat Holdco LLC v. Facebook, Inc.*,
  2021 WL 1615349 (N.D. Cal. Apr. 26, 2021) ...........................................................................9

*Ryan v. Microsoft Corp.*,
  147 F. Supp. 3d 868 (N.D. Cal. 2015) ..................................................................................6, 7

*Samsung Electronics Co., Ltd. v. Panasonic Corp.*,
  747 F.3d 1199 (9th Cir. 2014) ..............................................................................................6, 7

*SaurikIT, LLC v. Apple Inc.*,
  2022 WL 1768845 (N.D. Cal. May 26, 2022) ......................................................................6, 7

*SaurikIT, LLC v. Apple, Inc.*,
  2023 WL 8946200 (9th Cir. Dec. 28, 2023) ..............................................................................8

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .....................................................................................................9

*Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc*,
  2025 WL 2637507 (N.D. Cal. Sep. 12, 2025) ...........................................................................8

*United States v. Google LLC*,
  747 F. Supp. 3d 1 (D.C. 2024) ..........................................................................................3, 4, 8

*United States v. Google LLC*,
  2025 WL 2523010 (D.C. Sep. 2, 2025) .................................................................................4, 7

Nothing in Plaintiffs' opposition rebuts Google's showing that Plaintiffs' Second Amended Complaint ("SAC") does not plausibly allege antitrust injury and Plaintiffs' claims are time-barred.

*First*, Plaintiffs cannot show antitrust injury merely by identifying some firms that paid some users for some internet activities, charged users to show fewer ads, or adopted unspecified privacy features. They instead must plausibly allege—with supporting facts—that high quality general search engines ("GSEs") offering these features would have emerged and succeeded in a but-for world ("BFW") in which Google did not engage in the challenged conduct. Plaintiffs appear surprised that the SAC's additional detail relative to the *Arcell* complaints undermines their claims, but this makes perfect sense. These features are not viable bases for competition among GSEs, and the more real-world facts Plaintiffs add to the SAC the clearer that becomes. No GSE has or could succeed merely by offering users a "rewards" program, collecting less data at the expense of quality, or charging users to show fewer ads—rather than delivering high-quality search results, as Plaintiffs concede Google did long before it entered any of the challenged agreements.

Perhaps recognizing these deficits, Plaintiffs levy false accusations about past arguments Google made regarding the deficiencies of the *Arcell* complaints, including when Google pointed out the failure of the *Arcell* plaintiffs to allege "real-world facts" that Plaintiffs concede were "missing" in *Arcell*. Opp. 5. None of their substantive arguments are supported by these misleading attacks, and Plaintiffs fare no better than the *Arcell* plaintiffs in alleging an identical theory.

*Second*, Plaintiffs all but concede their claims are presumptively time-barred, and rely entirely on alleged "continuing violations" or "fraudulent concealment" to revive them. But the purported continuing violation is that Google engaged in the same alleged exclusive dealing that both began and supposedly injured Plaintiffs years before the limitations period. Adhering to the same course of conduct that allegedly causes the same injury to Plaintiffs is not a new "overt act" that restarts the limitations period. On fraudulent concealment, Plaintiffs use isolated quotes from Google's public responses to regulators about allegedly anticompetitive conduct—including agreements for default placement. The very statements on which Plaintiffs rely doom their claims; Google did not conceal the challenged agreements by speaking publicly *about those agreements*.

*Finally*, Plaintiffs' thinly alleged state law claims are defended by just two paragraphs in

their opposition. None of their brief arguments are persuasive.

This is far from Plaintiffs' first bite at the apple. Including *Arcell*, Plaintiffs' counsel has had *seven* tries to state a claim under the theories advanced here. Dismissal should be with prejudice, as any further amendment would be futile and prejudicial to Google.[1]

## I. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ANTITRUST STANDING

### A. Plaintiffs Fail To Plausibly Allege Antitrust Injury

Plaintiffs fail to defend as plausible their theory that, but for allegedly "exclusive" provisions in the challenged agreements, high-quality GSEs would have competed with Google by paying users, charging users to search without ads, or adding unspecified privacy features. And they have no response to the "common sense," "obvious alternative explanation[s]" Google identified for why that BFW never existed. *Eclectic Props. East, LLC v. Marcus & Millchap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).

*First*, contrary to Plaintiffs' defense of their pay-to-search theory (at 5), it is not enough to simply name firms with rewards programs. Otherwise, an alleged GSE that "us[es] its search advertising revenue to plant trees," SAC ¶ 202, would support a BFW in which Google would also have planted trees to compete for users. Plaintiffs are no more injured by not being paid than by not breathing theoretically cleaner air from hypothetical new trees. Plaintiffs recognize this deficit, burying most of their comparators in a footnote that concedes they are not competitors in the GSE market. Opp. 5 n.3. Plaintiffs do not contest that these firms are "different in kind" and do not support "'a plausible inference that Google or other competitors would pay for search data,'" absent the challenged contracts. Dkt. 52 at 8. For the few remaining comparators, Plaintiffs ignore that "[w]hen people look for information on Google or any GSE, they are looking for optimized, accurate search results," Dkt. 52 at 7, not trivial "rewards." Opp. 6-7. Regardless of whether the "loss" of "rewards" could be an "injury" in another context, the point is GSE competition would never center around it. Plaintiffs do not claim "any significant proportion of Bing, Brave, or Scour users even opt into these programs" when they exist, Dkt. 52 at 9, underscoring that users want fast, high-quality search results, not payment. Plaintiffs' BFW would thus not materialize absent

---

[1] Plaintiffs' arguments opposing a stay are premature. If the SAC survives this motion to dismiss—and it should not—Google will evaluate and address any stay request to the Court.

1  the challenged conduct, and any supposedly lost payment is not an *antitrust* injury.

2  　　　　The decisions in *Klein* not only do not save this theory, they refute it. Judge Koh's motion
3  to dismiss decision referred to Bing Rewards to show user data could have value, Opp. 5-6, *not*
4  that it was plausible users would choose a GSE because they could earn a quarter if they ran 50
5  searches, SAC ¶ 199(c), or $25 if they ran 6,500, *id.* ¶ 199(g). And Plaintiffs ignore the key
6  reasoning of Judge Donato's *Daubert* decision. Some firm paying someone for doing something
7  on the internet is irrelevant to whether successful GSEs would have paid users in a more
8  competitive market. *See Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 964-965 (N.D. Cal.
9  2025). Dispositive in *Klein*, as here, was that it is "fanciful" that free services that "consistently
10 competed on the basis of quality," not price, would be "compelled to" fundamentally change and
11 "retain users by paying them, rather than through innovations in … product quality." *Id.* at 963,
12 966-967. Judge Donato ultimately granted summary judgment against the same theory for the same
13 reason. *See Klein v. Meta Platforms, Inc.*, 2025 WL 2772690, at *4 (N.D. Cal. Sep. 29, 2025).

14 　　　　*Second*, Plaintiffs' defense of their theory that Google's conduct suppressed ad-free or
15 privacy-focused GSEs distorts Google's position. It is not alleged (or correct) that Google "chose
16 not to implement 'privacy initiatives.'" Opp. 7. Instead, Google's argument—to which Plaintiffs
17 do not respond—is that privacy and quality present a competitive "tradeoff," and Google addressed
18 that tradeoff by "prioritiz[ing] an improved user experience." *United States v. Google LLC*, 747 F.
19 Supp. 3d 1, 119 (D.D.C. 2024). Plaintiffs acknowledge this tradeoff exists by repeatedly admitting
20 that collecting search data is critical to improving GSEs, *e.g.*, SAC ¶ 50. *See* Dkt. 52 at 11, and do
21 not address Judge Mehta's conclusion that "[i]t may just be that users are willing to sacrifice
22 enhanced privacy offerings for improved search functionality," *Google*, 747 F. Supp. 3d at 119.

23 　　　　Plaintiffs' reliance (at 7-8) on DuckDuckGo's ("DDG") example instead shows it is not
24 viable for GSEs to compete by maximizing privacy features at the expense of optimized "results
25 [users a]re used to getting when [they] search." SAC ¶¶ 211(a). Regardless of "what [DDG] said,"
26 Opp. 8, what Judge Mehta said was that Apple "never genuinely considered using DDG as the
27 default" because its "search quality [is] inferior to Google's." *Google*, 747 F. Supp. 3d at 96.
28 DDG's unwillingness to provide more relevant results means it does not provide the "improved

1  user experience" that Google provides, *id.* at 119, and that Plaintiffs themselves have chosen to
2  use. It makes no sense to insist on the time and expense of discovery and expert testimony when
3  Plaintiffs' lead example confirms that GSEs following DDG's supposedly privacy-focused model
4  cannot compete effectively for reasons having nothing to do with the challenged conduct.

5       *Third*, the most plausible explanation for why Plaintiffs' alternatives have not emerged—
6  regardless of allegedly "exclusive" contractual provisions—is that their key features do not appeal
7  to users. Even Plaintiffs admit they have long used Google, SAC ¶¶ 20-23, instead of Kagi, Brave,
8  or Bing, despite alleging these are high-quality GSEs that offer the rewards, privacy, or reduced-
9  ad features Plaintiffs supposedly prefer, *id.* ¶¶ 211(c), (d). Plaintiffs' disinterest in using GSEs that
10 allegedly offer the exact features they claim were suppressed confirms the implausibility of GSEs
11 with these features competing effectively with Google, regardless of the challenged conduct.

12      Moreover, Plaintiffs concede more than 80% of all searches flowed through Google by
13 2009, before any alleged antitrust violation and despite many firms allegedly offering supposedly
14 suppressed features. *See, e.g.*, SAC ¶ 119. Google allegedly entered the challenged agreements
15 *after* this—after it "'hired thousands of highly skilled engineers, innovated consistently, and made
16 shrewd business decisions,'" that "'result[ed] i[n] the industry's highest quality search engine, …
17 earn[ing] Google the trust of hundreds of millions of daily users.'" *United States v. Google*, 2025
18 WL 2523010, at *38 (D.D.C. Sep. 2, 2025). Plus, Google has consistently "improve[d] its GSE,"
19 SAC ¶¶ 50, 126, 165(a), contrary to the assertion that "GSE results have not meaningfully
20 improved in 20 years," Opp. 9 n.6. Plaintiffs do not rebut the "obvious alternative explanation"
21 that Google's earned quality and trust, rather than allegedly "exclusive" agreements, caused other
22 firms' failures. *Eclectic Props.*, 751 F.3d at 996. Nor do they plausibly allege—even if other GSEs
23 "achieve[d] critical scale," SAC ¶ 211—that any firm could have competed with Google for non-
24 exclusive default placements by leaning on privacy, reduced ads, or pay-to-search features instead
25 of search quality. Indeed, even Microsoft—which cannot reasonably be said to have the limited
26 resources of a "startup," Opp. 8, and whose GSE is "the default GSE on the preloaded Edge
27 browser" on every Windows desktop computer, *Google*, 747 F. Supp. 3d at 38—struggled to
28 compete notwithstanding its rewards program "because of Bing's inferior quality," *id.* at 95.

In short, Plaintiffs fail to plausibly allege the purportedly "exclusive" provisions in the challenged agreements were why their BFW did not emerge, rather than competitors adopting strategies that do not persuade users to abandon "the industry's highest quality search engine."

### B. Plaintiffs Fail To Plausibly Allege Other Antitrust Standing Factors

***Directness of Injury.*** On "directness of the injury" and "speculative measure of the harm," *Oakland v. Oakland Raiders*, 20 F.4th 441, 455 (9th Cir. 2021), Plaintiffs do not address the "vaguely defined links" between their asserted injuries and the allegedly "exclusive" contractual provisions, Dkt. 52 at 14. Instead, Plaintiffs argue they need merely allege that they are consumers protected by the Sherman Act. Even Plaintiffs' own cases (at 11-12) require more, and analyze the directness of the causal chain between challenged conduct and plaintiffs' injury, regardless of their status as "consumers." *See, e.g.*, *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1058 (9th Cir. 1999); *Copeland v. Energizer Hldgs., Inc.*, 716 F. Supp. 3d 749, 770 (N.D. Cal. 2024). Plaintiffs are more like the plaintiffs in *Kloth v. Microsoft Corp.*, who lacked standing to challenge Microsoft's similarly attenuated agreements with third parties to pre-install Microsoft software on computers they purchased, 444 F.3d 312 (4th Cir. 2006), just as Plaintiffs here challenge third-party agreements to set Google Search as the default GSE on the devices or browsers they used.

***Duplicative Recovery and Complex Apportionment.*** Plaintiffs' lead response (at 12) on "risk of duplicative recovery," and "complexity in apportioning damages," *Oakland*, 20 F.4th at 455, is that "any resolution" of these factors is premature. That is wrong. *Oakland* itself affirmed dismissal where damages "would be exceedingly difficult to calculate." *Id.* at 460-461. Here, the issues with calculating damages on Plaintiffs' attenuated theories are also apparent. Plaintiffs do not defend their allegation that "real-world examples of payments" "can be used to … apportion damages," SAC ¶ 265, and nowhere explain how "the value Google derives" from the challenged agreements or "percentage of search volume it would lose without defaults" bear any relationship to their asserted antitrust injury, Opp. 12. It thus remains entirely "speculative to determine the relevant benefits and detriments that non-[Google] products would have brought to the market and the[ir] relative monetary value." *Kloth*, 444 F.3d at 324. "This case is far afield from the conventional [antitrust] case in which an actual purchaser seeks to recover … overcharges,"

*Oakland*, 20 F.4th at 461, and the valuation of whatever injury Plaintiffs claim to have suffered is too speculative to support a claim for damages. Thus, at a minimum, even if their Sherman Act claim is not dismissed entirely, its claim for damages under this theory should be dismissed.

## II. PLAINTIFFS' CLAIMS ARE UNTIMELY

To avoid the time bar, Plaintiffs must plausibly allege that the emergence of hypothetical, high-quality GSEs that paid users to search the internet, charged users to avoid ads, or added privacy features was suppressed by some unlawful action Google took after October 20, 2016. But Plaintiffs effectively concede that none of their allegations from within the limitations period can support these market-wide theories of injury standing alone. Instead, they rely on purported allegations of continuing violations (at 13-15) or fraudulent concealment (at 16-17) to base their theories of liability on concededly pre-limitations conduct. Because they fail to plausibly allege either of these bases for reaching beyond the limitations period, their claims are time-barred.

### A. Plaintiffs Do Not Plausibly Allege A Continuing Violation

To plausibly allege a continuing violation that re-starts the statute of limitations, they "must allege that [Google] completed an overt act during the limitations period." *SaurikIT, LLC v. Apple Inc.*, 2022 WL 1768845, at *2 (N.D. Cal. May 26, 2022). That overt act must be more than "merely a reaffirmation of a previous act," and instead point to "new and independent act[s]" that "inflict new and accumulating injury." *Arcell v. Google LLC*, 2024 WL 1090009, at *5 (N.D. Cal. Feb. 5, 2024) ("*Arcell II*") (quoting *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014)). And the overt act must "not only cause[] [Plaintiffs] injury but also cause[] *antitrust injury* during the limitations period." *Airweld v. Airco, Inc.*, 742 F.2d 1184, 1190 (9th Cir. 1984). Plaintiffs fail to allege overt acts that inflicted a new antitrust injury within the limitations period.

Plaintiffs collect (at 14) a list of alleged conduct to try and revive their time-barred claims. None suffices. Google's internal discussion of "additional ways to embed Google as the default GSE," Opp. 14, is not an overt act that violates the antitrust laws. Neither is Google's alleged collection of search data during the limitations period. *See Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 884 (N.D. Cal. 2015) (alleged overt act must itself be "unlawful" under Sherman Act).

The remaining alleged conduct on which Plaintiffs base their "continuing violation"

argument boils down to the claim that after 2016, Google continued to engage in the same allegedly exclusive dealing as before 2016. They allege: (1) when Verizon asked to change the agreement, Google declined; (2) Google informed Samsung it had violated an existing agreement; (3) Google issued licenses for new devices on the same terms; and (4) "GSE distributors" "routinely renew the distribution deals with their exclusive terms." Opp. 13-14 (quoting SAC ¶¶ 31, 83-85, 245, 249-251). These acts are all "maintenance and renewal of" contractual agreements entered before the limitations period and thus "do[] not qualify as an overt act." *Ryan*, 147 F. Supp. 3d at 885.

Plaintiffs offer no "factual allegations about … changes in the character of these preexisting contracts necessary to render them a 'new and independent act.'" *SaurikIT*, 2022 WL 1768845, at *3. Plaintiffs assert, for the first time and in a footnote, that the renewed contracts here contained changes, but do not explain what those changes were or how they were traceable, if at all, to Plaintiffs' theories of injury. Opp. 13 n.11. Instead, Plaintiffs concede the agreements existed long before the limitations period. They try to rely on Judge Mehta's reasoning that the allegedly "exclusive" provisions of the agreements "enabled Google to widen the moats and pull up the drawbridges to ward off competition." Opp. 9; *Google*, 2025 WL 2523010, at *38. But even under that theory, the supposed moats were built and drawbridges pulled up *years* before the limitations period had run. Plaintiffs do not explain how renewing these agreements inflicted a new injury; once the alleged drawbridge was supposedly up, they do not identify new harm from it staying up.

This case is thus not close to *Samsung*, which involved defendants that allegedly conspired to adopt an entirely new, expanded license for new technology not covered by an existing agreement that could be renewed. 747 F.3d at 1203-1204. Instead, Plaintiffs concede the agreements at issue existed long before the limitations period, contemplated renewals and extensions, and were routinely renewed. SAC ¶¶ 71-72, 85, 87-88. *Samsung* does not "stand for the broad proposition that imposition of a contract on a third-party's new product … restart[s] the statutory clock on the claims of a non-party to the contract" that suffers no new injury. *SaurikIT*, 2022 WL 1768845, at *3; *see also Ryan*, 147 F. Supp. 3d at 885 ("renewal of the preexisting non-solicitation agreements does not qualify as an overt act").

Plaintiffs' citations (at 14-15) to cases denying dismissal based on continuing violations

are inapposite. Some involve price-fixed products, and note that "the rule is different in price-fixing cases because charging a fixed price, on its own, is anticompetitive conduct." *E.g.*, *Gamboa v. Apple Inc.*, 2025 WL 660190, at *3 n.1 (N.D. Cal. Feb. 28, 2025). Others recognized new, entirely independent misconduct within the limitations period as sufficiently alleged overt acts. *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 797 (N.D. Cal. 2022). But none hold that concededly "routine" contractual renewals are overt acts that restart the statute of limitations. "[P]ermitting" such "agreements to establish continuing violations would vitiate the purpose of the statute of limitations," *SaurikIT, LLC v. Apple, Inc.*, 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023)—a purpose demonstrated and further undermined by Plaintiffs' demands that Google preserve twenty years of records and massive amounts of data.

The only alleged conduct left within the limitations period is the 2017 Mozilla contract. Opp. 15. Plaintiffs do not explain how a lone agreement concerning a single internet browser could plausibly "foreclose competition in a substantial share" of the relevant market, as required to violate the Sherman Act, *Google*, 747 F. Supp. 3d at 153—let alone suppress their desired GSEs or be why Google itself does not pay users to search or charge users to avoid ads. *See* Dkt. 52 at 17. Plaintiffs are wrong that Judge Wise's decision in *Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc*, 2025 WL 2637507 (N.D. Cal. Sep. 12, 2025) lets them bootstrap longstanding, pre-limitations contracts onto this lone contract. The statement that courts "consider[] all the conduct alleged as part of one continuing violation" related to whether courts should consider independently or together "multiple theories of liability," *id.* at *8, not multiple factual allegations (some within and some outside the limitations period) that Plaintiffs use to support "a single theory" of liability, Opp. 15. Because Plaintiffs do not plausibly allege their BFW's suppression flowed from Google's limitations period conduct, the SAC must be dismissed.

### B. Plaintiffs Do Not Plausibly Allege Fraudulent Concealment

Nor do Plaintiffs plausibly allege fraudulent concealment that would allow them to rely on pre-limitations conduct. The supposed misrepresentations on which they rely are mere denials of allegations of anticompetitive conduct and "'not sufficient for fraudulent concealment.'" Dkt. 52 at 17-18. Moreover, the statements are responses to regulators' "formal concerns" of

anticompetitive conduct. *Id.* Plaintiffs concede their awareness of these statements, and thus, of public allegations of anticompetitive conduct specifically related to agreements to place Google Search in a default position. *E.g.*, SAC ¶ 232. That is more than enough to show Plaintiffs had "enough information to warrant an investigation which, if reasonably diligent, would have led to discovery." *Reveal Chat Holdco LLC v. Facebook, Inc.*, 2021 WL 1615349, at *7 (N.D. Cal. Apr. 26, 2021). Moreover, the allegations that users generally were unaware of the existence of default search engines are likewise insufficient to establish fraudulent concealment, Opp. 16, particularly absent any allegation that Google sought to conceal its default status on users' browsers or devices.

### C. Plaintiffs' Claims For Injunctive Relief Are Barred By Laches

Plaintiffs' lone response to Google's laches defense is that this Court in *Arcell* found the defense to raise factual questions about "'when Plaintiffs knew or should have known about the default contracts, the reasonableness of any delay in filing suit, and whether the delay prejudiced Google.'" Opp. 17. But, unlike *Arcell*, the answers to these questions are now apparent on the face of the SAC, including allegations of public conduct that long preceded Plaintiffs' filing of this suit, actual knowledge of the claims and underlying allegations in *Arcell* by Plaintiffs' counsel that initially filed this case, and the obvious prejudice of Google facing a *seventh* complaint raising substantially similar theories. Dkt. 52 at 18-19. Plaintiffs cannot cloak themselves in *Arcell* to avoid laches when the history of *Arcell* informs the questions of reasonableness and prejudice here.

### III. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THEIR STATE LAW CLAIMS

*UCL. First,* a UCL action is not available unless Plaintiffs "lack[] an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Even their own case (at 18) acknowledges a split on the "propriety of dismissing equitable claims at the pleading stage," and that both sides of the split require equitable claims to be "'pursue[d] … *in the alternative* to legal remedies at the pleadings stage.'" *Marshall v. Danone US, Inc.*, 402 F. Supp. 3d 831, 834 (N.D. Cal. 2019). Plaintiffs do not plead their UCL claim in the alternative, so it must be dismissed. *Second,* Plaintiffs acknowledge their claim under the unlawful prong is based on their Sherman Act claim, which fails for the reasons above. *Third*, Plaintiffs acknowledge that a claim under the unfair prong fails if it overlaps completely with the other prongs, Opp. 18 n.16, and do not

1  distinguish their claim that Google "took their valuable search data for … financial benefit," and
2  other allegations underlying their antitrust claim, *supra* 6. *Finally*, Plaintiffs argue—without
3  specifically alleging—they have stated a claim under the UCL's fraudulent prong. Opp. 18. But
4  such a claim must satisfy Rule 9(b)'s heightened standard by "alleg[ing] 'the particular
5  circumstances surrounding [the] representations,'" *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 563-
6  564 (N.D. Cal. 2019), and be supported by allegations of "actual reliance," i.e. that the alleged
7  representations were "an immediate cause of *the plaintiff's* injury-producing conduct." *Margolis*
8  *v. Apple Inc.*, 777 F. Supp. 3d 1060, 1067 (N.D. Cal. 2025). Plaintiffs do neither, particularly
9  because they identify no conduct they took in reliance on the supposed misrepresentations.

10         ***Unjust Enrichment.***   Plaintiffs dispute (at 18-19) whether California recognizes a
11 standalone cause of action for unjust enrichment, but cite cases that make Google's precise point—
12 if construed as "a claim for restitution," they must allege Google "received and unjustly retained
13 a benefit at the[ir] … expense." *Lau v. Gen Digit., Inc.*, 2024 WL 1880161, at *5 (N.D. Cal. Apr.
14 3, 2024); *see* Dkt. 52 at 20. Plaintiffs do not dispute that where such a claim "does not allege any
15 distinct purported impropriety, but depends entirely on the allegation that the defendants benefitted
16 from actions … unlawful under other theories of liability in their complaint," the claim rises and
17 here falls with those other claims. *In re Late Fee Litig.*, 528 F. Supp. 2d 953, 967 (N.D. Cal. 2007).
18 Plaintiffs try to salvage their claim by arguing "Google's enrichment was unjust not only because
19 of Google's violations of the Sherman Act and UCL but also because of Google's false promises
20 regarding collection and control of users' search data." Opp. 19. But alleged violations of the
21 Sherman Act and UCL obviously do not allege any "distinct purported impropriety" from
22 Plaintiffs' other claims, and they rely on Google's supposed "false promises" to support both their
23 Sherman Act claim, Opp. 14, and their UCL claim, *id.* 18. Plaintiffs thus fail to allege any "distinct
24 purported impropriety" to support this claim. *In re Late Fee Litig.*, 528 F. Supp. 2d at 967.

25 **IV.**    **DISMISSAL SHOULD BE WITH PREJUDICE**
26         This is far from the first time the Court has considered these issues. Dkt. 52 at 2-4. Because
27 further amendment would be futile and prejudicially require Google to re-litigate the same claims
28 that have repeatedly fallen short, dismissal should be with prejudice.

Dated:  November 7, 2025

Respectfully submitted,

By: /s/ Sonal N. Mehta
WILMER CUTLER PICKERING HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
CHRISTOPHER W. JOHNSTONE (SBN 242152)
Chris.Johnstone@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

*Attorneys for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of November 2025, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

*/s/ Sonal N. Mehta*

Sonal N. Mehta