**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

**LAW OFFICES OF LINGEL H. WINTERS**
Lingel H. Winters, CA Bar No. 37759
A Professional Corporation
2900 Shasta Rd.
Berkeley, California 94708
sawmill2@aol.com

*Counsel for Plaintiffs*

[Additional counsel on signature page]

**WILMER CUTLER PICKERING
HALE AND DORR LLP**
Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
Chris Johnstone (SBN 242152)
Chris.Johnstone@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

David Z. Gringer (*pro hac vice*)
David.Gringer@wilmerhale.com
Paul Vanderslice (*pro hac vice*)
Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ZACHARY CROWELL, CHRISTOPHER WEBER, DYLAN LITTLE, and JENNIFER HUNT, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>GOOGLE LLC,<br><br>      Defendant. | Case No. 3:25-cv-02775-RFL<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to the Court's January 22, 2026 order (Dkt. No. 67), for the Case Management Conference set for Wednesday, February 25, 2026, at 10 a.m., Plaintiffs and Defendant Google LLC have met and conferred and hereby submit this Joint Case Management Statement. This Joint Case Management Statement follows the parties' Rule 26(f) conference, held on January 29, 2026, and February 3, 2026.

## 1. JURISDICTION AND SERVICE

The parties have no jurisdictional disputes or objections. The parties agree that this Court has subject matter jurisdiction and personal jurisdiction over Google, and that venue is proper in this District. Google has been served.

## 2. FACTS

Plaintiffs' Statement:

"Around 2005, Google initiated the idea of an exchange of revenue share for default exclusivity after it grew concerned that Yahoo might replace Google" as the default search engine on Apple browsers. Dkt. No. 80 ¶ 69. After 2005, Google entered into and enforced multiple agreements for default exclusivity, with changes over time. *E.g.*, *id.* ¶¶ 2, 69-98. Those agreements will be a focus in this case, both in terms of the negotiations and competitive effects of that default exclusivity.

2006 and after are important in terms of GSEs offering consumer rewards, more privacy-protective GSEs, and reduced-advertising GSEs. Those early years are when Yahoo! surveyed users about providing search rewards (2006), Microsoft purchased a company that provided cash back to users (2007), Microsoft launched "Live Search Cashback" and "SearchPerks!" (2008), and Google discussed internally how Microsoft was using "[c]ash back service to increase traffic" for search (from a leaked 2009 Google document). *Id.* ¶¶ 8, 200. Plaintiffs will seek discovery focused on those early years and later, including Google emails, chat records, and other documents regarding how Google could cut users "in on the deal" by providing them with rewards or other compensation for using Google search. *Id.* ¶ 11.

Google's internal emails, chats, and other documents from 2005 forward are especially relevant given Google's assertions regarding the but-for world. According to Google's counsel, there is no scenario in which "Google would pay anyone in response to that additional competitive pressure in that but-for world." Dec. 2, 2025 Hr'g Tr. at 12:10-12. Google's counsel previously represented in the *Arcell* case that

1   no company "ever paid" for search data. Dkt. No. 57 at 1-2 (summarizing prior statements by Google's

2   counsel). Plaintiffs will seek discovery to test the assertions by Google and its counsel, to understand what

3   Google employees wrote and considered at the time.

4       October 20, 2016 is four years before DOJ filed its action before Judge Mehta, which provides

5   tolling for Plaintiffs. Dkt. No. 80 ¶¶ 217-19. Plaintiffs will seek discovery regarding Google's continuing

6   violations in and after October 2016. For example, the joint exhibit list from the case before Judge Mehta

7   identifies agreements and amendments Google entered into after October 2016 and before the 2017

8   Mozilla agreement. *United States v. Google LLC*, No. 1:20-cv-3010 (APM) (D.D.C.), Dkt. No. 888 (listing

9   as joint exhibits multiple agreements and amendments, including for example as JX37 a Samsung Mobile

10   Application Distribution Agreement dated March 1, 2017). While only a small number of exhibits are

11   publicly available from the trial before Judge Mehta, and those are generally heavily redacted, some of

12   those exhibits indicate that Google in October 2016 discussed "additional restrictions" (UPX1128) with

13   approval in December 2016 for "changing" the agreements to "protect more of our search revenues"

14   (UPX320). Other redacted filings from the case before Judge Mehta suggest additional anticompetitive

15   acts that constitute continuing violations in late 2016 and 2017. *United States v. Google LLC*, No. 20-cv-

16   3010 (APM) (D.D.C.), Dkt. No. 839 at 82 n.5 (referencing Sony RSA amendment from December 2016)

17   and 112-13 (redacted portion referring to 2017 UCWeb agreement).

18       The principal factual issues in dispute will focus on the harm to consumers from Google's conduct

19   along with the quantification of damages, Google's unjust enrichment, and appropriate injunctive relief.

20       <u>Google's Statement:</u>

21       Google offers Google Search to users for free, investing billions each year to ensure it provides

22   users the best product. The quality of Google's product is why users, including Plaintiffs, choose it over

23   the many available alternative general search engines ("GSEs") identified in the Third Amended

24   Complaint, including GSEs that allegedly offer more privacy or nominal compensation to users. This

25   lawyer-driven case targets agreements under which mobile device or original equipment manufacturers

26   ("OEMs"), wireless carriers, or web browsers chose to integrate Google Search into their devices or

27   browsers, after concluding that Google Search was the highest quality GSE for their users. Two of the four

28

1   named plaintiffs (the original plaintiff in the case, James Attridge, and a plaintiff added in the Second

2   Amended Complaint after the entrance of Boies Schiller) withdrew from the case just days after the Court

3   issued its ruling on the motion to dismiss. The remaining and new Plaintiffs, who purport to be long-time

4   users of Google Search, allege antitrust injury on behalf of a purported class by repackaging factual

5   findings from *United States v. Google*, 20-cv-3010-APM (D.D.C.) ("DOJ Search") and asserting

6   speculative theories of harm. Plaintiffs' two theories of antitrust injury—that absent the challenged

7   agreements (1) Google would have paid users for their use of its free services and (2) competitors would

8   have more successfully competed by offering privacy-protective or ad-free search engines—are fanciful

9   and unsupported, particularly given the availability of privacy-marketed or ad-free GSEs that Plaintiffs

10  could easily set as defaults and Google's longstanding advantages in quality, consumer trust, and partner

11  value that predate the alleged conduct. In reality, Plaintiffs' claimed "injuries" would require a

12  transformation in Google's business model that would degrade the quality of its product, cause gamified

13  and fraudulent searches, and cause advertisers to abandon advertising on search engines.[1]

14  **3.    LEGAL ISSUES**

15      Plaintiffs' Statement:

16      There may be some legal disputes in connection with the parties' discovery efforts, class

17  certification, summary judgment, and the preparation for trial. As noted in Plaintiffs' Second and Third

18  Amended Complaints, this may at the appropriate time include legal issues tied to the application of

19  collateral estoppel based on Judge Mehta's findings, which could at some later time help streamline some

20  issues and reduce the burden on the Court and the jury with any trial. *See, e.g.*, *In re Google Digital Advert.*

21  *Antitrust Litig.*, Case No. 1:21-md-3010 (PKC), 2025 WL 3012840, at *17–18 (S.D.N.Y. Oct. 27, 2025).

22      Google's Statement:

23      The following legal issues are currently in dispute: (1) whether Google possesses monopoly power

24  in a relevant market; (2) whether Google obtained that monopoly power through exclusionary conduct;

25  (3) whether Plaintiffs have antitrust standing and can establish antitrust injury; (4) whether Plaintiffs have

26

27  [1] Google suggested to Plaintiffs that, given the presumptive ten page limit on case management statements and the Court's
    familiarity with the underlying facts, a single paragraph for each side would be appropriate. As is apparent, Plaintiffs refused

28  to limit their statement.

1  suffered any damages proximately caused by the challenged conduct; (5) whether Plaintiffs are entitled to

2  injunctive relief; (6) whether Plaintiffs' Unfair Competition Law and unjust enrichment claims fail because

3  Plaintiffs have an adequate remedy at law, Plaintiffs fail to establish an underlying Sherman Act violation,

4  Plaintiffs fail to prove unlawful conduct, or Plaintiffs lack statutory authorization for the relief sought; (7)

5  whether Plaintiffs can satisfy the requirements of Federal Rule of Civil Procedure 23 to certify a class; (8)

6  whether Plaintiffs' claims are barred by the statute of limitations and the doctrine of laches; and (9)

7  whether Plaintiffs may recover monetary damages for any of the alleged conduct.

8    ***Application of Collateral Estoppel.*** Google will oppose any motion that Plaintiffs file asking the

9  Court to apply collateral estoppel and notes that the core issues in this case—including Plaintiffs' fanciful

10  theories of injury—were not addressed in the DOJ Search case. Further, the DOJ Search Appeal could

11  completely alter the scope of discovery if the underlying decision is overturned.

## 4.    MOTIONS

### Prior & Pending Motions

14    ***Motion to Relate.*** Plaintiff Attridge filed a motion to relate this case to *Rodriguez, et al. v. Google*

15  *LLC*, No. 3:20-cv-04688-RS (N.D. Cal.). Dkt. No. 17. Defendant filed a motion to relate this case to

16  *Arcell, et al. v. Google LLC, et al.*, No. 3:22-cv-2499-RFL (N.D. Cal.). Dkt. No. 18. On May 6, 2025, the

17  Court related this case to *Arcell*. Dkt. No. 23. Chief Judge Seeborg denied the motion to relate this case to

18  *Rodriguez*. Dkt. No. 20 (notice of order).

19    ***Motion to Appoint Interim Class Counsel.*** On September 2, 2025, the Court appointed Boies

20  Schiller Flexner LLP, with David Boies as lead attorney, and Lingel H. Winters as interim co-lead class

21  counsel. Dkt. No. 53.

22    ***Motion to Dismiss.*** On September 1, 2025, Defendant filed a Motion to Dismiss the SAC. Dkt.

23  No. 52. Plaintiffs opposed, *see* Dkt. No. 57, and on December 2, 2025, the Court held a hearing on the

24  Defendant's motion to dismiss, *see* Dkt. No. 62. The Court granted in part and denied in part the Motion

25  to Dismiss on January 21, 2026, *see* Dkt. No. 66, dismissing the SAC's fraudulent concealment theory.

26

27

28

1  **Anticipated Motions**

2  Plaintiffs' Statement:

3  In addition to any discovery motions, Plaintiffs will seek class certification and summary judgment

4  on certain elements of their claims.

5  Google's Statement:

6  ***Motion to Stay.*** Plaintiffs' case is built extensively on Judge Mehta's decision in *United States, et*

7  *al. v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024) ("DOJ Search Decision"), and Plaintiffs have made

8  clear their intent to seek issue preclusion on certain elements in this case—most notably market definition

9  and monopoly power—based on that decision. On January 16, 2026, Google filed a notice of appeal of

10  the DOJ Search Decision. *See United States, et al. v. Google LLC*, No. 26-5023 (D.C. Cir.). Under these

11  circumstances, staying this action pending resolution of Google's appeal is not merely prudent; it is the

12  only efficient course. If the Court were to preclude litigation of any issues in this case based on the DOJ

13  Search Decision and the D.C. Circuit later reverses, the parties would be forced to litigate those issues

14  from the ground up in this case, requiring discovery to begin essentially from scratch. That outcome would

15  squander many months or more of litigation effort, impose millions of dollars in unnecessary costs, and

16  needlessly burden the Court. Conversely, if the parties proceed with discovery into those issues now,

17  without the benefit of appellate resolution, then the parties would need to expend substantial resources

18  litigating issues that Plaintiffs intend to argue should be streamlined or eliminated. Either way, absent a

19  stay, the result is avoidable inefficiency. A stay pending appeal would conserve judicial and party resources

20  and ensure that this case proceeds on a stable and final legal footing.

21  Plaintiffs' lengthy exegesis in opposition can only repeatedly muster the argument that it is

22  "telling" that Google has not sought a stay in other cases. It is unclear what exactly that tells beyond the

23  fact that Google believes a stay would be appropriate here and did not believe so in those other cases.[2] As

24  for the supposed "prejudice" from delay, Plaintiffs delayed filing this case for over a decade and it is

25  untimely. Any delay occasioned by a stay pending appeal will have negligible impact on the overall timing

26  of the case and may, in fact, expedite it.

27

28

---

[2] Google did not seek a stay pending *Arcell* in its motion to dismiss, nor could it have done so. Plaintiffs' contention otherwise is wrong.

1    ***Motion for Class Certification.*** Google anticipates opposing class certification.

2    ***Motion for Summary Judgment.*** If a putative class is certified, Google anticipates moving for

3    summary judgment pursuant to Federal Rule of Civil Procedure 56.

4    ***Other Motions.*** Google also anticipates that there will be further motions, including motions to

5    exclude expert testimony and motions in limine.

6    Plaintiffs' Statement:

7    ***Response To Google's Potential Motion To Stay.*** A stay would prejudice Plaintiffs and the people

8    they seek to represent, and Plaintiffs will oppose any stay motion. As Plaintiffs explained in response to

9    Google's request for a stay based on *Arcell* in its motion to dismiss (a request Google then abandoned),

10   Google "bears the burden of establishing its need" for a stay and "must make out a clear case of hardship

11   or inequity." Dkt. No. 57 at 20 (citing cases, quotations omitted). Google can make no such showing.

12       It is telling that Google is litigating and has not sought a stay in at least *three* other cases involving

13   many of these *same issues* decided by Judge Mehta: (i) *Arcell v. Google*, where Google appears to have

14   already produced at least some of the Judge Mehta materials, and its counsel already discussed collateral

15   estoppel with Magistrate Judge Kim; (ii) *Yelp v. Google*, before Magistrate Judge van Keulen, where Yelp

16   also referenced Judge Mehta's findings in its complaint and noted the potential application of issue

17   preclusion in the joint case management statement, and where Google already agreed to produce

18   documents it produced in the Judge Mehta case to Yelp by February 2, 2026[3]; and (iii) *Branch Metrics v.*

19   *Google*, where the complaint likewise referenced the Judge Mehta case and Branch is seeking materials

20   from the Judge Mehta case and trial is scheduled for October 2026.[4]

21       It is also telling that Google has not sought a stay in the private antitrust cases brought by publishers

22   and advertisers of display ads in the Southern District of New York before Judge Castel, who recently

23

24   [3] *Yelp Inc. v. Google LLC*, No. 5:24-cv-6101-SVK (N.D. Cal.) Dkt. No. 1 (complaint filed in August 2024 and citing Judge Mehta's findings in support of those claims), Dkt. No. 69 (joint case management statement where Yelp cited Judge Mehta's

25   findings and asserted that "certain identical overlapping issues were litigated, some of which with preclusive effect here" and the parties agreed to certain "[d]ocument Production from *U.S. v. Google*" by February 2, 2026).

26
27   [4] *Branch Metrics, Inc. v. Google LLC*, No. 2:25-cv-89-JRG (E.D. Tex.) Dkt. No. 1 (complaint filed in January 2025 referencing DOJ action), Dkt. No. 49 (case schedule with jury selection starting on October 5, 2026), Dkt. No. 64 (Branch seeking to compel production of expert reports, asserting that the experts in the Judge Mehta case addressed "the same allegations" of

28   anticompetitive conduct "concerning the same Google products" at issue here) (citation omitted).

granted issue preclusion at summary judgment based on the findings in another DOJ case against Google. *In re Google Digital Advert.*, 2025 WL 3012840, at \*17-18; *cf. also Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) (a final judgment "retains its collateral estoppel effect, if any, while pending appeal" (citation omitted)). Like the DOJ's case before Judge Mehta, Google is also appealing Judge Brinkima's decision in the DOJ's advertising antitrust case which was the basis for Judge Castel's issue preclusion decision, without any stay in that action.

Regardless of Google's appeal, this case will go forward. If the appeal is sustained, that would have an effect on collateral estoppel, but it is one-way collateral estoppel. This case will go ahead regardless, and discovery will need to be taken in this case regardless of that appeal. Plaintiffs seek discovery (starting with the Judge Mehta record and then supplementing that record) to then seek class certification and prepare for trial. With or without issue preclusion, that work needs to happen in this case.

The only hardship Google identifies is the burden of litigating, with Google focusing on how Plaintiffs *in the future* will likely seek to *streamline* the issues to be tried to a jury based on issue preclusion. That future request is not a basis for any stay, because Google being "required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" warranting a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (vacating stay); *Am. Honda Motor Co. v. Coast Distribution Sys., Inc.*, 2007 WL 672521, at \*2 (N.D. Cal. Feb. 26, 2007) ("the hardship attendant with being forced to defend a lawsuit is irrelevant when considering whether to grant a stay").

Staying this case would prejudice Plaintiffs and consumers not only in terms of delaying relief but also in terms of obtaining discovery in a timely manner. Timely discovery is especially important given what Judge Donato described as a "systemic culture of evidence suppression at Google" (see Section 8 below) and the high turnover of employees at Google. Plaintiffs seek important relief, including injunctive relief, and a stay would undermine Plaintiffs' legitimate "interest in moving the case forward to final disposition." *Federated Indians of Graton Rancheria v. United States Dep't of the Interior*, No. 24-cv-08582-RFL, 2025 WL 2522376, at \*3 (N.D. Cal. Sept. 2, 2025) (Lin, J.) (denying request for stay).

1  **5.      AMENDMENT OF PLEADINGS**

2         Plaintiffs filed their Third Amended Complaint (Dkt. No. 80) pursuant to the parties' stipulation

3  (Dkt. No. 74) and may at some point seek leave from the Court to amend, including to conform to the

4  evidence. Google reserves its rights to oppose any potential future request from Plaintiffs to seek leave to

5  further amend their complaint.

6  **6.      EVIDENCE PRESERVATION**

7         The parties have reviewed and familiarized themselves with the Guidelines Relating to the

8  Discovery of Electronically Stored Information ("ESI Guidelines"), as well as the Northern District of

9  California's Checklist for ESI Meet and Confer. The parties have exchanged more than 18 letters or emails

10  regarding preservation from July 2025 through present and met and conferred on August 14, 2025

11  regarding the same. The parties also met and conferred pursuant to Fed. R. Civ. P. 26(f) on January 29,

12  2026, and February 3, 2026, including, among other issues, preservation.

13         <u>Plaintiffs' Statement</u>:

14         The parties have a dispute regarding Google's preservation of non-custodial ESI. Consistent with

15  the ESI Guidelines and this District's model ESI order, Plaintiffs have for months sought to understand

16  the extent to which Google has been preserving non-custodial ESI, including data regarding Google's

17  collection, storage, and use of search-related data. Google responded with a "take-it-or-leave-it" proposal

18  where Google would preserve some data (including some Google-selected samples provided to the DOJ)

19  without identifying the data that Google seeks to destroy or making any proposal regarding how that data

20  would be used in this litigation. The parties discussed these issues during the 26(f) conference. On

21  February 9, 2026, at Google's request, Plaintiffs served data-focused document requests and also a letter

22  with proposals regarding how the parties might be able to proceed with sampled data. As explained in that

23  letter, Google should not be permitted to delete data that could be relevant for liability, damages, or class

24  certification and then in the future attack Plaintiffs, their experts, or their methodologies on the basis that

25  they lack such data. Google has not yet responded to those document requests or that letter.

26

27

28

1    <u>Google's Statement</u>:

2    Plaintiffs' non-custodial data preservation demands are irrelevant, unduly burdensome, massively

3    overbroad, and not proportional. They seek preservation of voluminous search, advertising, and user-

4    interaction event-level data—i.e., data reflecting the content of hundreds of millions of individual

5    Americans' searches across numerous years. Preserving this data would impose an enormous and

6    unjustified burden on Google. Given the billions of Google searches conducted daily, preserving

7    additional search logs over three years of potential litigation could require at least 145,000 terabytes of

8    storage.

9    Over seven months of correspondence, Google has consistently explained that event-level data is

10   not relevant to Plaintiffs' claims, and Plaintiffs have offered no explanation to the contrary. *First*, the

11   queries of individual users' searches, the search results Google returned in response to those queries, and

12   metadata and user interaction data associated with those queries shed no light on Google's intent or

13   business decision-making. Nor does it inform whether, absent the challenged agreements, Google would

14   have adopted alternative business models or other GSEs with alternative business models would have

15   been more successful. *Second*, event-level data is irrelevant to damages or injury. Antitrust damages are

16   determined by comparing market outcomes under the challenged conduct with outcomes in a competitive

17   but-for world, based on economic analysis of market-wide effects—not granular logs of individual user

18   interactions. *See L.A. Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1367 (9th Cir. 1986) (quoting

19   *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946)) ("A plaintiff's antitrust damages are to

20   be calculated 'by comparison of profits, prices and values as affected by the [defendant's conduct], with

21   what they would have been in its absence under freely competitive conditions.'"). Event-level data does

22   not show what prices, products, or competition would have looked like absent the alleged conduct. Where,

23   as here, a requesting party fails to explain "why they request the information, or why it is relevant," there

24   is no preservation obligation. *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 415, 422 (S.D. Cal. 2018)

25   (emphasis omitted).

26   To address any preservation concerns, on October 16, 2025, Google proposed a compromise—

27   without conceding relevance—to preserve a sample of the requested event-level data. Google offered to

28

1  preserve: (1) all search log data produced in DOJ Search (over 11 terabytes compressed); (2) a substantial

2  sample of search ads logs (exceeding one billion ad requests); and (3) aggregated data reflecting U.S.

3  search user and query volumes dating back to 2011, as well as metrics on user-initiated data deletion dating

4  back to 2023. Plaintiffs rejected the proposal and failed to make any counterproposal. Plaintiffs' accusation

5  that Google presented a "take-it-or-leave-it" offer is not justified. Google repeatedly invited Plaintiffs to

6  explain why Google's proposal was inadequate, articulate how any additional scope of information

7  requested be preserved relates to Plaintiffs' claims, and to make a counterproposal. It is now obvious why:

8  Plaintiffs served a request for data on February 9, 2026, and it is now abundantly clear that the data is

9  irrelevant and is not required to be preserved.

10  The issue was again discussed at the Rule 26(f) conference, where Plaintiffs stated they would

11  advise whether they are willing to consider sampled event-level data preservation. Google remains willing

12  to work cooperatively, but Plaintiffs must tailor any preservation requests to data that is relevant and

13  proportional to the needs of the case. Their initial data requests are anything but tailored and Google

14  intends to object to the Requests in their entirety.

15  At bottom, Plaintiffs have still failed—including in this statement—to articulate a theory of why

16  the data that they are seeking is relevant.

17  **7.    DISCLOSURES**

18  The parties have agreed to serve the information required by Fed. R. Civ. P. 26(a)(1) by no later

19  than March 6, 2026.

20  **8.    DISCOVERY**

21      **A.    Discovery Taken To Date**

22  The parties have served document requests.

23      **B.    Scope of Anticipated Discovery**

24  Plaintiffs' Statement:

25  Plaintiffs' goal is to proceed efficiently, with Plaintiffs and Google each using materials from the

26  Judge Mehta case and supplementing that record as appropriate (and in a proportional manner) for

27  purposes of fairly presenting and deciding the claims and defenses in this action. The starting point for

28

this case should be the materials from the Judge Mehta case. Google can and should quickly provide those materials to Plaintiffs. There are also materials from other cases against Google that will be relevant in this case, such as materials from the Play Store litigation before Judge Donato and the privacy cases before Chief Judge Seeborg and Judge Gonzalez Rogers. By seeking those materials, Plaintiffs seek to streamline discovery and the presentation of evidence in this case in ways that will benefit all of the parties and also the Court. Plaintiffs anticipate written discovery concerning, for example, the harm to consumers from Google's conduct, Google's enrichment, and the class-wide relief Plaintiffs will seek on behalf of consumers. This will include written discovery and additional depositions, but that can be done in a way that minimizes duplication with the work that was already done in other cases against Google.

Two key discovery issues Plaintiffs hope to address at the outset:

***Materials From The Judge Mehta Case.*** Providing access to such materials is routine in civil antitrust cases. For example, in another civil antitrust class case against Google, Judge Freeman ordered Google to produce to the civil plaintiffs "everything" Google had produced as part of an investigation by the Texas Attorney General. *In re Google Digital Advertising Antitrust Litig.*, No. 5:20-cv-3556 (N.D. Cal.), Dkt. No. 151 at 8-9 (ruling from the bench that Google should produce those documents); *In Re Google Digital Advertising Antitrust Litigation*, 1:21-cv-07001-PKC (S.D.N.Y), Dkt. No. 160 (Google's counsel confirming Google had produced pursuant to Judge Freeman's order the "2 million documents that were part of the investigative production to Texas"). There are many other examples. *See, e.g.*, *In re Optical Disk Drive Products Antitrust Litig.*, No. 3:10-md-02143 (N.D. Cal.), Dkt. No. 387 (Magistrate Judge Spero ordering defendants to produce documents that had been produced to DOJ in parallel proceeding); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-cv-01819-CW (N.D. Cal.), Dkt. No. 217 at 2 ("Defendants shall produce to Plaintiffs all documents they have produced to the Department of Justice"); *see also In re Plastics Additives Antitrust Litig.*, No. CIV.A. 03-2038, 2004 WL 2743591, at *12 (E.D. Pa. Nov. 29, 2004) (discussing how defendants in antitrust cases "regularly agree" to "produce documents submitted to the DOJ" and ordering production).

It appears Google has already produced some or all documents it produced in the Judge Mehta case in other pending civil antitrust cases. For example, in the *Yelp v. Google* case, the parties' *jointly*

submitted case management statement described how Yelp sought "Google's productions from *United States et al. v. Google LLC*, No. 20-cv-3010 (APM) (D.D.C.), in which certain identical overlapping issues were litigated, some of which with preclusive effect here" and included an *agreed to* February 2, 2026 deadline for Google to produce those documents. *Yelp*, No. 5:24-cv-6101-SVK (N.D. Cal.), Dkt. No. 69 at 10-11. Google also appears to have produced at least some of these documents to the *Arcell* plaintiffs and also likely in the *Branch* case. In any case, Google should produce all Google-produced documents to Plaintiffs without further delay. This is easy to do with almost zero burden on Google.

Regarding Google's statement below: (1) there is nothing premature about this issue, which Plaintiffs raised months ago; (2) except for any specific documents requiring notice to third parties, there is nothing stopping Google from producing the documents immediately to Plaintiffs; (3) in terms of confidentiality designations by third parties, Plaintiffs have no objection to Google taking the necessary steps to notify those third parties, which can be done quickly; (4) Google's counsel for the first time identified proposed "carve outs" on February 12, 2026, and none of them are necessary or appropriate, as Judge Freeman explained when she ordered Google to produce "everything" it had given to Texas. In terms of the documents, transcripts, and materials from other cases, Plaintiffs are willing to meet and confer to come up with a fair and efficient process and if necessary raise any disputes with the Court. Plaintiffs are willing to prepare and serve additional specific discovery requests, as Google requests below.

***Google's Document Creation And Retention Practices And Privilege Assertions.*** One other discovery issue that Plaintiffs will seek to address early on is to better understand the extent to which Google employees (i) destroyed potentially relevant documents, including internal employee chat records; (ii) sought to avoid the creation of documents that could be used against Google; and (iii) sought to avoid production of relevant documents through what Google employees described as "fake privilege." These Google practices are reflected in part in the filings, rulings, and comments by Judge Mehta, Judge Donato (in *In re Google Play Store Antitrust Litigation*, No. 3:21-md-2981 (N.D. Cal.)), and Judge Brinkema (in *United States v. Google LLC*, No. 1:23-cv-108 (E.D.V.A.)). In 2008, recognizing that documents could be produced in litigation, Google changed its retention policy to automatically delete chat records. *See, e.g.*, *Google*, No. 1:20-cv-3010 (APM) (D.D.C.), Dkt. No. 512 (Plaintiffs' motion for sanctions, detailing

1    Google's conduct). In seeking sanctions before Judge Mehta, DOJ submitted and relied in part upon

2    documents produced and presented in the case before Judge Donato, including one email where Google

3    employees discussed how Google lawyers were looped in for purpose of creating "fake privilege" with

4    documents. *Id*; Dkt. No. 843 at 3. Judge Mehta found that any sanctions in that case would not "move the

5    needle on the court's assessment of Google's liability." *Google*, 747 F. Supp. 3d at 187. He noted: "Google

6    avoided sanctions in this case. It may not be so lucky in the next one." *Id.* Judge Donato commented that

7    this was "the most serious and disturbing evidence I have ever seen in my decade on the bench with respect

8    to a party intentionally suppressing potentially relevant evidence in litigation" and that he had "never seen

9    anything this egregious." *In re Google Play Store*, No 3:20-cv-5671-JD (N.D. Cal.), Dkt. No. 591 at 163.

10   He described a "rampant and systemic culture of evidence suppression at Google" that was a "frontal

11   assault on the fair administration of justice." *Id.* at 163–64. These Google practices continued, and were

12   ongoing and widespread within Google, including efforts by Google CEO Sundar Pichai to for example

13   have "history off" chats. *Google*, No. 1:20-cv-3010 (APM) (D.D.C.), UPX0973. Plaintiffs seek to confirm

14   that Google's employees are no longer using any kind of auto-delete or disappearing messages for any

15   potentially relevant communications. Plaintiffs anticipate seeking early discovery to determine how to

16   best address these issues in this case and ensure a fair administration of justice that accounts for Google's

17   destruction and suppression of evidence, which occurred during some of the critical years during which

18   Plaintiffs will be seeking discovery from Google.

19       ***Response Regarding Google's Discovery.*** Google served its first set of document requests on

20   February 2, 2026, and Plaintiffs are preparing objections and responses.

21       Google's Statement:

22       ***Plaintiffs' Discovery.*** On January 30, 2026, Plaintiffs served their first requests for production,

23   which includes a request for wholesale cloned production of the millions of documents produced by

24   Google and non-parties in the DOJ Search litigation before Judge Mehta. Google will serve its responses

25   and objections by the March 2, 2026 deadline. Plaintiffs' request for a court order compelling Google to

26   complete production of all DOJ Search materials by March 4, 2026, *see infra* § 15, is premature and

27

28

inconsistent with the purpose of the case management conference, which is intended to address scheduling and procedural matters—not to resolve unripe discovery disputes.

In any case, Google has already indicated that it will work with Plaintiffs to determine the appropriate scope of DOJ Search materials to produce and produce them on a reasonable schedule. There is currently no dispute and there is a pending discovery request that Google will respond to under the timeframe set forth in the Federal Rules. Plaintiffs' self-serving timeline for cloned production is unworkable because Google is bound by Judge Mehta's protective order governing DOJ Search and cannot simply reproduce documents and materials, including depositions, expert reports, and trial exhibits, among other items, designated by non-parties as "Confidential" or "Highly Confidential." Under the DOJ Search protective order, Google must first notify a non-party that its confidential or highly confidential information is being requested, and the non-party has 14 days to review the requested material, and consent to production, lodge an objection, or seek a protective order from Judge Mehta. *Google*, No. 1:20-cv-3010 (APM) (D.D.C.), Dkt. No. 84 at 9-10, Dkt. No. 98 at 10-11. This required process makes production by March 4 impossible.

The scope of Plaintiffs' request is also improper. At the Rule 26(f) conference, the parties discussed negotiating an appropriate carve-out from Google's DOJ Search productions to identify materials irrelevant to this action. Google produced millions of documents in DOJ Search, many of which relate solely to claims that were dismissed and have no relevance here, including materials concerning: (1) Google's design of its Search Results Page and its relation to Specialized Vertical Providers; (2) Android Compatibility Commitments and Anti-Fragmentation Agreements; (3) agreements relating to Google Assistant on Internet-of-Things devices; (4) management of the Android Open-Source Project; and (5) Google's use of its proprietary search engine marketing tool, SA360. Google anticipates the parties can resolve the scope of any appropriate production through further meet-and-confer.

While Plaintiffs request the production of all documents Google produced in the DOJ Search investigation and ensuing litigation, the cases they cite are distinguishable. With respect to the *In re Google Digital Advertising Antitrust Litig.* cases, Google did not produce the full DOJ Search record there. Plaintiffs' other cases do not support the notion that Google should be required to reproduce large numbers

of irrelevant documents. *See In re Optical Disk Drive Products Antitrust Litig.*, No. 3:10-md-02143 (N.D. Cal.), Dkt. No. 387 at 20-21 (noting that defendants failed to propose carveouts of irrelevant material); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 4:07-md-01819 (N.D. Cal.), Dkt. No. 217 at 2 (not analyzing whether to order the production of large portions of irrelevant material from the DOJ record); *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *12-13 (E.D. Pa. Nov. 29, 2004) (same). Plaintiffs also wave their hands at *Yelp*, *Arcell*, and *Branch Metrics*, but Google did not reproduce the full DOJ Search record in *any* of those cases.

Plaintiffs demand for cloned discovery from cases other than DOJ Search, including from the Play Store litigation before Judge Donato and the privacy cases before Chief Judge Seeborg and Judge Gonzalez Rogers, is improper. The vast majority of the millions of documents and materials produced therein are irrelevant here.

Google believes that any other documents that may be relevant to Plaintiffs' claims should be requested through focused and specific document requests, not blunderbuss demands for cloned discovery, and should take into account any reproduction by Google of documents from DOJ Search.

The night before this statement was due, after the parties had engaged in multiple conferences and already exchanged drafts, Plaintiffs added yet another lengthy screed, this time on issues relating to preservation from other cases. Google is confident that it has implemented an appropriate litigation hold— and communicated this to Plaintiffs before discovery opened. If Plaintiffs have specific concerns about this case, they should raise them with Google. But Plaintiffs should not be permitted to waste the Court's time and that of the parties "getting to the bottom" of what happened in other cases. Try as they might, Plaintiffs' efforts to relitigate what happened in other cases before other judges cannot distract from the meritless theories that they must litigate and ultimately prove in this one.

Plaintiffs' reference *In re Google Play Store Antitrust Litig.*, during which Judge Donato noted that Google should have informed the plaintiffs early on in that litigation that individuals on hold were personally required to change the retention setting on their Chats from the default "history off" setting. 664 F. Supp. 3d 981, 993 (N.D. Cal. 2023). In February 2023, *two years* before Plaintiffs filed this lawsuit, Google updated its Chat retention process for employees subject to a litigation hold, such that "history

1  on" for Chats is automatically initiated and individual employees cannot change the setting (i.e., all Chats

2  are automatically preserved for anyone placed on litigation hold). This retention policy has been in place

3  for the duration of this lawsuit, and, on top of backend preservation of data with Google's possession,

4  custody, and control, Google has instructed its employees to retain all documents relevant to this litigation.

5      ***Google's Discovery.*** Google intends to seek discovery and depositions from named Plaintiffs,

6  including past, present, and future named Plaintiffs, regarding, among other things, the GSEs and other

7  online services Plaintiffs use, Plaintiffs' Google account and privacy settings and Plaintiffs' account and

8  privacy settings on other online services accounts or apps, Plaintiffs' advertising settings on various online

9  accounts and personal devices, Plaintiffs' compensation or attempts to seek compensation from any other

10  services for their time and attention, any harm they purportedly suffered from the alleged acts in the

11  Complaint, and the circumstances regarding the withdrawal of certain named Plaintiffs. Google may seek

12  non-party discovery from apps regarding communications with users, from other Google competitors

13  including GSE competitors and other online services, from purported comparators Plaintiffs have

14  identified, or from any Google partners regarding the agreements identified in the Complaint.

15      **C.    Proposed Limitations or Modification of the Discovery Rules**

16      The parties agree to the points below and then include separate statements.

17      ***Document Subpoenas to Non-Parties.*** The parties agree as follows with respect to non-parties

18  producing materials in response to Fed. R. Civ. P. 45 document subpoenas in this action: The issuing party

19  shall request that non-parties simultaneously produce materials to both Plaintiffs and Google. If,

20  notwithstanding such request, the non-party does not produce the materials to both sides, the issuing party

21  shall provide a copy of all materials to the other side within three business days after receipt of the

22  materials from the non-party, subject to any limitations in the Protective Order. If a party modifies or

23  extends the time to respond to a Fed. R. Civ. P. 45 document subpoena (whether orally or in writing), it

24  shall simultaneously notify the other party of that extension, modification, or explanation, including

25  providing copies of any written agreements regarding modification or extension.

26      ***Expert Discovery.*** The parties agree that expert disclosures, including each side's expert reports,

27  shall comply with the requirements of Federal Rule of Civil Procedure 26(a)(2), except as modified herein.

28

1    Neither side must preserve or disclose, including in expert deposition testimony, the following documents

2    or materials: (i) any form of communication or work product shared between any of the parties' outside

3    litigation counsel and such party's expert(s) or consultant(s), or between any of such party's experts or

4    consultants themselves; (ii) any form of communication or work product shared between an expert and

5    persons assisting the expert; (iii) expert's notes, unless they are expressly relied upon and/or cited in

6    support of an opinion or fact; or (iv) drafts of expert reports, analyses, or other work product. The parties

7    shall disclose the following materials in connection with all expert reports: (a) a list by Bates number of

8    all documents relied upon by the testifying expert(s); (b) copies of any materials relied upon by the expert

9    not previously produced or otherwise generally available; (c) for any calculations appearing in the report,

10    all data and programs underlying the calculation, including all programs and codes necessary to recreate

11    the calculation from the initial ("raw") data files, and including the intermediate working-data files that

12    are generated from the raw data files and used in performing the calculations appearing in the report; and

13    (d) information regarding all compensation to be paid for the study and testimony in the case.

14        <u>Plaintiffs' Statement</u>:

15        Given the more than 380 current and former Google employees currently on litigation hold, and

16    the many tens of thousands of current and former Google employees, Plaintiffs anticipate seeking to

17    negotiate an agreement with Google regarding an increased number of depositions and possibly

18    modifications for written discovery. Plaintiffs are hopeful that they can reach agreements with Google in

19    this case for depositions and other discovery, informed in part by Plaintiffs' access to and review of the

20    materials from the Judge Mehta case and other cases against Google.

21        ***Response Regarding 30(b)(6) Depositions.*** Google's proposed limits on 30(b)(6) depositions are

22    premature, especially when Google has not produced any deposition testimony from the Judge Mehta

23    case, including any 30(b)(6) testimony. After Plaintiffs review that testimony, they will be in a better

24    position to discuss reasonable limits on 30(b)(6) depositions.

25        ***Response to Proposal Regarding Lead Counsel.*** The Court appointed Mr. Boies and Mr. Winters

26    as co-lead counsel, and Google's lead counsel appears to be Sonal Mehta. Plaintiffs will comply with

27    whatever expectations the Court may have in terms of the participation of counsel in live discussions

28

1  regarding discovery disputes. Plaintiffs view the key issue as making sure that participating counsel

2  (including Google's counsel) are familiar with the issues and fully empowered to reach agreements to

3  resolve any disputes.

4     <u>Google's Statement</u>:

5     ***Depositions.*** Google will consider any proposal for depositions that Plaintiffs make. However, at

6  this point, Google proposes (consistent with the practice of other courts in the District) that the Court enter

7  an order of no more than 10 total Rule 30(b)(6) topics per side and limit each side to a single Rule 30(b)(6)

8  deposition per party of no more than 21 hours total. *See* Standing Order For Discovery In Civil Cases

9  Before Judge Donato at 5 (10 subject matters permitted absent court order for Rule 30(b)(6) depositions).

10  Google anticipates negotiating parameters for expert depositions separately.

11     ***Lead Counsel Meet and Confer.*** Google recognizes that the Court's Standing Order requires that

12  parties may not file a joint letter regarding any discovery disputes before a "live conversation" between

13  counsel. Google believes that a requirement that lead counsel be present at this live conversation would

14  ensure that the parties efficiently proceed through discovery and minimize the burden on the Court by

15  eliminating discovery disputes that might otherwise be resolved without the Court's time and resources.

16     **D.**  **Stipulated e-Discovery Order**

17     The parties are negotiating a stipulated e-Discovery order to be submitted separately for the Court's

18  consideration.

19     <u>Plaintiffs' Statement</u>:

20     Plaintiffs are concerned that Google has been delaying these negotiations to delay discovery. On

21  November 25, 2025, Plaintiffs sent Google a letter with a request for a draft ESI Order based on the

22  Northern District of California model. On January 2, 2026, Google sent an email addressing that letter

23  without addressing that request. On January 9, 2026, Plaintiffs raised this issue again by email. On January

24  19, 2026, Plaintiffs went ahead and sent Google a draft ESI order (with a draft protective order). On

25  January 29, 2026, during the first Rule 26(f) conference, Google's counsel said that they would respond

26  with a draft. Today, Google stated for the first time that it would provide revisions by February 24, 2026.

27

28

1   Google's Statement:

2       Google will provide revisions to Plaintiffs' proposed ESI Order and Protective Order by February

3   24, 2026. The issues raised by these two orders are complex given the overlay of other cases, and Google

4   has had to make a significant number of revisions to Plaintiffs' drafts.

5       **E.    Identified Discovery Disputes**

6   Plaintiffs' Statement:

7       ***Access to materials from the Judge Mehta case***. As explained above, one key discovery dispute

8   is the extent to which Google will provide Plaintiffs access to materials from the Judge Mehta case.

9       ***Protective Order & ESI Order***. On January 19, 2026, Plaintiffs sent drafts of a protective order

10  and an ESI order to Google, based on the Northern District of California models. Google still has not

11  provided Plaintiffs with any proposed edits. If there are any disputes, that should be addressed quickly so

12  that this does not delay productions and other discovery.

13  Google's Statement:

14      ***Access to Materials from the Judge Mehta Case***. Google refers the Court to its discussion

15  regarding Plaintiffs' requests for cloned production above. *See supra* at 13-15 (Section 8(B)). Google will

16  negotiate with Plaintiffs to reproduce certain relevant categories of documents from the DOJ Search

17  litigation.

18  **9.    CLASS ACTIONS**

19      The parties have reviewed the Procedural Guidance for Class Action Settlements.

20  Plaintiffs' Statement:

21      Plaintiffs' Third Complaint identifies two classes (Dkt. No. 80 ¶ 253) and includes factual

22  allegations supporting class certification. Plaintiffs intend to seek certification under Federal Rules of

23  Civil Procedure 23(b)(2) and 23(b)(3) and possibly in the alternative under 23(c)(4). Plaintiffs propose a

24  schedule for briefing class certification below.

25  Google's Statement:

26      Plaintiffs cannot satisfy the class-certification prerequisites or requirements set forth in Fed. R.

27  Civ. P. 23. Google proposes a schedule for discovery and briefing class certification below. *See infra* § 15.

28

**10.   RELATED CASES**

The only case that has been identified so far as related is *Arcell, et al. v. Google LLC, et al.*, No. 3:22-cv-2499 (N.D. Cal.), which is pending before Your Honor.

**11.   RELIEF**

Plaintiffs' Statement:

As stated in Plaintiffs' Third Amended Complaint, Plaintiffs seek all available legal and equitable relief, as well as attorneys' fees and costs, on behalf of themselves and all others similarly situated. The bases for and amount of damages and other relief is something that will be addressed through fact and expert discovery. That will include damages and unjust enrichment.

Google's Statement:

Google disputes that it is liable to Plaintiffs for any damages or other relief. Google expects Plaintiffs to comply with Fed. R. Civ. P. 26 in their initial disclosures and provide a "computation" of their claimed damages.

**12.   SETTLEMENT AND ADR**

No settlement discussions have taken place. Pursuant to ADR Local Rule 3-5 and Civil Local Rule 16-8, on February 2, 2026, the parties met and conferred regarding the available dispute resolution options and filed their respective ADR Certifications. Dkt. Nos. 75–79. The parties will work together to identify a private mediator.

**13.   OTHER REFERENCES**

At this time, the parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.   NARROWING OF ISSUES**

Plaintiffs' Statement:

Plaintiffs believe that the most consequential issue for efficiently narrowing and sequencing discovery is prompt access to Google's productions and related discovery materials from the Judge Mehta case, subject to any applicable protective order procedures.

1    Google's Statement:

2       The parties have not agreed on any issues that can be narrowed. Google understands this topic to

3    relate solely to substantive issues.

4       ***Plaintiffs' access to materials from the Judge Mehta case***. Google refers the Court to its

5    discussion regarding Plaintiffs' requests for cloned production. *See supra* at 13-15 (Section 8(B)). Google

6    will negotiate with Plaintiffs to reproduce certain relevant categories of documents from the DOJ Search

7    litigation.

8       ***Google's document creation and retention practices.*** Google has issued a preservation hold to

9    nearly 400 individuals, which includes preservation of all relevant materials, including Chats. Google told

10   Plaintiffs this in their first meet and confer regarding preservation in August 2025.

11   **15.   SCHEDULING**

12      The parties met and conferred regarding the case schedule and the parties include proposals below

13   for the Court's consideration.

14   Plaintiffs' Statement:

15      Plaintiffs' proposed schedule is based on the Court's Standing Order, which states that parties in

16   class actions "should propose a schedule through the class certification hearing" and in most cases "fact

17   discovery will close around 60 days after the class certification order issues." To move things forward,

18   Plaintiffs include an initial deadline for Google to produce materials from the Judge Mehta case. Plaintiffs

19   disagree with the schedule proposed by Google. The parties should follow the sequencing preferred by

20   the Court, and this case should not take nearly as long as Google proposes.

| Event | Date / Deadline |
|---|---|
| Google (1) completes production of Google-produced materials from the Judge Mehta case that don't require any notice prior to production and (2) provides notice to third parties of production of other materials | By March 4, 2026 (deadline of seven (7) days after the CMC) |
| Plaintiffs file class certification motion | October 15, 2026 |

| Google files response to class certification motion | November 12, 2026 (4 weeks) |
|---|---|
| Plaintiffs file reply to class certification motion | December 10, 2026 (4 weeks) |
| Class certification hearing | At the Court's convenience |
| Close of fact discovery | 60 days after the class certification order issues |

<u>Google's Statement:</u>

***Parallel Fact and Class Discovery.*** Google is aware that the Court's standing order notes that in putative class actions, the "parties should anticipate in most cases that fact discovery will close around 60 days after the class certification order issues." For this matter, Google proposes the parties conduct fact and class certification discovery simultaneously and conclude fact discovery before class certification briefing. Separating class discovery from merits discovery may lead to intractable disputes about the scope of discovery; documents that may support or undermine Plaintiffs' motion for class certification will likely be equally relevant to the merits. *See Imran v. Vital Pharms., Inc.*, No. 18-CV-05758-JST, 2019 WL 13207582, at *1 (N.D. Cal. Sept. 4, 2019) (denying motion to bifurcate discovery into class and merits discovery because "bifurcation is likely to give rise to unnecessary disputes about what constitutes merits versus class discovery" and there was "overlap" between the rigorous analysis required by Rule 23 and "the merits of the plaintiffs' underlying claim" (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011))). Modern antitrust cases have recognized the efficiencies of this approach, concluding all fact discovery before class certification briefing. *See Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570 (N.D. Cal.), Dkt. No. 379 (ordering the close of fact discovery before class certification briefing); *Crowder v. LinkedIn Corp.*, 22-cv-00237 (N.D. Cal.), Dkt. No. 143 (same); *In re Qualcomm Antitrust Litigation*, 3:17-md-02773 (N.D. Cal.), Dkt. No. 210 (same); *The City of Philadelphia v. Bank of America Corporation et al.*, 1:19-cv-01608 (S.D.N.Y.), Dkt. No. 214 (same).

Google respectfully suggests that for an antitrust class action like this one, in which Plaintiffs have indicated they may seek discovery from over two decades related to two theories of antitrust injury, and are seeking to certify two classes (one encompassing "[a]ll persons in the United States who used Google's

GSE since May 8, 2009", TAC ¶253), good cause exists to expand the time for discovery before class certification briefing. The class issues in this case are unique, including whether the case should be properly tried as a class action at all. With respect to the theory that Google would pay users for using Google, for instance, Plaintiffs must show that all or nearly all class members suffered the same common injury—namely that they would have been paid for using Google. But Google's product is free, and Plaintiffs' purported injuries have no connection to any price. Users have wildly different values to Google for lots of different reasons, and Google would certainly not pay those who provide it with little or no value in return. Ascribing a monetary value to its users would be an unprecedented and highly speculative exercise—one which was previously rejected in a similar context by Judge Donato in *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956 (N.D. Cal. 2025).

**Google's Proposal.** The Court should reject Plaintiffs' scheduling proposal, which fails to set forth a reasonable schedule considering the specific issues and scope of this case. Google incorporates its discussion from *supra* at 13-15 regarding why a cloned production of all DOJ Search materials—or even Google's compromise proposal—by March 4 is impossible.

***Google's Proposed Schedule Through Class Certification.***

| Event | Date |
|---|---|
| Last day to File Amended Pleadings | February 6, 2026 |
| Plaintiffs' Third Amended Complaint Due, *see* Dkt. 74 | February 6, 2026 |
| Initial Disclosures Due | March 6, 2026 |
| Google's Answer to Third Amended Complaint Due, *see* Dkt. 74 | March 13, 2026 |
| Substantial completion of document productions | February 6, 2027 |
| Last day to notice depositions | April 21, 2027 |
| Close of Fact and Class Certification Discovery | October 29, 2027 |
| Plaintiffs' class certification expert disclosures due | January 28, 2028 |
| Defendant's class certification expert disclosures due | April 28, 2028 |
| Plaintiffs' class certification reply expert disclosures due | June 9, 2028 |
| Last day to file class certification and class *Daubert* motions | August 4, 2028 |
| Last day to file oppositions to class certification and class *Daubert* motions | September 29, 2028 |
| Last day to file replies to class certification and class *Daubert* motions | November 10, 2028 |
| Class Certification Hearing | December 8, 2028 or at the Court's convenience |

**16.    TRIAL**

Plaintiffs' Statement:

Plaintiffs seek to have this case tried to a jury. Plaintiffs currently estimate that the trial in this case will last approximately 15 to 20 court days.

Google's Statement:

Google anticipates that Plaintiffs' request for damages will not survive dispositive motion practice and therefore a jury trial will be unnecessary. If the case were to proceed to trial, Google respectfully submits that the parties' address the appropriate duration of any trial at a future Case Management Conference when the parties are better positioned to evaluate the anticipated scope of a trial.

**17.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiffs' Statement:

Plaintiffs filed the disclosure required by Civil Local Rule 3-15. Dkt. No. 71. Plaintiffs have no conflict of interest (other than the named parties) to report. No person or entity is funding the prosecution of any claim.

Google's Statement:

Google filed the disclosure required by Civil Local Rule 3-15. Dkt. No. 21.

**18.    PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19.    OTHER ISSUES**

None.

1    Dated: February 18, 2026          Respectfully submitted,

2

3    */s/ David Boies*                    */s/ Sonal N. Mehta*
       BOIES SCHILLER FLEXNER LLP      WILMER CUTLER PICKERING

4    David Boies (pro hac vice)          HALE AND DORR LLP
       Alexander Boies (pro hac vice)       SONAL N. MEHTA (SBN 222086)

5    333 Main Street                 Sonal.Mehta@wilmerhale.com
       Armonk, NY 10504            CHRIS JOHNSTONE (SBN 242152)

6    Tel.: (914) 749-8200            Chris.Johnstone@wilmerhale.com
       dboies@bsfllp.com            2600 El Camino Real, Suite 400

7    aboies@bsfllp.com            Palo Alto, CA 94306
                                        Telephone: (650) 858-6000

8    Mark C. Mao, CA Bar No. 236165

9    Beko Reblitz-Richardson, CA Bar No. 238027    DAVID Z. GRINGER (*pro hac vice*)
       Joshua Michelangelo Stein, CA Bar No. 298856  David.Gringer@wilmerhale.com

10   Margaux Poueymirou, CA Bar No. 356000     PAUL VANDERSLICE (*pro hac vice*)
      44 Montgomery St., 41st Floor        Paul.Vanderslice@wilmerhale.com

11   San Francisco, CA 94104          7 World Trade Center
      Tel.: (415) 293-6800             250 Greenwich Street

12   Fax: (415) 293-6899             New York, NY 10007
      mmao@bsfllp.com            Telephone: (212) 230-8800

13   brichardson@bsfllp.com
      jstein@bsfllp.com

14   mpoueymirou@bsfllp.com         *Counsel for Defendant Google LLC*

15

16   John M. Lyons (pro hac vice)
      James Keyte (pro hac vice)

17   55 Hudson Yards, 20th Floor
      New York, NY 10001

18   Tel.: (212) 446-2332
      jlyons@bsfllp.com

19   jkeyte@bsfllp.com

20
      LAW OFFICES OF LINGEL H. WINTERS

21   Lingel H. Winters, CA Bar No. 37759
      A Professional Corporation

22   2900 Shasta Rd.
      Berkeley, California 94708

23   sawmill2@aol.com

24
      *Counsel for Plaintiffs*

25

26

27

28

# SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(i), I hereby attest that the other signatories have concurred in this filing.

Dated: February 18, 2026                    By:     _/s/ Sonal N. Mehta_