**VIA CM/ECF FILING**
April 2, 2026
The Honorable Sallie Kim
United States District Court, Northern District of California
Courtroom C – 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

**Re: *Crowell v. Google LLC*, No. 3:25-cv-02775-RFL-SK (N.D. Cal.)**

Dear Judge Kim:

Pursuant to Your Honor's Standing Order, the parties respectfully submit this letter brief regarding their dispute as to whether Google must produce to Plaintiffs all expert materials from *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C.) and *Colorado v. Google LLC*, No. 1:20-cv-03715-APM (D.D.C.), including reports with their backups and schedules and deposition transcripts, videos, exhibits, and errata.

Counsel exchanged multiple correspondences concerning production of materials from these cases, and lead counsel met and conferred by video on March 6, 2026; March 9, 2026; March 18, 2026; and March 26, 2026.  Counsel complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery.  The parties have reached agreement to produce certain materials, and certain other materials are still being discussed.  However, the parties have reached an impasse with respect to expert materials.

Judge Lin referred this case to Your Honor for discovery.  Judge Lin entered a scheduling order setting deadlines of October 16, 2026 for the substantial completion of document production, February 5, 2027 for the close of fact discovery, March 22, 2027 for Plaintiffs' expert disclosures and May 7, 2027 for Google's expert disclosures.  Dkt. No. 88 at 4.

| | |
|---|---|
| */s/ David Boies* | */s/ Sonal N. Mehta* |
| David Boies | Sonal N. Mehta |
| Boies Schiller Flexner LLP | Wilmer Cutler Pickering Hale and Dorr LLP |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Google* |

**Plaintiffs' Position**

**Background.**  Plaintiffs are consumers asserting claims against Google on behalf of two nationwide classes based in part upon evidence and findings in the case brought by DOJ and certain states against Google, where Judge Mehta found that "Google is a monopolist, and it has acted as one to maintain its monopoly."  *United States v. Google LLC*, 747 F. Supp. 3d 1, 32 (D.D.C. 2024).

On January 21, 2026, Judge Lin issued her ruling on Google's motion to dismiss.  Dkt. No. 66.  On January 30, 2026, Plaintiffs served their first set of document requests, which Google later responded to.  Ex. 1.  On February 2, 2025, the parties filed a stipulation with an agreed-to Third Amended Complaint (Dkt. No. 74), which is the operative complaint in this case (Dkt. No. 80).

On February 18, 2026, in the Joint CMC Statement, Plaintiffs explained the importance of Google producing materials from the Judge Mehta case.  Dkt. No. 81 at 11–12.

On February 25, 2026, at the CMC, Judge Lin contemplated Google's prompt production of materials from the Judge Mehta case.  Feb. 25, 2026 Hr'g Tr. at 4:15–18 ("I have a hard time understanding generally why Google wouldn't be producing most everything from Judge Mehta's case, which has a lot of overlap with this one."); *id.* at 5:17–24 ("I think that we can set a deadline -- I'm thinking about March 4th as Plaintiffs -- along the lines of what Plaintiffs proposed, for Google to complete production of its materials from Judge Mehta's case, so long as that doesn't require notice prior to production, and so long as Google is also at the same time providing notice to any third parties about anticipated production of other materials from that case.").

**Plaintiffs' Requested Relief.**  The expert materials from the Judge Mehta case are highly relevant in this case and will certainly lead to the discovery of relevant evidence.  The parties in the Judge Mehta case exchanged expert reports (including appendices and backup materials), deposed those experts (resulting in transcripts, exhibits, errata, certifications, and video), and then

presented analyses, submissions, and exhibits to the Court.  Those expert reports addressed the same anticompetitive conduct and effects at issue in this case and identified and relied on numerous facts, statistics, and documents.  Judge Mehta's rulings relying on expert submissions demonstrate the relevance of expert materials to this case (e.g., (i) how consumers use general search engines (*see, e.g.*, *Google*, 747 F. Supp. 3d at 39–40 (FOF 33 & 39), 45 (FOF 66)); (ii)  market definition (*id.* at 60 (FOF 154) & 111); (iii) Google's market power (*id.* at 121, 123); (iv) foreclosure (*id.* at 153–54) and the power of exclusive defaults (*id.* at 164); and (v) the absence of procompetitive benefits (*id.* at 174)).

Ordering Google to produce all these documents is consistent not only with Judge Lin's guidance regarding how Google should produce "most everything from Judge Mehta's case" but also with what other judges have ordered.  *See, e.g.*, *Pampena v. Musk*, No. 22-cv-05937-CRB (DMR), 2025 WL 1382861, at *4 (N.D. Cal. May 13, 2025) (Ryu, C. Mag. J.) (holding that expert reports from prior litigation were relevant and ordering production); *Texas v. Google LLC*, No. 4:20-cv-957-SDJ, Dkt. No. 418 at 5–6, 8 (E.D. Tex. Apr. 24, 2024) (special master ordering Google to produce expert reports from parallel DOJ action in Virginia); *Alaska Air Grp., Inc. v. Anthem, Inc.*, Nos. 2:21-cv-01209-RDP, 2:22-cv-00558-RDP & 2:22-cv-01256-RDP, 2024 WL 347156, at *2–3 (N.D. Ala. Jan. 30, 2024) (finding that expert reports from prior similar litigation were relevant and discoverable); *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-cv-155-Z, 2024 WL 5048013, at *4 (N.D. Tex. Dec. 9, 2024) (ordering production of expert reports from prior litigation).  Google's own lead counsel successfully argued for the production of an expert report in *Infernal Technology, LLC v. Microsoft Corp.*, No. 2:18-cv-00144-JRG, 2019 WL 5388442, at *2–3 (E.D. Tex. May 3, 2019) (ordering production of infringement expert report from prior patent case that involved analysis of same claims).

In *Alaska Air*, the district court ordered the production of the defendants' expert reports from prior litigation (a MDL) and rejected the same proposal made by Google to "delay production until the period for expert discovery and then only produce the reports of experts also identified in these cases." 2024 WL 347156, at *2. The court recognized "that discovery of Defendants' expert reports produced in the MDL is actually fact discovery" and "that the requests seeking production of all documents produced in the MDL, including the expert reports, seek fact discovery under Rule 26." *Id.* In reaching this conclusion and ordering production of the expert reports, the court noted that under Rule 26, information "sought in discovery need not be admissible to be discoverable" and "the court need not determine whether Defendants' MDL expert reports would ultimately be admissible in these cases at this juncture." *Id.* at *3.

Production of these expert materials is consistent with the broad scope of discovery permitted under FRCP 26, where "discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). These expert reports will, for example, cite relevant documents and deposition testimony from the Judge Mehta case. That is relevant discovery for this case. In addition, these expert materials will be relevant to demonstrating that Google had a full and fair opportunity to litigate in the Judge Mehta case, which would support application of collateral estoppel in this case. *See, e.g.*, *In re Google Digital Advert. Antitrust Litig.*, Case No. 21-cv-3446 (PKC), 2025 WL 3012840, at *17 (S.D.N.Y. Oct. 27, 2025) (applying collateral estoppel against Google based on prior trial before Judge Binkema).

Production of these expert materials is also consistent with established antitrust policy. Congress has expressed a desire "to minimize the burdens of litigation for injured private suitors by making available to them all matters previously established by the Government in antitrust actions." *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 567 (1951); *see also Minnesota*

*Min. & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311, 317 (1965) ("Congress meant to assist private litigants in utilizing any benefits they might cull from government antitrust actions"). While those Supreme Court decisions focused on Section 5 of the Clayton Act, the same antitrust policy supports production of these expert materials for these injured consumers.

On March 18, Google's counsel stated that Plaintiffs should not receive any of these expert materials because it would be a "shortcut" for Plaintiffs in this case. That is a concession as to relevance, not a basis to withhold these materials. Google's proposal to only produce reports from experts that Google elects to use again in this case ignores the fact that all of the expert reports and related materials from the DOJ case are clearly relevant and important to efficiently frame discovery in this case. Plaintiffs note that they have already engaged for this case one of the experts retained by the DOJ in the Judge Mehta case – MIT Professor Michael Whinston. Plaintiffs seek production of these expert materials so they can be available to Professor Whinston and his team, and so that they may efficiently prepare and present relevant opinions in this case.

There is also no basis for Google to withhold these expert materials based on any burden. The burden Google focuses on below is the possibility that Google may need to redact some of these expert materials if one or more third party objects to production of their materials and any objections are sustained. A number of third parties have already said they have no objection to production of their materials in this case once a protective order is issued. Plaintiffs do not expect any objections that would be sustained or that would otherwise substantially impact these productions. Google can if necessary redact these materials, and that is not a basis to withhold this highly relevant discovery.

**Google's Position**

Plaintiffs' sweeping request for more than 70 expert reports exchanged by the parties in the DOJ Search case, the depositions of those experts, and related materials, should be denied. Plaintiffs seek premature expert discovery for no purpose other than to give themselves the ability to improperly co-opt opinions offered by the government's experts and a prejudicial preview of expert opinions Google could offer. The requested expert reports are also irrelevant because—with one exception that Plaintiffs informed Google of for the first time in their draft of this submission— neither party has retained or offered opinions from any of the DOJ case experts.

Google has agreed to provide the requested materials for any expert upon whom Google relies in this case by the scheduling order's deadline for Google's expert disclosures. If Plaintiffs serve a report from Prof. Whinston, Google will produce his DOJ case materials at that time. Plaintiffs' requests for any further DOJ case expert materials should be denied for four reasons.

*First*, Plaintiffs inappropriately seek to end-run their obligation to independently develop their own case. Plaintiffs must "do their own work, honestly, and come up with their own opinions independent of what the DOJ experts do." *United States v. Google LLC* ("*Ad Tech*"), No. 1:23-cv-00108, Dkt. 516 at 25:14-20 (E.D. Va. Jan. 26, 2024). On that basis, the *Ad Tech* court denied private plaintiffs' request for the DOJ's expert reports offered against Google in a parallel antitrust action. *Id.* at 30:19-23. Similarly, the court in *Natixis Fin. Prods. LLC v. Bank of Am.* denied plaintiff's request for opposing expert reports in related actions because it would allow the plaintiff "to bypass preparation of its own expert reports." 2016 WL 7165981, at *5 (S.D.N.Y. Dec. 7, 2016). With the DOJ's expert reports in hand, Plaintiffs' experts are "likely to just adopt everything that has happened [in the DOJ case] and give their own spin on it." *Ad Tech*, Dkt. 516 at 25:16-18.

This is confirmed by the fact that Plaintiffs offer no legitimate purpose for seeking these

materials. The DOJ case expert materials were based on the factual record in the DOJ case that Google is substantially reproducing here: over 3.6 million documents, all fact witness depositions, written discovery, privilege logs, non-party productions, and trial exhibits. Plaintiffs' assertion that the expert reports "cite relevant documents and deposition testimony" from this set is an admission that they seek only a cheat sheet to copy the government's litigation strategy. There is "no need" for Google to produce expert materials when Plaintiffs "already [have], or [Google] has agreed to provide, the relevant underlying" information. *Ollnova Techs. Ltd. v. Ecobee Techs.*, No. 2:22-cv-00072, Dkt. 98 at 7 (E.D. Tex. Mar. 7, 2023); *SSL Servs., LLC v. Citrix Sys., Inc.*, 2010 WL 547478, at *3 (E.D. Tex. Feb. 10, 2010) (same). And Prof. Whinston is surely familiar with his prior work and does not need his own report produced back to him for whatever task Plaintiffs may give him.

At best, the DOJ case expert materials would either "be duplicative of the expert witness documents to be generated in this case … or … merely offer [Plaintiffs] differing sets of expert opinions by the experts in this case versus those in [the DOJ case]." *Tremblay v. OpenAI, Inc.*, 2025 WL 635335, at *5 (N.D. Cal. Feb. 27, 2025). Plaintiffs' desire to "see [DOJ's] experts' reports … before [they] have to do [their own] expert reports" so the DOJ's experts can "lead [them] the way in doing what [they] need to do on an independent basis" is not a proper justification, and the motion should be denied on that basis alone. *Ad Tech*, Dkt. 516 at 6:20-21, 30:2-7.

*Second*, production of these materials would invert the expert discovery schedule and prejudice Google. It is elementary that "in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their expert disclosures." Fed. R. Civ. P. 26, Advisory Cmte. Notes, 1993, subdiv. (a)(2). The Court's scheduling order accordingly requires Plaintiffs to make their expert disclosures first. Dkt. 88 at 4. Granting Plaintiffs' request would reverse this sequence, requiring Google to provide

expert analyses it might offer nearly a year before Plaintiffs' expert reports are due.

Courts have consistently "recognized that allowing one party to view the opposing party's expert reports before having to submit its own opening reports would afford that party an unfair advantage." *Natixis*, 2016 WL 7165981, at *4 (denying plaintiff's request for "advance copies" of defendant's expert reports before "committing" to their own expert positions); *Spectrum Pharms., Inc. v. Sandoz Inc.*, 2014 WL 3000130, at *1-2 (D. Nev. July 1, 2014) (similar). Early disclosure of Google's expert reports would afford Plaintiffs an unfair tactical advantage, and allow them to use their opening expert reports as rebuttal reports addressing opinions Google may offer here.

*Third*, the requested expert materials are irrelevant. The "critical" inquiry for assessing the relevance of expert reports from another case is whether the party "is using the same experts in this case." *Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-cv-00337, Dkt. 244 at 1-2 (E.D. Tex. Dec. 15, 2021). Experts lack personal knowledge of the facts of the case and are merely tasked with forming opinions; if they "are not testifying in this case" there is no "persuasive argument for the relevance of their reports." *Id.* The reports are not themselves evidence, admissible, or binding on Google, so their production now would only improperly short-circuit the expert discovery process.

Moreover, the DOJ case experts addressed many theories Plaintiffs are not asserting. *See Google*, 747 F. Supp. 3d at 34, 124-142, 177-185 (discussing advertising issues and claims rejected on summary judgment). Plaintiffs' request is thus not tailored to their own claims.

There is no "antitrust policy" endorsing this request. Plaintiffs' resort to a policy argument reveals the fundamental weakness in their position, so it is unsurprising that the cases Plaintiffs cite for this point are about the use of prior *judgments*, *Emich*, 340 U.S. at 569, and *statutory tolling*, *Minnesota*, 381 U.S. at 314—not expert discovery. In *Alaska Air*, the court ordered production of expert reports to a group of MDL class opt-out plaintiffs in part because there was

no unfair advantage: the defendants already had access to the class plaintiffs' reports. 2024 WL 347156, at *3. Here, Google will not have Plaintiffs' reports until next year. *Infernal* involved a single expert report discussing the plaintiff's contentions about scope of the claims in its allegedly infringed patent so the defendant could determine if the plaintiff had interpreted the patent's claims consistently. 2019 WL 5388442, at *2. Plaintiffs make no comparable showing of need. In *Texas*, unlike here, Google did not dispute that certain experts were retained in both parallel cases. *Open Cheer* involved just three reports on specific topics with relevance redactions, in contrast to Plaintiffs' unbounded request. 2024 WL 5048013, at *4. *Pampena* focused on compliance with a stipulation and rules concerning expert compensation—issues not present here. 2025 WL 1382861, at *2-3. And Plaintiffs never explain how the contents of the DOJ case expert materials would have any bearing on the applicability of collateral estoppel, which in any event they have not sought.

*Finally*, this request poses a significant undue burden on Google. Many of the DOJ case expert materials contain non-parties' confidential information. Pursuant to the DOJ case protective order, Google has notified the nearly 150 DOJ case non-parties that Plaintiffs requested their materials. *See* No. 1:20-cv-3010, Dkt. 98 ¶7 (D.D.C. Jan. 21, 2021). Several non-parties whose information is contained in the expert materials have also objected to reproduction and more could follow suit. *See id.* ¶8. Indeed, Plaintiffs have already withdrawn their request for at least one non-party's information in response to an objection. Google cannot produce materials containing objecting non-parties' information at least until those objections are resolved, and would thus need to review more than 70 reports and related testimony for any combination of up to nearly 150 non-parties' information and redact it. That imposes significant burden on Google, and redactions would make the materials incomplete, risking prejudice from the opinions being misunderstood or misconstrued. At minimum, materials containing non-party information should not be produced.

**ATTESTATION**

I, Beko Reblitz-Richardson, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1(i)(e), that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: April 2, 2026                    By: /s/ *Beko Reblitz-Richardson*
                                             Beko Reblitz-Richardson