**VIA CM/ECF FILING**

July 29, 2026

The Honorable Sallie Kim

United States District Court, Northern District of California

Courtroom C – 15th Floor

450 Golden Gate Ave.

San Francisco, CA 94102

Re: *Crowell v. Google LLC*, No. 3:25-cv-02775-RFL-SK (N.D. Cal.)

Dear Judge Kim:

Pursuant to Your Honor's Standing Order, the parties respectfully submit this letter brief regarding Plaintiffs' request that Google produce the materials requested by Plaintiffs' RFPs 20 and 21.  Ex. A is Plaintiffs' Second Set of RFPs, which includes RFPs 20 and 21, and Ex. B is Google's objections and responses to those RFPs.  Plaintiffs respectfully request oral argument. Google believes that the parties' positions are clear from the papers but defers to the Court on whether oral argument on this issue would be useful.

Counsel exchanged correspondence concerning this issue, and lead counsel met and conferred by video on July 17 and July 22.  Counsel have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery.  Counsel agreed that the most appropriate next step with this issue was to seek the Court's guidance.

Judge Lin referred this case to Your Honor for discovery.  Judge Lin entered a scheduling order setting deadlines of October 16, 2026 for the substantial completion of document production, February 5, 2027 for the close of fact discovery, March 22, 2027 for Plaintiffs' expert disclosures, and May 7, 2027 for Google's expert disclosures.  Dkt. No. 88 at 4–5.

| | |
|---|---|
| */s/ David Boies* | */s/ Sonal N. Mehta* |
| David Boies | Sonal N. Mehta |
| Boies Schiller Flexner LLP | Wilmer Cutler Pickering Hale and Dorr LLP |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Google* |

1

**Plaintiffs' Position**

On February 9, 2026, Plaintiffs served their Second Set of Document Requests (Ex. A), which includes the two at-issue RFPs: RFPs 20 and 21. Below, Plaintiffs explain the dispute.

**RFP 21**: RFP 21 seeks "Data or other documents sufficient to show for the period since October 20, 2016 (a) all types of information, data, or other records Google has collected, created, or stored as a result of people in the United States using Google search; (b) all data sources or logs where Google has collected, created, or stored information, data, or other records as a result of people in the United States using Google search; and (c) all ways in which Google has used information, data, or other records collected or saved as a result of people in the United States using Google search."  The RFP seeks relevant materials. This is a putative class action on behalf of consumers who used Google's general search engine. Judge Lin allowed Plaintiffs to move forward with their Sherman Act claim and also their UCL and unjust enrichment claims in her motion to dismiss ruling. Dkt. No. 66. Plaintiffs with this RFP seek relevant documents "sufficient to show" the types of search data Google collected, where Google stored that data, and how Google used that data. Such documents are relevant both to support Plaintiffs' claims, showing what data was taken and used for which purposes to establish liability, and as foundational information for Plaintiffs' and their experts in terms of evaluating damages and to show how Google enriched itself by collecting and using valuable search-related data.

Google attacks Plaintiffs below for seeking an "inventory" or "menu" of the available data, but that is the point. Plaintiffs have asked during meet and confer and are entitled to know:

- What logs and data sources are tied to "Google IDs," search cookies identifiers, and device and application identifiers, and are these sources event-level or aggregated?

- Are there dashboards and other tools that may run summaries of these data sources?

- How long are these data sources and aggregated summaries retained for?

After many meet and confers, Google offers only one source of data it unilaterally chose, refusing to identify other data sources that might be relevant and responsive. In the meet and confers, Google represented that (1) it can populate data produced to the DOJ with "personal identifiers" to identify Plaintiffs' data, and (2) it is willing to explain what other fields are available in this source; but Google was not willing to (a) explain how much of the class period it has this data for, or (b) specify what other data sources are available. While Google points to its data production in the DOJ-Search case, that data set is for only a few months in a one-year period. That source did not include the fields for identifying individual class members (which Google can do). Google would not stipulate to the representativeness of that sample, which implies that Google might challenge the adequacy of these after successfully refusing to produce all data.

**RFP 20**: RFP 20 seeks: "All event-level data, including but not limited to aggregated event-level data, tied to or resulting from Google searches by people in the United States since October 20, 2016, starting with production of a representative sample sufficient for analysis from whatever data Google has preserved." In response to Google's document requests, Plaintiffs are producing event-level data regarding their Google searches. Google does not explain why discovery of event-level data from Plaintiffs is appropriate (when Google holds the data), while it refuses to produce the same event-level data for other Google search users, who are members of the putative class. As one example of why this event-level data is relevant, Plaintiffs' experts seek to consider this data, and the different ways the data is logged, to evaluate what class members would have received as payment under the "Bing Rewards" model, with payments for searching. Again, after many meet and confers, Google would only offer the one source of data that it unilaterally chose and offered for RFP 21, refusing to identify other relevant and responsive

sources. Explaining what is available, and what fields are available therein so that the response is "sufficient to show," is not difficult for Google.

Given the large volume of event-level data stored by Google, Plaintiffs proposed that Google start with a representative sample. Many months of discussion followed this proposal, and on February 9, 2026, Plaintiffs sent Google a letter with a proposal in terms of how the parties could treat a sample as representative. While data sampling is useful, Google must stipulate that the sample is representative. *See, e.g.*, *In re Google RTB Consumer Priv. Litig.*, No. 21-cv-02155-YGR (VKD), 2022 WL 22936873, at *3 (N.D. Cal. Dec. 16, 2022) ("if Google wishes to rely on a sample of responsive data to satisfy its obligations, it must take steps to ensure that the sample is representative such that plaintiffs can rely on it making the arguments they wish to make for class certification."); *Cruz v. Nike Retail Servs.*, *Inc.*, No. 23-cv-874-L-KSC, 2023 WL 6967410, at *1 (S.D. Cal. Oct. 20, 2023) ("Plaintiff's offer to accept a relatively small sample size in exchange for defendant's promise that a 10% sample is sufficient for making a class certification determination is patently reasonable"); *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C-06-01962 JW (PSG), 2011 WL 2433393, at *2 (N.D. Cal. June 16, 2011) ("any party relying upon a statistically valid sampling must stipulate as such in writing and further stipulate that it will not argue that Plaintiffs' showing under the requirements of Fed.R.Civ.P. 23 or 56 is deficient based on any responsive documents not produced").  Your Honor's decision in *Lopez v. Apple* provides a helpful framework for addressing sampling.  The Court "set a deadline for the parties to provide their competing sampling proposals if they could not reach an agreement." *Lopez v. Apple, Inc.*, No. 19-cv-04577-JSW (SK), 2024 WL 4561320, at *3 (N.D. Cal. July 17, 2024) (citing Dkt. No. 153, which is a sealed transcript).  Apple had "made assurances that Plaintiffs would not be

prejudiced by Apple deleting data in accordance with its retention policy because Apple offered to provide Plaintiffs with a sample ….” 2024 WL 4561320 at *4.

Here, Google has not so agreed on representativeness or sampling. Plaintiffs ask that the Court now order Google to make a choice: Google can either work with Plaintiffs and their experts on the event-level data so that both sides can address the merits of the case with the same data, or alternatively Google can identify the data that can be sampled and agree that any sample can be treated as representative for all purposes, including class certification, damages, summary judgment, and at trial – sampling which both sides would be bound to use. At minimum, Google should be required to identify all available relevant data sources, and Plaintiffs should not be limited to the single data source that Google unilaterally picks for its own defense.

The importance of this discovery is demonstrated in part by Plaintiffs' experience in *Brown v. Google* and *Rodriguez v. Google*. In *Brown*, Magistrate Judge van Keulen ordered Google to submit a sworn declaration providing a “complete list of data sources that contain information relevant to Plaintiffs' claims.” *Brown v. Google*, No. 4:20-cv-03664-YGR-SVK, Dkt. 593-3 at 30 (N.D. Cal.). Magistrate Judge van Keulen then sanctioned Google in part because Google's disclosure was incomplete. *Id.* at 7 – 8. Likewise, in *Rodriguez v. Google*, Google opposed production of event-level class member data while at the same time sought to limit the damages that Plaintiffs could seek at trial. *See, e.g.*, *Rodriguez v. Google*, No. 3:20-cv-04688-RS, Dkt. 427 at 8–9 (N.D. Cal Oct. 3, 2024). Plaintiffs seek this discovery in part to avoid a similar Catch-22, where Google seeks to withhold data and then use that lack of data (or lack of agreement on representativeness) to argue against class certification, against liability, or for limits on the damages that Plaintiffs can seek.

**<u>Google's Position</u>**

Plaintiffs have admitted that what they actually want is an "inventory" and a "menu" of every search-related data repository Google possesses, followed by production of that underlying data. That blunderbuss request is completely unwarranted. Plaintiffs have never explained—despite Google's repeated requests over more than a year—how any of the information sought by RFPs 20 and 21 is relevant to the claims in this case, and their section of this dispute letter does not remedy that failure. These requests would also impose an astronomical burden not even remotely proportionate to the needs of this case. Compliance with them would result in the production of well over *1.8 exabytes* of data. For context, the Library of Congress most recently reported that its digital collection contains only 21 petabytes of data; Plaintiffs' request covers more than *85 times* that amount and more than *20,000 times* the volume of data Google produced in the DOJ Search case and is reproducing to Plaintiffs here. Plaintiffs are already receiving over *90 terabytes* of Google's data from the DOJ Search case and in response to their other requests—drawn from a litany of data sources over a multi-year period. Rather than engage with Google's repeated efforts to work together on an appropriately scoped data production, Plaintiffs refused to answer basic questions about what they were looking for and what they intended to do with it. It is clear that Plaintiffs have no idea what data they want or the use to which any of the data could be put. These RFPs are a fishing expedition, and Plaintiffs' motion should be denied.

Plaintiffs have failed to explain how the requested information is relevant. The closest they have come are conclusory statements in this submission that it could be unspecified "foundational information" on damages and "show[] what data was taken and used" to thereby "establish liability." If any of that were true, Plaintiffs could surely explain why it were true. That they do not is telling. And Plaintiffs' allegations and damages theories confirm that this data has no relation

to their claims. Plaintiffs have said that calculating damages will require data to estimate "the number of class members" and "class member searches," and "the value" search engines ascribe to default placement, including "prices … paid to be placed on Android choice screens." Dkt. 99-1 at 8-12. Google agreed to produce data on these topics, none of which are sought in these RFPs. Moreover, their claims are all predicated on Google supposedly depriving users of (1) monetary compensation, (2) "greater privacy protections," and (3) "reduced or ad-free search." TAC ¶¶17-18, 266-289. None requires an "inventory" of every (or even any) search data repository.

Plaintiffs' demand would also impose a crushing burden that is grossly disproportionate to the needs of this case. Focusing just on search sessions data—Google's primary Search data source and just a subset of the data sought—all data for just a single day exceeds 4 petabytes, and the repository as a whole contains more than 225 petabytes, nearly 11 Libraries of Congress, in a proprietary, compressed format that cannot be read outside of Google. Converting it to a readable format would require decompressing and expanding it by at least 800% to more than 1.8 exabytes—or 1.8 million terabytes. That is more than 20,000 times the data Google produced in the DOJ Search case, which Plaintiffs are receiving. Even if a file transfer of that scale were feasible—which it is not—Plaintiffs have given no indication they can store this volume of data in an accessible format, which would likely cost in excess of $60 million per month. *See, e.g.*, https://cloud.google.com/storage/pricing. Likewise, cataloguing every data repository and "field" contained therein—of which there are hundreds of thousands—and determining if any data in each "result[s]" from Search usage is a gargantuan task that would take many months (at least), if it could be done at all. All this would be for an exercise whose purpose Plaintiffs cannot explain.

Perhaps recognizing their extreme demands, Plaintiffs offer a fallback: that Google identify a "sample" of this data and agree to treat it as "representative for all purposes." This too is

unreasonable. Google is not opposed to sampling, but needs to know what it is that is being sampled and why. Google asked Plaintiffs to explain at a high level the subject matter of the data they were seeking so that Google could identify the appropriate source to draw from. Google also asked how Plaintiffs intend to use the data to assess the propriety of agreeing that a representative sample could be used for that purpose. Plaintiffs refused to answer. Critically, that discussion would have identified samples representative on particular axes—not all data is representative of everything. Google is not aware of any case requiring a party to blindly stipulate to the representativeness of a data sample where the other party has not shown what it is supposed to be representative of. *See Powell v. Walmart Inc.*, 2021 WL 5764163, at *5 (S.D. Cal. Aug. 10, 2021) ("it would be unfair to require [defendant] to stipulate to multiple elements of class certification" when it is not "necessarily refusing to vouch for … sample data"). Plaintiffs obviously don't even know what to say the data is representative of, further highlighting its irrelevance.

These requests are unreasonable on their face, but are especially so given the extraordinary volume of data Google is already producing. Google is reproducing approximately 90 terabytes of data from the DOJ Search case, and it has already produced detailed information about the parameters and sources of that data. It also produced the expert reports offered in that case, which further explain the data and demonstrate how it was used. And it agreed to produce updated versions of several of those data files to cover the period post-dating the DOJ Search cut-off. Plaintiffs say that RFP 21 is necessary so they can know what data is available, but their access to the full DOJ Search case record should have already served that purpose. Indeed, Plaintiffs have separately served RFPs focused on specific data sets and sources used in the DOJ Search case. And Google has responded to multiple interrogatories with detailed information about repositories that store and use user search data. All of that provides Plaintiffs with a more than reasonable and

8

proportionate amount of information "sufficient to show" what RFP 21 seeks and renders their request for a "menu" of available data unnecessary now even if it were an appropriate request in the first place (which it is not). That is particularly true where Plaintiffs represented that these cloned productions would "streamline discovery," Dkt. 81 at 12, and "efficiently frame discovery," Dkt. 92 at 4-5. Plaintiffs' request for a data center's worth of additional data confirms that they have no present intention to streamline discovery, if they ever did. Indeed, their apparent (and incorrect) belief that the DOJ Search data came from just one source covering only "a few months" suggests they have not even reviewed the materials Google produced. And the only data they claim it lacks are "fields for identifying … class members," which are also not sought by these RFPs.

Plaintiffs' counsel's "experience" litigating different cases involving different counsel is not a basis to demand oceans of irrelevant data. The suggestion that Google is seeking to conceal "relevant data sources" to argue later that Plaintiffs' claims fail due to lack of data simply cannot be squared with the enormous volume of data from a variety of sources and detailed supporting information it is providing Plaintiffs. Nor does Plaintiffs' agreement to produce records of their own Search usage—which they call "event-level data"—to, among other things, substantiate their allegations that they are Search users, TAC ¶¶20-23, somehow require production of every piece of data "resulting from" every other U.S. user's search activity without any relevance showing.

Plaintiffs' claims about what Google "represented" it could or would do in response to these requests are inaccurate. Google's proposed compromise is to produce a list and descriptions of certain log data fields that record users' search activity and that Google uses to improve search results, and data in those fields for the Plaintiffs over 30 days. That addresses the focus of Plaintiffs' RFP 21—Google's collection and use of user data—and provides data for RFP 20 from a key search repository. Plaintiffs refused to review this data before declaring impasse.

9

**ATTESTATION**

I, Mark C. Mao, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1(i)(e), that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: July 29, 2026

By: */s/ Mark C. Mao*
Mark C. Mao