# EXHIBIT 5

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
Alexander Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
John M. Lyons (*pro hac vice*)
James Keyte (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: 212 446 2332
jlyons@bsfllp.com
jkeyte@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
brichardson@bsfllp.com

**LAW OFFICES OF LINGEL H. WINTERS**
Lingel H. Winters, CA Bar No. 37759
A Professional Corporation
2900 Shasta Rd.
Berkeley, California 94708
sawmill2@aol.com.

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ZACHARY CROWELL, et al.,

*Plaintiffs*,

v.

GOOGLE LLC,

*Defendant*.

Case No.: 3:25-cv-02775-RFL-SK

**PLAINTIFF CHRISTOPHER WEBER'S OBJECTIONS AND RESPONSES TO GOOGLE'S SECOND SET OF INTERROGATORIES**

Judge: Hon. Rita F. Lin
Magistrate Judge: Hon. Sallie Kim

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Christopher Weber ("Plaintiff") hereby objects and responds to Defendant Google LLC's Second Set of Interrogatories. These objections and responses are by Plaintiff Christopher Weber only and limited to information within Plaintiff's personal knowledge.

**RESERVATION OF RIGHTS**

Plaintiff's responses and objections are based solely on information currently available to Plaintiff following a reasonable investigation. That investigation and discovery are ongoing. Plaintiff reserves all rights to supplement, revise, and/or amend these responses should additional information become available through discovery or other means. Plaintiff reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to the Interrogatories, including, but not limited to, any such information or documents obtained in discovery. In responding and objecting to the Interrogatories, Plaintiff does not waive any objection on the ground of privilege, competency, relevance, materiality, authenticity, or admissibility of the information contained in these responses.

**INTERROGATORY NO. 6:**

For each act by Google that You contend is exclusionary or an exercise of monopoly power and caused antitrust injury to users of Google Search, describe in full and complete detail the basis for Your contention, including by identifying each act; the date or dates of each act; the specific way in which You contend each act harmed competition; any actual or potential competitors You contend were excluded or foreclosed by each act; and how You contend each act caused antitrust injury to Google Search users, including specifically each named Plaintiff.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff objects to this interrogatory on multiple grounds.

*First*, Plaintiff objects to this interrogatory as a premature contention interrogatory. Fact discovery is currently scheduled to close on February 5, 2027, and the Court has ordered document production to be substantially complete by October 16, 2026. Google has been slowly producing materials from the DOJ search case, taking more than six months to produce materials that Judge

Lin indicated should be produced quickly (suggested production by March 2026). Google has also delayed producing additional documents sought by Plaintiffs in this case, including for the period after productions in the DOJ search case. The parties have been negotiating search terms (after Magistrate Judge Kim resolved the parties' disputes regarding custodians) and also Google's production of additional "go get" documents. The parties are also currently engaged in third-party discovery, and many of those third parties have not yet produced documents to either side. Plaintiff anticipates depositions in the coming months based on the schedule set by Judge Lin.

This objection is consistent with the position taken by Google's counsel in other litigation. For example, Williams & Connolly successfully objected to contention interrogatories served in another case at an "early stage of discovery," with that court explaining that "Courts 'will look with considerable skepticism at sets of interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading.' ***This is particularly the case when the operative complaint is not facially deficient and 'presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories***....'" *Ritchie v. Sempra Energy*, No. 10cv1513-CAB(KSC), 2014 WL 12637955, at *3 (S.D. Cal. Aug. 4, 2014) (alteration in original) (emphasis added) (citation omitted) (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 335-39 (N.D. Cal. 1985)). In *Ritchie*, the district court agreed with the attorneys representing Google in this case that, "[u]nder these circumstances, ordering plaintiff to provide more complete responses to Interrogatory Nos. 6 and 7, as written, would be overly burdensome and serve no useful purpose as it would not be helpful in clarifying the issues or narrowing the scope of the parties' dispute at this point in the litigation." *Id.* at *4. The same is true in this case with this interrogatory.

In an antitrust case against eBay, then-Magistrate Judge Seeborg recognized that "courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete. One court in this district expressed its considerable skepticism about the use of contention interrogatories at the early stages of discovery and fashioned four guidelines under which to assess the propriety of such discovery requests." *In re eBay Seller*

*Antitrust Litig.*, No. C 07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) (citing *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992); and *In re Convergent*, 108 F.R.D. at 332-38). Judge Seeborg explained that "[a]pplying those guidelines here, as well as the limits set forth in Rule 26, eBay's contention interrogatories are premature at this stage of discovery." *Id.* at *2. In reaching this conclusion, Judge Seeborg observed that "***eBay's contention interrogatories seek answers to two of the major issues in the case: market definition and damages. It is not apparent how these broad interrogatories, particularly those that track plaintiffs' complaint, will serve to clarify the issues or narrow the scope of the litigation at this juncture.***" *Id.* (emphasis added). Judge Seeborg's guidance is also instructive here.

Similarly, Magistrate Judge James rejected contention interrogatories served by Defendant Facebook in a case pending in this District, explaining: "Nor has Facebook shown how responding to any of its other interrogatories before substantial discovery has been conducted will contribute meaningfully to clarifying the issues in the case or narrowing the scope of the dispute." *Campbell v. Facebook Inc.*, No. 13-cv-05996-PJH (MEJ), 2015 WL 3533221, at *5 (N.D. Cal. June 3, 2015). The court noted that "Facebook provides no argument or support that the information sought would help set up early settlement discussions or that such answers are likely to expose a substantial basis for a Rule 11 or Rule 56 motion." *Id*. The *Campbell* court also rejected contention interrogatories relating to class certification, explaining that Facebook had better access to relevant information and that the contention interrogatory was "no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion":

> While Facebook's last interrogatory to Plaintiff Shadpour appears to seek information to expose a basis for opposing class certification under Rule 23 by requesting that Plaintiff "identify all facts that support ... that this ACTION is appropriate for class treatment," Jt. Ltr., Ex. C, Facebook does not show how it needs this information at this time, when substantial discovery is yet to be conducted. ***Such an interrogatory strikes the Court as no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion.*** In considering this interrogatory, the Court also finds significant *In re Convergent*'s concern over which party has better access to the information the propounding party seeks. ***The same is true of Facebook's interrogatory asking Plaintiff Shadpour to identify all facts that support that this action is appropriate for class treatment: Facebook seemingly would be in a better position to know what facts about its practices are common, etc., among proposed***

> ***class members.*** In any case, as with the other interrogatories, the Court finds this interrogatory premature at this time.

*Id.* (alteration in original) (emphases added) (citing *In re Convergent*, 108 F.R.D. at 338-39); *see also In re Convergent*, 108 F.R.D. at 349 ("It is not obvious why plaintiffs would have better access than defendants to evidence about how the information Convergent made public got into the market place. Convergent presumably knows what information it published and through which channels. Convergent thus would seem to be in a better position than plaintiffs to begin examining how, and to what extent, that information penetrated the marketplace.").

*Second*, Plaintiff objects to this interrogatory because Google cannot meet its burden to justify serving contention interrogatories at this early stage: "As a general rule, a party moving to compel responses to contention interrogatories at an early stage in litigation must show the responses would 'contribute meaningfully' to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56." *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS (JDEx), 2020 WL 12584277, at *5 (C.D. Cal. July 20, 2020) (citing *In re Convergent*, 108 F.R.D. at 337). The *Heredia* court explained:

> To meet this burden, a party seeking early answers must present "specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." ***In assessing whether a defendant has met that burden, "if a complaint presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories, an attempt to justify early use of contention interrogatories on the ground that answers would clarify the issues would not be especially persuasive.*** " Similarly, courts also consider the parties' respective access to information: ***"at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail."***

*Id.* (alteration in original) (emphases added) (citations omitted). Here, there can be no dispute that Plaintiffs' Third Amended Complaint provides a "detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories" and that Google has "access to most of the evidence about [its] own behavior." Judge Lin already considered and rejected

Google's attacks on the adequacy of Plaintiffs' operative complaint. *See* Dkt. 66 at 2, 6. Thus, "it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail." *Heredia*, 2020 WL 12584277, at *5 (alteration in original).

In the *Campbell v. Facebook* case, Magistrate Judge James similarly recognized that a party seeking to use contention interrogatories before the completion of substantial documentary or testimonial discovery has a "burden of justification" that cannot be met "by vague or speculative statements about what might happen if the interrogatories were answered":

> Consequently, courts in this district have placed "a burden of justification" on a party who seeks answers to contention interrogatories before substantial documentary or testimonial discovery has been completed. ***"[S]uch a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56."*** "A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered." "Rather, ***the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure***." In the case where a defendant seeks responses to early contention interrogatories from a plaintiff, ***courts should be "especially vigilant" in evaluating the proffered justifications when the plaintiff's complaint is not 'facially infirm' and the defendant appears to have control over or adequate access to much of the evidence relevant to its alleged misconduct***.

2015 WL 3533221, at *4 (alterations in original) (emphases added) (citations omitted) (citing *In re Convergent*, 108 F.R.D. at 338-39; *In re Wells Fargo Residential Mortg. Lending Discrimination Litig.*, No. C 08-1930 MMC (JL), 2009 WL 1771368, at *6 (N.D. Cal. June 19, 2009); and *United States v. Bazaarvoice, Inc.*, No. C 13-00133 EMC (LB), 2013 WL 1739472, at *3 (N.D. Cal. Apr. 22, 2013)). Like the complaint in *Campbell*, Plaintiffs' Third Amended Complaint "is not the sort of 'infirm' complaint warned of in *In re Convergent.* It contains detailed factual allegations about the conduct Plaintiffs challenge as unlawful, and—from the Court's review—contains allegations that address Facebook's concern above." *Id.* The other stated purposes for early contention interrogatories are also not met here.

*Third*, in addition to its prematurity, Plaintiff objects to this contention interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case. As Judge Seeborg recognized, "pursuant to Rule 26, ***because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face***." *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2 (emphasis added). Similarly, Magistrate Judge Crawford in the Southern District of California accepted the argument advanced by one of the law firms representing Google in this case that "contention interrogatories 'should not require the answering party to provide a narrative account of its case.' Courts 'will generally find [contention interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' [or 'all facts'] which support[] identified allegations or defenses.'" *Ritchie*, 2014 WL 12637955, at *3 (alterations in original) (citation omitted) (quoting *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998)).

Magistrate Judge Early in the Central District of California recognized the undue burden that contention interrogatories can impose on a responding party: "as with any other discovery device, contention interrogatories can, depending upon how they are used, become unduly burdensome and not proportional to the needs of the case under Rule 26(b)(1)." *Heredia*, 2020 WL 12584277, at *5; *see also Campbell*, 2015 WL 3533221, at *5 ("Facebook has not shown how this response is insufficient or how a response to its next interrogatory, which asks Plaintiff to identify 'all facts' that support this response, is needed to clarify the issues in the case."). Here, Google's interrogatory demands Plaintiffs identify "***each act*** by Google that You contend is exclusionary or an exercise of monopoly power" and then "describe in ***full and complete detail***" various information regarding each contention. This is overly broad, unduly burdensome, and not proportional.

*Fourth*, Plaintiff objects to this contention interrogatory because it seeks information that is more properly the subject of expert testimony. This interrogatory seeks an early "sneak peek" at the opinions of Plaintiff's experts—which are scheduled to be disclosed on March 22, 2027 (with expert discovery closing on June 30, 2027). In the recent *Rumble v. Google* case, where Google was represented by both the WilmerHale and Williams & Connolly firms, Magistrate Judge Cisneros

explained: "***The parties do not dispute that contention interrogatories during fact discovery which call for expert opinions are improper***, but they 'are not improper to the extent they seek only facts, not how an expert would construe those facts.'" *Rumble v. Google LLC*, No. 21-cv-00229-HSG (LJC), 2024 WL 3225907, at *1 (N.D. Cal. June 28, 2024) (emphasis added) (citing *Amgen Inc. v. Sandoz Inc.*, No. 14-cv-04741-RS (MEJ), 2017 WL 1352052, at *2 (N.D. Cal. Apr. 13, 2017); and *Heredia*, 2020 WL 12584277, at *5). In reaching this decision, the *Rumble* court cited Magistrate Judge Early's holding that "contention interrogatories calling for expert opinions are improper." *Heredia*, 2020 WL 12584277, at *5. The *Heredia* court explained that—like here—"it is not apparent that any portion of the interrogatories can be answered without expert testimony." *Id.* at *7. Through this interrogatory, Google seeks early disclosure of expert opinions on topics such as exclusionary conduct "or an exercise of monopoly power" that "caused antitrust injury to users of Google Search" and for detailed information regarding "harm to competition" and "antitrust injury."

In *Klein v. Meta*, Judge Donato refused to compel the plaintiffs to respond to similar contention interrogatories served by the same counsel representing Google here and rejected arguments that the interrogatories were only seeking facts and not expert opinions:

> MR. TERUYA: Yeah. Your Honor, there's also a discovery dispute letter that we raised that is on the agenda as well.
>
> THE COURT: All right. What is the Meta one? Is it Docket 365?
>
> MS. MEHTA: Yes, Your Honor, there's Docket 365. Exactly.
>
> THE COURT: ***That's denied. That's the subject of expert testimony. You can get it later, but not now. So that's for Interrogatory Number 5. That's expert testimony. That will come out in due course. They'll have to answer it, but not right now. It's for experts.***
>
> MS. MEHTA: Your Honor, I just want to clarify --
>
> THE COURT: For 13 and 14, I don't really understand. This looks like expert testimony to me as well.
>
> But what is it you want for 13 and 14?
>
> MS. MEHTA: Yes, Your Honor. So for 13 and 14, we're not asking for their expert opinions, but we are asking for the underlying factual basis.

So if they're saying, as a matter of fact, that something is part of their network or not part of the alleged market, then we'd like that information.

We're not -- in none of these contention interrogatories are we asking for the expert piece of this. Obviously, that will come at the appropriate time. But they are required to provide us with the factual basis for their contentions in this case. The case has been going on for two years.

THE COURT: I don't need -- I know discovery. I want the specifics.

MS. MEHTA: Yes, Your Honor.

THE COURT: What is it are you asking for in 13 and 14?

MS. MEHTA: So --

THE COURT: I don't understand what you're asking for.

MS. MEHTA: Yes, Your Honor. So they have alleged a social network market, and we're asking them to say whether the features or activities that Meta puts out in its products fall within the alleged social network market or not.

They said they couldn't answer that because they didn't know what the features or activities are. We gave them a list and said: Okay, great. Take this list, and could you at least tell us whether that falls within the market or not so that we can proceed with fact discovery understanding what the contours are.

That's what we're asking for. Yes or no for the features that we've given them.

MR. TERUYA: Your Honor, as to that interrogatory, those interrogatories --

THE COURT: This is just 13 and 14.

MR. TERUYA: Yes, as to 13 and 14.

If it's helpful to the Court, we could hand up the list that Ms. Mehta referred to just now that expands the interrogatory and makes it even more complicated.

They sent us a list of the features they'd like us to say that are in or out of the market. There's 320 of them.

They're very granular things that --

THE COURT: What are they? What are some examples?

MR. TERUYA: Like oEmbed; comments plug-in; embedded videos plug-in; conversions; API; app events via Facebook SDK. And the list goes on.

So there's 320 of those that they had given in a different case, and then they added 25 more on. This is after all the briefing is completed.

This is, as I think the Court's earlier questions reflect, very technical and complicated. I think it's -- we don't really understand what's the legal relevance of the question as it's articulated. It's hard to understand.

***But regardless, this is certainly expert and contention discovery. I mean, it requires a definition of the market, first, and then figuring out what products are in it and then, beyond that, what features are in it. We don't think that makes a lot of sense.***

THE COURT: ***I agree with that.*** Same ruling for 5, 13, and 14. I will defer --

MS. MEHTA: And 14 is mooted, Your Honor, because they've withdrawn their social media -- their alleged social media market. So 14 is --

THE COURT: Okay. I'm just going to use what I have. You all work out the nuances.

MS. MEHTA: Understood.

THE COURT: Okay?

All right. Interrogatories 9 and 12. The first one, with respect to which firms would have entered or been more competitive in each alleged market, that's perfectly fair in an exclusionary conduct case.

I don't get the rest of them.

MS. MEHTA: Your Honor, with respect to 12, one of their theories is that the way that Meta acquired the alleged monopoly was through material misstatements or omissions with respect to privacy. That's their theory.

So we'd like to understand their theory, and that's what Interrogatory Number 12 is asking for, the factual basis for their contentions.

MR. TERUYA: ***Your Honor, 9 through 12 are very similar in structure. They're basically asking about the but-for world, what would have happened in a world where certain conduct were different.***

***We think that's quintessential contention and expert discovery in the sense that it's not asking questions about facts that happened in the real world; it's asking about what would have happened.*** You know, that's going to be the subject of expert testimony. Your Honor I'm sure is very familiar with the kinds of expert testimony that will go to that. And trying to put that together now is very premature.

THE COURT: When is your expert report going to be --

MR. TERUYA: Sorry?

THE COURT: What is the expert deadline?

MS. MEHTA: Yes, Your Honor. So merits expert disclosures are in January of 2024, and fact discovery closes this June.

MR. TERUYA: And there's an expert report in connection with class certification.

THE COURT: Oh, there's class in between. Okay.

MS. MEHTA: But even that happens after the close of fact discovery.

THE COURT: Not "even"; always in my courtroom.

But I forgot. I was wondering why it was January, but we have the class thing in between.

***Okay. Those are all expert testimonies also. Those are all denied pending expert testimony.***

Okay. Is there anything else?

Jan. 19, 2023 Hr'g Tr. at 38:8-42:24, *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-8570-JD, Dkt. No. 431 (N.D. Cal) (emphases added).

For reference:

- Interrogatory No. 5 in the *Klein* case asked: "If You contend that Facebook has monopoly power in any alleged relevant product market during the Relevant Time Period, describe in detail the evidentiary basis for your contention (including all documents or witnesses that support your contention), including, without limitation, Facebook's market share in each relevant product market at all times in the Relevant Time Period, how the shares were calculated, and any analyses or sources upon which You base your share calculations. To the extent you intend to rely on expert testimony to support your contention, your response should so state; but your response must include all facts You are presently aware of that support your contention." Ex. A to Disc. Letter Br. at 6-7, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-1 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 9 asked: "For each statement or omission You identified in Your response to Interrogatory No. 6, identify which firms would have entered or exerted increased competitive pressure in the alleged Social Media Market or alleged Social Network Market but did not because of (in full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." Ex. C to Disc. Letter Br. at 4, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-3 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 12 asked: "For each statement or omission You identified in Your response to Interrogatory No. 6, describe in full and complete detail each change in 'application quality,' User Complaint ¶ 226, that Meta and any other firms identified in Your responses to Interrogatory Nos. 1, 2, and 9 would have made in the alleged Social Media Market or alleged Social Network Market but did not because of (in

full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." *Id.* at 5.

- Interrogatory No. 13 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Network Market,' state whether the feature or activity is or is not within your alleged 'Social Network Market.'" *Id.*

- Interrogatory No. 14 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Media Market,' state whether the feature or activity is or is not within your alleged 'Social Media Market.'" *Id.*

Like the contention interrogatories rejected by Judge Donato in *Klein*, this contention interrogatory seeks a "sneak peek" and attempts to require Plaintiff to provide early expert disclosures, and is therefore objectionable. Plaintiff will make expert disclosures and provide expert reports pursuant to the schedule for expert discovery set by the Court.

*Fifth*, Plaintiff further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, common interest privilege, or work product doctrine, or that is otherwise privileged or protected from discovery. Plaintiff further objects to this interrogatory to the extent it seeks information that calls for an ultimate legal conclusion.

*Sixth*, Plaintiff objects to this interrogatory as disproportionate and unduly burdensome insofar as it would require Plaintiff to, among other things, identify evidence and repeat detailed findings by Judge Mehta that are publicly available from the DOJ search case or included in Google's re-production of materials from that case. As Plaintiffs explained in their Third Amended Complaint and in briefing on various motions, this case builds on the multi-year antitrust litigation brought by the United States Department of Justice and multiple states alleging that Google violated Section 2 of the Sherman Act through anticompetitive and illegal conduct in, among other things, the market for general search services. While Plaintiffs are seeking additional discovery regarding Google's anticompetitive conduct, Judge Mehta held a multi-month bench trial and issued liability and remedies opinions spanning hundreds of pages. *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024); *United States v. Google LLC*, 803 F. Supp. 3d 18 (D.D.C. 2025); *United States v. Google LLC*, No. 20-cv-3010 (APM), 2025 WL 3496448 (D.D.C. Dec. 5, 2025). One of the focuses

of that governmental antitrust action was the acts by Google that were exclusionary or an exercise of monopoly power. *See Google*, 803 F. Supp. 3d at 36 (describing how Google violated antitrust laws when it "entered into distribution agreements" that were "the most efficient channels for distributing a GSE, and Google paid billions to lock them up" which "harmed competition."). Thus, this is not a case where the defendant can claim lack of clarity regarding the allegations against it. Requiring Plaintiff to repeat evidence and findings from that case in this interrogatory response, especially given that fact discovery is otherwise ongoing and expert discovery will not occur until next year, serves no proper purpose and its therefore both disproportionate and unduly burdensome.

*Seventh*, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least five sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiff explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least five sub-parts here that count as individual interrogatories:

> For each act by Google that You contend is exclusionary or an exercise of monopoly power and caused antitrust injury to users of Google Search, describe in full and complete detail the basis for Your contention, including by [1] identifying each act; [2] the date or dates of each act; [3] the specific way in which You contend each act harmed competition; [4] any actual or potential competitors You contend were excluded or foreclosed by each act; and [5] how You contend each act caused antitrust injury to Google Search users, including specifically each named Plaintiff.

**INTERROGATORY NO. 7:**

If You contend that, absent the acts You identified in response to Interrogatory No. 6 or challenge in the TAC, Google would have provided compensation to users of General Search Engines, describe in full and complete detail the basis for Your contention, including by identifying the source of, reason for, amount of, and frequency of the compensation; the manner in which the

compensation would have been provided; and the users to whom Google would have provided compensation.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff incorporates his objections to Google's Interrogatory No. 6 as if fully stated herein.

Plaintiff also notes that, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least three sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least three sub-parts here that count as individual interrogatories:

> If You contend that, absent the acts You identified in response to Interrogatory No. 6 or challenge in the TAC, Google would have provided compensation to users of General Search Engines, describe in full and complete detail the basis for Your contention, including by identifying the [1] source of, reason for, amount of, and frequency of the compensation; [2] the manner in which the compensation would have been provided; [3] and the users to whom Google would have provided compensation.

**INTERROGATORY NO. 8:**

If You contend that, absent the acts You identified in response to Interrogatory No. 6 or challenge in the TAC, Google would have offered users of General Search Engines "better privacy protections," TAC ¶ 5, describe in full and complete detail the basis for Your contention, including by identifying the specific privacy protections You contend would have been offered.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff incorporates his objections to Google's Interrogatory No. 6 as if fully stated herein.

**INTERROGATORY NO. 9:**

If You contend that, absent the acts You identified in response to Interrogatory No. 6 or challenge in the TAC, Google would have offered users of General Search Engines "reduced or ad-free search experiences," TAC ¶ 18, describe in full and complete detail the basis for Your contention, including by identifying the specific changes in the amount of advertising or privacy practices You contend would have occurred.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff incorporates his objections to Google's Interrogatory No. 6 as if fully stated herein.

Plaintiff also notes that, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least two sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least two sub-parts here that count as individual interrogatories:

> If You contend that, absent the acts You identified in response to Interrogatory No. 6 or challenge in the TAC, Google would have offered users of General Search Engines "reduced or ad-free search experiences," TAC ¶ 18, describe in full and complete detail the basis for Your contention, including by identifying the specific changes in [1] the amount of advertising or [2] privacy practices You contend would have occurred.

**INTERROGATORY NO. 10:**

If You contend that any party to an alleged agreement identified in response to Interrogatory No. 6 or challenged in the TAC would have modified its choice of default or preloaded General Search Engine in any Search Access Point absent the acts You identified in response to Interrogatory No. 6 or challenge in the TAC, state in full and complete detail the basis for your contention,

including by identifying the party or parties whom You contend would have done so; whether You contend the party or parties would have selected an alternative default General Search Engine, selected no default, employed a choice screen, contracted to preload an alternative General Search Engine, or declined to do any of the foregoing; the Search Access Points to which that selection would have applied; and the alternative General Search Engine(s) that would have been selected for each Search Access Point and whether each such alternative General Search Engine would have provided compensation to users, offered "better privacy protections" than Google Search, TAC ¶ 5, and/or offered a "reduced or ad-free search experience," *id*. ¶ 18.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff incorporates his objections to Google's Interrogatory No. 6 as if fully stated herein.

Plaintiff also notes that, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least five sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least five sub-parts here that count as individual interrogatories:

> If You contend that any party to an alleged agreement identified in response to Interrogatory No. 6 or challenged in the TAC would have modified its choice of default or preloaded General Search Engine in any Search Access Point absent the acts You identified in response to Interrogatory No. 6 or challenge in the TAC, state in full and complete detail the basis for your contention, including [1] by identifying the party or parties whom You contend would have done so; [2] whether You contend the party or parties would have selected an alternative default General Search Engine, selected no default, employed a choice screen, contracted to preload an alternative General Search Engine, or declined to do any of the foregoing; [4] the Search Access Points to which that selection would have applied; and [5] the alternative General Search Engine(s) that would have been selected for each Search Access Point and whether each such alternative General Search Engine would have provided compensation to

> users, offered "better privacy protections" than Google Search, TAC ¶ 5, and/or offered a "reduced or ad-free search experience," *id.* ¶ 18.

Plaintiff therefore objects to this interrogatory on the grounds that its fifth sub-part exceeds the 25 written interrogatory limit set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 11:**

If You contend that any of the acts You identified in response to Interrogatory No. 6 or challenge in the TAC "den[ied]" any General Search Engine "access to user queries," "scale," or "search data," TAC ¶ 164, identify in full and complete detail the basis for your contention, including by identifying each such General Search Engine; the manner in which each act "den[ied]" each such General Search Engine "access to user queries," "scale," or "search data"; and the manner in which each such General Search Engine would have obtained additional user queries, scale, and/or search data absent the acts You identified in response to Interrogatory No. 6 or challenge in the TAC.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff incorporates his objections to Google's Interrogatory No. 6 as if fully stated herein.

Plaintiff also notes that, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least two sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least two sub-parts here that count as individual interrogatories:

> If You contend that any of the acts You identified in response to Interrogatory No. 6 or challenge in the TAC "den[ied]" any General Search Engine "access to user queries," "scale," or "search data," TAC ¶ 164, identify in full and complete detail the basis for your contention, including [1] by identifying each such General Search Engine; the manner in which each act "den[ied]" each such General Search Engine "access to user queries," "scale," or "search data"; and [2] the manner in which each

> such General Search Engine would have obtained additional user queries, scale, and/or search data absent the acts You identified in response to Interrogatory No. 6 or challenge in the TAC.

Plaintiff therefore objects to this interrogatory on the grounds that it exceeds the 25 written interrogatory limit set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure. As described above, Google's 25th interrogatory was the fourth sub-part to Interrogatory No. 10.

**INTERROGATORY NO. 12:**

If You contend that any of the acts You identified in response to Interrogatory No. 6 or challenge in the TAC constitutes "ongoing" or "continuing" conduct that causes or threatens to cause antitrust injury to users of Google Search, including as alleged in TAC ¶¶ 242-252, describe in full and complete detail the basis for Your contention, including by identifying each act You contend is ongoing, the date on which each such act most recently occurred, and the antitrust injury to users of Google Search caused or threatened by each such act.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff incorporates his objections to Google's Interrogatory No. 6 as if fully stated herein.

Plaintiff also notes that, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least three sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least three sub-parts here that count as individual interrogatories:

> If You contend that any of the acts You identified in response to Interrogatory No. 6 or challenge in the TAC constitutes "ongoing" or "continuing" conduct that causes or threatens to cause antitrust injury to users of Google Search, including as alleged in TAC ¶¶ 242-252, describe in full and complete detail the basis for Your contention, including by [1] identifying each act You contend is ongoing, [2] the date on which

each such act most recently occurred, and [3] the antitrust injury to users of Google Search caused or threatened by each such act.

Plaintiff therefore objects to this interrogatory on the grounds that it exceeds the 25 written interrogatory limit set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure. As described above, Google's 25th interrogatory was the fourth sub-part to Interrogatory No. 10.

**INTERROGATORY NO. 13:**

If You contend that "general search services" in the United States is currently a relevant antitrust market, as alleged in TAC ¶¶ 103-115, describe in full and complete detail the basis for Your contention, including by identifying the contours of the alleged market; each firm, product, and service You contend is within the alleged market; and Your basis for excluding specialized search services, social media services, online shopping services, and generative artificial intelligence services from the alleged market if You contend that they are not included.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff objects to this interrogatory on multiple grounds.

*First*, Plaintiff objections to this interrogatory as a premature contention interrogatory. Fact discovery is currently scheduled to close on February 5, 2027 and the Court has ordered document production to be substantially complete by October 16, 2026. Google has been slowly producing materials from the DOJ search case, taking more than six months to produce materials that Judge Lin indicated should be produced quickly (suggested production by March 2026). Google has also delayed producing documents sought by Plaintiffs in *this* case, including for the period after productions in the DOJ search case. The parties have been negotiating search terms (after Magistrate Judge Kim resolved the parties' disputes regarding custodians) and Google's production of additional "go get documents." The parties are also currently engaged in third-party discovery, and many of those third parties have not yet produced documents to either side. Plaintiffs anticipate depositions in the coming months based on the schedule set by Judge Lin.

This objection is consistent with the position taken by Google's counsel in other litigation. For example, Williams & Connolly successfully objected to contention interrogatories served in another case at an "early stage of discovery," with that court explaining that "Courts 'will look with

considerable skepticism at sets of interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading.' ***This is particularly the case when the operative complaint is not facially deficient and 'presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories*** ....'" *Ritchie v. Sempra Energy*, No. 10cv1513-CAB(KSC), 2014 WL 12637955, at *3 (S.D. Cal. Aug. 4, 2014) (alteration in original) (emphasis added) (citation omitted) (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 335-39 (N.D. Cal. 1985)). In *Ritchie*, the district court agreed with the attorneys representing Google in this case that, "[u]nder these circumstances, ordering plaintiff to provide more complete responses to Interrogatory Nos. 6 and 7, as written, would be overly burdensome and serve no useful purpose as it would not be helpful in clarifying the issues or narrowing the scope of the parties' dispute at this point in the litigation." *Id.* at *4. The same is true with this interrogatory.

In an antitrust case against eBay, then-Magistrate Judge Seeborg recognized that "courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete. One court in this district expressed its considerable skepticism about the use of contention interrogatories at the early stages of discovery and fashioned four guidelines under which to assess the propriety of such discovery requests." *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) (citations omitted) (citing *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992); and *In re Convergent*, 108 F.R.D. at 332-38). Judge Seeborg explained that "[a]pplying those guidelines here, as well as the limits set forth in Rule 26, eBay's contention interrogatories are premature at this stage of discovery." *Id.* at *2. In reaching this conclusion, Judge Seeborg observed that "***eBay's contention interrogatories seek answers to two of the major issues in the case: market definition and damages. It is not apparent how these broad interrogatories, particularly those that track plaintiffs' complaint, will serve to clarify the issues or narrow the scope of the litigation at this juncture.***" *Id.* (emphasis added). Judge Seeborg's guidance is especially apt here, where Google's

contention interrogatory is focused on the issue of market definition and whether "'general search services' in the United States is currently a relevant antitrust market."

Similarly, Magistrate Judge James rejected contention interrogatories served by Defendant Facebook in a case pending in this District, explaining: "Nor has Facebook shown how responding to any of its other interrogatories before substantial discovery has been conducted will contribute meaningfully to clarifying the issues in the case or narrowing the scope of the dispute." *Campbell v. Facebook Inc.*, No. 13-cv-05996-PJH (MEJ), 2015 WL 3533221, at *5 (N.D. Cal. June 3, 2015). The court noted that "Facebook provides no argument or support that the information sought would help set up early settlement discussions or that such answers are likely to expose a substantial basis for a Rule 11 or Rule 56 motion." *Id*. The *Campbell* court also rejected contention interrogatories relating to class certification, explaining that Facebook had better access to relevant information and that the contention interrogatory was "no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion":

> While Facebook's last interrogatory to Plaintiff Shadpour appears to seek information to expose a basis for opposing class certification under Rule 23 by requesting that Plaintiff "identify all facts that support ... that this ACTION is appropriate for class treatment," Jt. Ltr., Ex. C, Facebook does not show how it needs this information at this time, when substantial discovery is yet to be conducted. ***Such an interrogatory strikes the Court as no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion.*** In considering this interrogatory, the Court also finds significant *In re Convergent*'s concern over which party has better access to the information the propounding party seeks. ***The same is true of Facebook's interrogatory asking Plaintiff Shadpour to identify all facts that support that this action is appropriate for class treatment: Facebook seemingly would be in a better position to know what facts about its practices are common, etc., among proposed class members.*** In any case, as with the other interrogatories, the Court finds this interrogatory premature at this time.

*Id.* (alteration in original) (emphases added) (citations omitted) (citing *In re Convergent*, 108 F.R.D. at 338-39); *see also In re Convergent*, 108 F.R.D. at 349 ("It is not obvious why plaintiffs would have better access than defendants to evidence about how the information Convergent made public got into the market place. Convergent presumably knows what information it published and through

which channels. Convergent thus would seem to be in a better position than plaintiffs to begin examining how, and to what extent, that information penetrated the marketplace.").

*Second*, Plaintiff objects to this interrogatory because Google cannot meet its burden to justify serving contention interrogatories at this early stage: "As a general rule, a party moving to compel responses to contention interrogatories at an early stage in litigation must show the responses would 'contribute meaningfully' to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56." *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS (JDEx), 2020 WL 12584277, at *5 (C.D. Cal. July 20, 2020) (citing *In re Convergent*, 108 F.R.D. at 337). The *Heredia* court explained:

> To meet this burden, a party seeking early answers must present "specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." ***In assessing whether a defendant has met that burden, "if a complaint presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories, an attempt to justify early use of contention interrogatories on the ground that answers would clarify the issues would not be especially persuasive.*** " Similarly, courts also consider the parties' respective access to information: ***"at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail."***

*Id.* (alteration in original) (emphases added) (citations omitted). Here, there can be no dispute that Plaintiffs' Third Amended Complaint provides "a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories" and that Google has "access to most of the evidence about [its] own behavior." Judge Lin already considered and rejected Google's attacks on the adequacy of Plaintiffs' operative complaint. *See* Dkt. 66 at 2, 6. Thus, "it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail." *Heredia*, 2020 WL 12584277, at *5 (alteration in original).

In the *Campbell v. Facebook* case, Magistrate Judge James similarly recognized that a party seeking to use contention interrogatories before the completion of substantial documentary or

testimonial discovery has a "burden of justification" that cannot be met "by vague or speculative statements about what might happen if the interrogatories were answered":

> Consequently, courts in this district have placed "a burden of justification" on a party who seeks answers to contention interrogatories before substantial documentary or testimonial discovery has been completed. ***"[S]uch a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56."*** "A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered." "Rather, ***the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure***." In the case where a defendant seeks responses to early contention interrogatories from a plaintiff, ***courts should be "especially vigilant" in evaluating the proffered justifications when the plaintiff's complaint is not 'facially infirm' and the defendant appears to have control over or adequate access to much of the evidence relevant to its alleged misconduct***.

2015 WL 3533221, at *4 (alterations in original) (emphases added) (citations omitted) (citing *In re Convergent*, 108 F.R.D. at 338-39; *In re Wells Fargo Residential Mortg. Lending Discrimination Litig.*, No. C 08-1930 MMC (JL), 2009 WL 1771368, at *6 (N.D. Cal. June 19, 2009); and *United States v. Bazaarvoice, Inc.*, No. C 13-00133 EMC (LB), 2013 WL 1739472, at *3 (N.D. Cal. Apr. 22, 2013)). Like the complaint in *Campbell*, Plaintiffs' Third Amended Complaint "is not the sort of 'infirm' complaint warned of in *In re Convergent.* It contains detailed factual allegations about the conduct Plaintiffs challenge as unlawful, and—from the Court's review—contains allegations that address Facebook's concern above." *Id*. The other stated purposes for early contention interrogatories are also not met here.

*Third*, in addition to its prematurity, Plaintiff objects to this contention interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case. As Judge Seeborg recognized, "pursuant to Rule 26, ***because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face***." *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2 (emphasis added). Similarly, Magistrate Judge Crawford in the Southern District of California accepted the argument advanced

by one of the law firms representing Google in this case that "'contention interrogatories 'should not require the answering party to provide a narrative account of its case.' Courts 'will generally find [contention interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' [or 'all facts'] which support[] identified allegations or defenses.'" *Ritchie*, 2014 WL 12637955, at *3 (alterations in original) (citation omitted) (quoting *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998)).

Magistrate Judge Early in the Central District of California recognized the undue burden that contention interrogatories can impose on a responding party: "as with any other discovery device, contention interrogatories can, depending upon how they are used, become unduly burdensome and not proportional to the needs of the case under Rule 26(b)(1)." *Heredia*, 2020 WL 12584277, at *5; *see also Campbell*, 2015 WL 3533221, at *5 ("Facebook has not shown how this response is insufficient or how a response to its next interrogatory, which asks Plaintiff to identify 'all facts' that support this response, is needed to clarify the issues in the case."). Here, Google's interrogatory demands Plaintiffs "describe in ***full and complete detail***" the basis for their contention "that 'general search services' in the United States is currently a relevant antitrust market." This is overly broad, unduly burdensome, and not proportional.

*Fourth*, Plaintiff objects to this contention interrogatory because it seeks information that is more properly the subject of expert testimony. This interrogatory seeks an early "sneak peek" at the opinions of Plaintiff's experts on the issue of market definition—which are scheduled to be disclosed on March 22, 2027 (with expert discovery closing on June 30, 2027). In the recent *Rumble v. Google* case, where Google was represented by both the WilmerHale and Williams & Connolly firms, Magistrate Judge Cisneros explained: "***The parties do not dispute that contention interrogatories during fact discovery which call for expert opinions are improper***, but they 'are not improper to the extent they seek only facts, not how an expert would construe those facts.'" *Rumble v. Google LLC*, No. 21-cv-00229-HSG (LJC), 2024 WL 3225907, at *1 (N.D. Cal. June 28, 2024) (emphasis added) (citing *Amgen Inc. v. Sandoz Inc.*, No. 14-cv-04741-RS (MEJ), 2017 WL 1352052, at *2 (N.D. Cal. Apr. 13, 2017); and *Heredia*, 2020 WL 12584277, at *5). In reaching this decision, the

*Rumble* court cited Magistrate Judge Early's holding that "contention interrogatories calling for expert opinions are improper." *Heredia*, 2020 WL 12584277, at *5. The *Heredia* court explained that—like here—"it is not apparent that any portion of the interrogatories can be answered without expert testimony." *Id.* at *7. Through this interrogatory, Google seeks early disclosure of expert opinions on topics such as "the contours of the alleged [antitrust] market," and for detailed information regarding "each firm, product, and service [Plaintiff] contend[s] is within the alleged market."

In *Klein v. Meta*, Judge Donato refused to compel the plaintiffs to respond to similar contention interrogatories served by the same counsel representing Google here and rejected arguments that the interrogatories were only seeking facts and not expert opinions:

> MR. TERUYA: Yeah. Your Honor, there's also a discovery dispute letter that we raised that is on the agenda as well.
>
> THE COURT: All right. What is the Meta one? Is it Docket 365?
>
> MS. MEHTA: Yes, Your Honor, there's Docket 365. Exactly.
>
> THE COURT: ***That's denied. That's the subject of expert testimony. You can get it later, but not now. So that's for Interrogatory Number 5. That's expert testimony. That will come out in due course. They'll have to answer it, but not right now. It's for experts.***
>
> MS. MEHTA: Your Honor, I just want to clarify --
>
> THE COURT: For 13 and 14, I don't really understand. This looks like expert testimony to me as well.
>
> But what is it you want for 13 and 14?
>
> MS. MEHTA: Yes, Your Honor. So for 13 and 14, we're not asking for their expert opinions, but we are asking for the underlying factual basis.
>
> So if they're saying, as a matter of fact, that something is part of their network or not part of the alleged market, then we'd like that information.
>
> We're not -- in none of these contention interrogatories are we asking for the expert piece of this. Obviously, that will come at the appropriate time. But they are required to provide us with the factual basis for their contentions in this case. The case has been going on for two years.

THE COURT: I don't need -- I know discovery. I want the specifics.

MS. MEHTA: Yes, Your Honor.

THE COURT: What is it are you asking for in 13 and 14?

MS. MEHTA: So --

THE COURT: I don't understand what you're asking for.

MS. MEHTA: Yes, Your Honor. So they have alleged a social network market, and we're asking them to say whether the features or activities that Meta puts out in its products fall within the alleged social network market or not.

They said they couldn't answer that because they didn't know what the features or activities are. We gave them a list and said: Okay, great. Take this list, and could you at least tell us whether that falls within the market or not so that we can proceed with fact discovery understanding what the contours are.

That's what we're asking for. Yes or no for the features that we've given them.

MR. TERUYA: Your Honor, as to that interrogatory, those interrogatories --

THE COURT: This is just 13 and 14.

MR. TERUYA: Yes, as to 13 and 14.

If it's helpful to the Court, we could hand up the list that Ms. Mehta referred to just now that expands the interrogatory and makes it even more complicated.

They sent us a list of the features they'd like us to say that are in or out of the market. There's 320 of them.

They're very granular things that --

THE COURT: What are they? What are some examples?

MR. TERUYA: Like oEmbed; comments plug-in; embedded videos plug-in; conversions; API; app events via Facebook SDK. And the list goes on.

So there's 320 of those that they had given in a different case, and then they added 25 more on. This is after all the briefing is completed.

This is, as I think the Court's earlier questions reflect, very technical and complicated. I think it's -- we don't really understand what's the legal relevance of the question as it's articulated. It's hard to understand.

***But regardless, this is certainly expert and contention discovery. I mean, it requires a definition of the market, first, and then figuring out what products are in it and then, beyond that, what features are in it. We don't think that makes a lot of sense.***

THE COURT: ***I agree with that.*** Same ruling for 5, 13, and 14. I will defer --

MS. MEHTA: And 14 is mooted, Your Honor, because they've withdrawn their social media -- their alleged social media market. So 14 is --

THE COURT: Okay. I'm just going to use what I have. You all work out the nuances.

MS. MEHTA: Understood.

THE COURT: Okay?

All right. Interrogatories 9 and 12. The first one, with respect to which firms would have entered or been more competitive in each alleged market, that's perfectly fair in an exclusionary conduct case.

I don't get the rest of them.

MS. MEHTA: Your Honor, with respect to 12, one of their theories is that the way that Meta acquired the alleged monopoly was through material misstatements or omissions with respect to privacy. That's their theory.

So we'd like to understand their theory, and that's what Interrogatory Number 12 is asking for, the factual basis for their contentions.

MR. TERUYA: ***Your Honor, 9 through 12 are very similar in structure. They're basically asking about the but-for world, what would have happened in a world where certain conduct were different.***

***We think that's quintessential contention and expert discovery in the sense that it's not asking questions about facts that happened in the real world; it's asking about what would have happened.*** You know, that's going to be the subject of expert testimony. Your Honor I'm sure is very familiar with the kinds of expert testimony that will go to that. And trying to put that together now is very premature.

THE COURT: When is your expert report going to be --

MR. TERUYA: Sorry?

THE COURT: What is the expert deadline?

MS. MEHTA: Yes, Your Honor. So merits expert disclosures are in January of 2024, and fact discovery closes this June.

MR. TERUYA: And there's an expert report in connection with class certification.

THE COURT: Oh, there's class in between. Okay.

MS. MEHTA: But even that happens after the close of fact discovery.

THE COURT: Not "even"; always in my courtroom.

> But I forgot. I was wondering why it was January, but we have the class thing in between.
>
> ***Okay. Those are all expert testimonies also. Those are all denied pending expert testimony.***
>
> Okay. Is there anything else?

Jan. 19, 2023 Hr'g Tr. at 38:8-42:24, *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-8570-JD, Dkt. No. 431 (N.D. Cal) (emphases added).

For reference:

- Interrogatory No. 5 in the *Klein* case stated: "If You contend that Facebook has monopoly power in any alleged relevant product market during the Relevant Time Period, describe in detail the evidentiary basis for your contention (including all documents or witnesses that support your contention), including, without limitation, Facebook's market share in each relevant product market at all times in the Relevant Time Period, how the shares were calculated, and any analyses or sources upon which You base your share calculations. To the extent you intend to rely on expert testimony to support your contention, your response should so state; but your response must include all facts You are presently aware of that support your contention." Ex. A to Disc. Letter Br. at 6-7, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-1 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 9 asked: "For each statement or omission You identified in Your response to Interrogatory No. 6, identify which firms would have entered or exerted increased competitive pressure in the alleged Social Media Market or alleged Social Network Market but did not because of (in full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." Ex. C to Disc. Letter Br. at 4, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-3 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 12 asked: "For each statement or omission You identified in Your response to Interrogatory No. 6, describe in full and complete detail each change in 'application quality,' User Complaint ¶ 226, that Meta and any other firms identified in Your responses to Interrogatory Nos. 1, 2, and 9 would have made in the alleged Social Media Market or alleged Social Network Market but did not because of (in full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." *Id.* at 5.

- Interrogatory No. 13 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Network Market,' state whether the feature or activity is or is not within your alleged 'Social Network Market.'" *Id.*

- Interrogatory No. 14 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Media Market,' state

> whether the feature or activity is or is not within your alleged 'Social Media Market.'" *Id*.

Like the contention interrogatories rejected by Judge Donato in *Klein*, this contention interrogatory seeks a "sneak peek" and attempts to require Plaintiffs to provide early expert disclosures on the issue of market definition, and is therefore objectionable. Plaintiffs will make expert disclosures and provide expert reports pursuant to the schedule for expert discovery set by the Court.

*Fifth*, Plaintiff further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, common interest privilege, or work product doctrine, or that is otherwise privileged or protected from discovery. Plaintiff further objects to this interrogatory to the extent it seeks information that calls for an ultimate legal conclusion.

*Sixth*, Plaintiff objects to this interrogatory as disproportionate and unduly burdensome insofar as it would require Plaintiff to, among other things, identify evidence and repeat detailed findings by Judge Mehta that are publicly available from the DOJ search case or included in Google's re-production of materials from that case. As Plaintiffs explained in their Third Amended Complaint and in briefing on various motions, this case builds on the multi-year antitrust litigation brought by the United States Department of Justice and multiple states alleging that Google violated Section 2 of the Sherman Act through anticompetitive and illegal conduct in, among other things, the market for general search services. While Plaintiffs are seeking additional discovery regarding the market definition of general search services, Judge Mehta held a multi-month bench trial and issued liability and remedies opinions spanning hundreds of pages. *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024); *United States v. Google LLC*, 803 F. Supp. 3d 18 (D.D.C. 2025). One of the focuses of that governmental antitrust action was successfully establishing "that general search services is a relevant product market and alternative sources for query information, like SVPs [Specialized Vertical Providers] and social media sites, are not adequate substitutes." *United States v. Google LLC*, 747 F. Supp. 3d 1, 109-10 (D.D.C. 2024). In reaching this decision, Judge Mehta found that "Google itself recognizes general search services as a distinct product and separate market." *Id.* at 112. Thus, this is not a case where the defendant can claim lack of clarity regarding

the alleged relevant market (indeed, it has been unsuccessfully litigating this issue for years). Requiring Plaintiffs to repeat evidence and findings from that case in this interrogatory response, especially given that fact discovery is otherwise ongoing and expert discovery will not occur until next year, serves no proper purpose and its therefore both disproportionate and unduly burdensome.

*Seventh*, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least three sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least three sub-parts here that count as individual interrogatories:

> If You contend that "general search services" in the United States is currently a relevant antitrust market, as alleged in TAC ¶¶ 103-115, describe in full and complete detail the basis for Your contention, including [1] by identifying the contours of the alleged market; [2] each firm, product, and service You contend is within the alleged market; and [3] Your basis for excluding specialized search services, social media services, online shopping services, and generative artificial intelligence services from the alleged market if You contend that they are not included.

Plaintiff therefore objects to this interrogatory on the grounds that it exceeds the 25 written interrogatory limit set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure. As explained above, Google's 25th interrogatory was the fourth sub-part to Interrogatory No. 10.

**INTERROGATORY NO. 14:**

If You contend that Google has or had monopoly power in the alleged market for "general search services" in the United States, as alleged in TAC ¶¶ 116-132, describe in full and complete detail the basis for Your contention, including without limitation the date(s) on which You contend Google obtained a monopoly in said market; if ever, the dates on which You contend Google's

monopoly in said market ended and the reasons therefor; and the reasons that Google supposedly has or had a monopoly.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff objects to this interrogatory on multiple grounds.

*First*, Plaintiff objects to this interrogatory as a premature contention interrogatory. Fact discovery is currently scheduled to close on February 5, 2027 and the Court has ordered document production to be substantially complete by October 16, 2026. Google has been slowly producing the materials from the DOJ search case, taking more than six months to produce materials that Judge Lin indicated should be produced quickly (suggested production by March 2026). Google has also delayed producing additional documents sought by Plaintiffs in *this* case, including for the period after productions in the DOJ search case. The parties have been negotiating search terms (after Magistrate Judge Kim resolved the parties' disputes regarding custodians) and Google's production of additional "go get" documents. The parties are also currently engaged in third-party discovery, and many of those third parties have not yet produced documents to either side. Plaintiffs anticipate depositions in the coming months based on the schedule set by Judge Lin.

This objection is consistent with the position take by Google's counsel in other litigation. For example, Williams & Connolly successfully objected to contention interrogatories served in another case at an "early stage of discovery," with that court explaining that "Courts 'will look with considerable skepticism at sets of interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading.' ***This is particularly the case when the operative complaint is not facially deficient and 'presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories*** ....'" *Ritchie v. Sempra Energy*, No. 10cv1513-CAB(KSC), 2014 WL 12637955, at *3 (S.D. Cal. Aug. 4, 2014) (alteration in original) (emphasis added) (citation omitted) (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 335-39 (N.D. Cal. 1985)). In *Ritchie*, the district court agreed with the attorneys representing Google in this case that, "[u]nder these circumstances, ordering plaintiff to provide more complete responses to Interrogatory Nos. 6 and 7, as written, would be overly

burdensome and serve no useful purpose as it would not be helpful in clarifying the issues or narrowing the scope of the parties' dispute at this point in the litigation." *Id.* at *4. The same is true in this case with this interrogatory.

In an antitrust case against eBay, then-Magistrate Judge Seeborg recognized that "courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete. One court in this district expressed its considerable skepticism about the use of contention interrogatories at the early stages of discovery and fashioned four guidelines under which to assess the propriety of such discovery requests." *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) (citations omitted) (citing *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992); and *In re Convergent*, 108 F.R.D. at 332-38). Judge Seeborg explained that "[a]pplying those guidelines here, as well as the limits set forth in Rule 26, eBay's contention interrogatories are premature at this stage of discovery." *Id.* at *2. In reaching this conclusion, Judge Seeborg observed that "***eBay's contention interrogatories seek answers to two of the major issues in the case: market definition and damages. It is not apparent how these broad interrogatories, particularly those that track plaintiffs' complaint, will serve to clarify the issues or narrow the scope of the litigation at this juncture.***" *Id.* (emphasis added). Judge Seeborg's guidance is especially apt here, where Google's contention interrogatory is focused on the major issue of Google's monopoly power in the market for general search services.

Similarly, Magistrate Judge James rejected contention interrogatories served by Defendant Facebook in a case pending in this District, explaining: "Nor has Facebook shown how responding to any of its other interrogatories before substantial discovery has been conducted will contribute meaningfully to clarifying the issues in the case or narrowing the scope of the dispute." *Campbell v. Facebook Inc.*, No. 13-cv-05996-PJH (MEJ), 2015 WL 3533221, at *5 (N.D. Cal. June 3, 2015). The court noted that "Facebook provides no argument or support that the information sought would help set up early settlement discussions or that such answers are likely to expose a substantial basis for a Rule 11 or Rule 56 motion." *Id.* The *Campbell* court also rejected contention interrogatories

relating to class certification, explaining that Facebook had better access to relevant information and that the contention interrogatory was "no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion":

> While Facebook's last interrogatory to Plaintiff Shadpour appears to seek information to expose a basis for opposing class certification under Rule 23 by requesting that Plaintiff "identify all facts that support ... that this ACTION is appropriate for class treatment," Jt. Ltr., Ex. C, Facebook does not show how it needs this information at this time, when substantial discovery is yet to be conducted. ***Such an interrogatory strikes the Court as no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion.*** In considering this interrogatory, the Court also finds significant *In re Convergent*'s concern over which party has better access to the information the propounding party seeks. ***The same is true of Facebook's interrogatory asking Plaintiff Shadpour to identify all facts that support that this action is appropriate for class treatment: Facebook seemingly would be in a better position to know what facts about its practices are common, etc., among proposed class members.*** In any case, as with the other interrogatories, the Court finds this interrogatory premature at this time.

*Id.* (alteration in original) (emphases added) (citations omitted) (citing *In re Convergent*, 108 F.R.D. at 338-39); *see also In re Convergent*, 108 F.R.D. at 349 ("It is not obvious why plaintiffs would have better access than defendants to evidence about how the information Convergent made public got into the market place. Convergent presumably knows what information it published and through which channels. Convergent thus would seem to be in a better position than plaintiffs to begin examining how, and to what extent, that information penetrated the marketplace.").

*Second*, Plaintiff objects to this interrogatory because Google cannot meet its burden to justify serving contention interrogatories at this early stage: "As a general rule, a party moving to compel responses to contention interrogatories at an early stage in litigation must show the responses would 'contribute meaningfully' to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56." *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS (JDEx), 2020 WL 12584277, at *5 (C.D. Cal. July 20, 2020) (citing *In re Convergent*, 108 F.R.D. at 337). The *Heredia* court explained:

> To meet this burden, a party seeking early answers must present "specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." ***In assessing***

> ***whether a defendant has met that burden, "if a complaint presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories, an attempt to justify early use of contention interrogatories on the ground that answers would clarify the issues would not be especially persuasive.*"** Similarly, courts also consider the parties' respective access to information: ***"at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail."***

*Id.* (alteration in original) (emphases added) (citations omitted). Here, there can be no dispute that Plaintiffs' Third Amended Complaint provides "a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories" and that Google has "access to most of the evidence about [its] own behavior." Judge Lin already considered and rejected Google's attacks on the adequacy of Plaintiffs' operative complaint. *See* Dkt. 66 at 2, 6. Thus, "it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail." *Heredia*, 2020 WL 12584277, at *5 (alteration in original).

In the *Campbell v. Facebook* case, Magistrate Judge James similarly recognized that a party seeking to use contention interrogatories before the completion of substantial documentary or testimonial discovery has a "burden of justification" that cannot be met "by vague or speculative statements about what might happen if the interrogatories were answered":

> Consequently, courts in this district have placed "a burden of justification" on a party who seeks answers to contention interrogatories before substantial documentary or testimonial discovery has been completed. ***"[S]uch a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56."*** "A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered." "Rather, ***the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure***." In the case where a defendant seeks responses to early contention interrogatories from a plaintiff, ***courts should be "especially vigilant" in evaluating the proffered justifications when the plaintiff's complaint is not 'facially infirm' and the defendant appears to have control over or adequate access to much of the evidence relevant to its alleged misconduct***.

2015 WL 3533221, at *4 (alterations in original) (emphases added) (citations omitted) (citing *In re Convergent*, 108 F.R.D. at 338-39; *In re Wells Fargo Residential Mortg. Lending Discrimination Litig.*, No. C 08-1930 MMC (JL), 2009 WL 1771368, at *6 (N.D. Cal. June 19, 2009); and *United States v. Bazaarvoice, Inc.*, No. C 13-00133 EMC (LB), 2013 WL 1739472, at *3 (N.D. Cal. Apr. 22, 2013)). Like the complaint in *Campbell*, Plaintiffs' Third Amended Complaint "is not the sort of 'infirm' complaint warned of in *In re Convergent.* It contains detailed factual allegations about the conduct Plaintiffs challenge as unlawful, and—from the Court's review—contains allegations that address Facebook's concern above." *Id.* The other stated purposes for early contention interrogatories are also not met here.

*Third*, in addition to its prematurity, Plaintiff objects to this contention interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case. As Judge Seeborg recognized, "pursuant to Rule 26, ***because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face***." *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2 (emphasis added). Similarly, Magistrate Judge Crawford in the Southern District of California accepted the argument advanced by one of the law firms representing Google in this case that "'contention interrogatories 'should not require the answering party to provide a narrative account of its case.' Courts 'will generally find [contention interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' [or 'all facts'] which support[] identified allegations or defenses.'" *Ritchie*, 2014 WL 12637955, at *3 (alterations in original) (citation omitted) (quoting *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998)).

Magistrate Judge Early in the Central District of California recognized the undue burden that contention interrogatories can impose on a responding party: "as with any other discovery device, contention interrogatories can, depending upon how they are used, become unduly burdensome and not proportional to the needs of the case under Rule 26(b)(1)." *Heredia*, 2020 WL 12584277, at *5; *see also Campbell*, 2015 WL 3533221, at *5 ("Facebook has not shown how this response is insufficient or how a response to its next interrogatory, which asks Plaintiff to identify 'all facts'

that support this response, is needed to clarify the issues in the case."). Here, Google's interrogatory demands Plaintiffs "describe in ***full and complete detail***" the basis for their contention "Google has or had monopoly power in the alleged market for 'general search services' in the United States." This is overly broad, unduly burdensome, and not proportional.

*Fourth*, Plaintiff objects to this contention interrogatory because it seeks information that is more properly the subject of expert testimony. This interrogatory seeks an early "sneak peek" at the opinions of Plaintiff's experts on the issue of Google's monopoly power—which are scheduled to be disclosed on March 22, 2027 (with expert discovery closing on June 30, 2027). In the recent *Rumble v. Google* case, where Google was represented by both the WilmerHale and Williams & Connolly firms, Magistrate Judge Cisneros explained: "***The parties do not dispute that contention interrogatories during fact discovery which call for expert opinions are improper***, but they 'are not improper to the extent they seek only facts, not how an expert would construe those facts.'" *Rumble v. Google LLC*, No. 21-cv-00229-HSG (LJC), 2024 WL 3225907, at *1 (N.D. Cal. June 28, 2024) (emphasis added) (citing *Amgen Inc. v. Sandoz Inc.*, No. 14-cv-04741-RS (MEJ), 2017 WL 1352052, at *2 (N.D. Cal. Apr. 13, 2017); and *Heredia*, 2020 WL 12584277, at *5). In reaching this decision, the *Rumble* court cited Magistrate Judge Early's holding that "contention interrogatories calling for expert opinions are improper." *Heredia*, 2020 WL 12584277, at *5. The *Heredia* court explained that—like here—"it is not apparent that any portion of the interrogatories can be answered without expert testimony." *Id.* at *7. Through this interrogatory, Google seeks early disclosure of expert opinions by asking Plaintiff to "describe in full and complete detail" the reasons that "Google has or had monopoly power."

In *Klein v. Meta*, Judge Donato refused to compel the plaintiffs to respond to similar contention interrogatories served by the same counsel representing Google here and rejected arguments that the interrogatories were only seeking facts and not expert opinions:

> MR. TERUYA: Yeah. Your Honor, there's also a discovery dispute letter that we raised that is on the agenda as well.
>
> THE COURT: All right. What is the Meta one? Is it Docket 365?

MS. MEHTA: Yes, Your Honor, there's Docket 365. Exactly.

THE COURT: ***That's denied. That's the subject of expert testimony. You can get it later, but not now. So that's for Interrogatory Number 5. That's expert testimony. That will come out in due course. They'll have to answer it, but not right now. It's for experts.***

MS. MEHTA: Your Honor, I just want to clarify --

THE COURT: For 13 and 14, I don't really understand. This looks like expert testimony to me as well.

But what is it you want for 13 and 14?

MS. MEHTA: Yes, Your Honor. So for 13 and 14, we're not asking for their expert opinions, but we are asking for the underlying factual basis.

So if they're saying, as a matter of fact, that something is part of their network or not part of the alleged market, then we'd like that information.

We're not -- in none of these contention interrogatories are we asking for the expert piece of this. Obviously, that will come at the appropriate time. But they are required to provide us with the factual basis for their contentions in this case. The case has been going on for two years.

THE COURT: I don't need -- I know discovery. I want the specifics.

MS. MEHTA: Yes, Your Honor.

THE COURT: What is it are you asking for in 13 and 14?

MS. MEHTA: So --

THE COURT: I don't understand what you're asking for.

MS. MEHTA: Yes, Your Honor. So they have alleged a social network market, and we're asking them to say whether the features or activities that Meta puts out in its products fall within the alleged social network market or not.

They said they couldn't answer that because they didn't know what the features or activities are. We gave them a list and said: Okay, great. Take this list, and could you at least tell us whether that falls within the market or not so that we can proceed with fact discovery understanding what the contours are.

That's what we're asking for. Yes or no for the features that we've given them.

MR. TERUYA: Your Honor, as to that interrogatory, those interrogatories --

THE COURT: This is just 13 and 14.

MR. TERUYA: Yes, as to 13 and 14.

If it's helpful to the Court, we could hand up the list that Ms. Mehta referred to just now that expands the interrogatory and makes it even more complicated.

They sent us a list of the features they'd like us to say that are in or out of the market. There's 320 of them.

They're very granular things that --

THE COURT: What are they? What are some examples?

MR. TERUYA: Like oEmbed; comments plug-in; embedded videos plug-in; conversions; API; app events via Facebook SDK. And the list goes on.

So there's 320 of those that they had given in a different case, and then they added 25 more on. This is after all the briefing is completed.

This is, as I think the Court's earlier questions reflect, very technical and complicated. I think it's -- we don't really understand what's the legal relevance of the question as it's articulated. It's hard to understand.

***But regardless, this is certainly expert and contention discovery. I mean, it requires a definition of the market, first, and then figuring out what products are in it and then, beyond that, what features are in it. We don't think that makes a lot of sense.***

THE COURT: ***I agree with that.*** Same ruling for 5, 13, and 14. I will defer --

MS. MEHTA: And 14 is mooted, Your Honor, because they've withdrawn their social media -- their alleged social media market. So 14 is --

THE COURT: Okay. I'm just going to use what I have. You all work out the nuances.

MS. MEHTA: Understood.

THE COURT: Okay?

All right. Interrogatories 9 and 12. The first one, with respect to which firms would have entered or been more competitive in each alleged market, that's perfectly fair in an exclusionary conduct case.

I don't get the rest of them.

MS. MEHTA: Your Honor, with respect to 12, one of their theories is that the way that Meta acquired the alleged monopoly was through material misstatements or omissions with respect to privacy. That's their theory.

So we'd like to understand their theory, and that's what Interrogatory Number 12 is asking for, the factual basis for their contentions.

> MR. TERUYA: ***Your Honor, 9 through 12 are very similar in structure. They're basically asking about the but-for world, what would have happened in a world where certain conduct were different.***
>
> ***We think that's quintessential contention and expert discovery in the sense that it's not asking questions about facts that happened in the real world; it's asking about what would have happened.*** You know, that's going to be the subject of expert testimony. Your Honor I'm sure is very familiar with the kinds of expert testimony that will go to that. And trying to put that together now is very premature.
>
> THE COURT: When is your expert report going to be --
>
> MR. TERUYA: Sorry?
>
> THE COURT: What is the expert deadline?
>
> MS. MEHTA: Yes, Your Honor. So merits expert disclosures are in January of 2024, and fact discovery closes this June.
>
> MR. TERUYA: And there's an expert report in connection with class certification.
>
> THE COURT: Oh, there's class in between. Okay.
>
> MS. MEHTA: But even that happens after the close of fact discovery.
>
> THE COURT: Not "even"; always in my courtroom.
>
> But I forgot. I was wondering why it was January, but we have the class thing in between.
>
> ***Okay. Those are all expert testimonies also. Those are all denied pending expert testimony.***
>
> Okay. Is there anything else?

Jan. 19, 2023 Hr'g Tr. at 38:8-42:24, *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-8570-JD, Dkt. No. 431 (N.D. Cal) (emphases added).

Interrogatory No. 5 in the *Klein* case—which Judge Donato characterized as "the subject of expert testimony" when denying the defendant's motion to compel—is essentially the same as the interrogatory that Google's counsel served here:

> ***If You contend that Facebook has monopoly power in any alleged relevant product market during the Relevant Time Period, describe in detail the evidentiary basis for your contention (including all documents or witnesses that support your contention),*** including, without limitation, Facebook's market share in each relevant product market at all times in the Relevant Time Period, how the shares were

> calculated, and any analyses or sources upon which You base your share calculations. To the extent you intend to rely on expert testimony to support your contention, your response should so state; but your response must include all facts You are presently aware of that support your contention.

Ex. A to Disc. Letter Br. at 6-7, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-1 (N.D. Cal. Oct. 19, 2022) (emphasis added).

To the extent relevant, Plaintiff reproduces the other contention interrogatories at issue in the *Klein* case here:

- Interrogatory No. 9 asked: "For each statement or omission You identified in Your response to Interrogatory No. 6, identify which firms would have entered or exerted increased competitive pressure in the alleged Social Media Market or alleged Social Network Market but did not because of (in full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." Ex. C to Disc. Letter Br. at 4, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-3 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 12 asked: "For each statement or omission You identified in Your response to Interrogatory No. 6, describe in full and complete detail each change in 'application quality,' User Complaint ¶ 226, that Meta and any other firms identified in Your responses to Interrogatory Nos. 1, 2, and 9 would have made in the alleged Social Media Market or alleged Social Network Market but did not because of (in full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." *Id.* at 5.

- Interrogatory No. 13 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Network Market,' state whether the feature or activity is or is not within your alleged 'Social Network Market.'" *Id.*

- Interrogatory No. 14 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Media Market,' state whether the feature or activity is or is not within your alleged 'Social Media Market.'" *Id*.

Like the contention interrogatories rejected by Judge Donato in *Klein* (and specifically Interrogatory No. 5), this contention interrogatory seeks a "sneak peek" and attempts to require Plaintiffs to provide early expert disclosures on issues relating to Google's monopoly power, and is therefore objectionable. Plaintiffs will make expert disclosures and provide expert reports pursuant to the schedule for expert discovery set by the Court.

*Fifth*, Plaintiff further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, common interest privilege, or work product doctrine, or that is otherwise privileged or protected from discovery. Plaintiff further objects to this interrogatory to the extent it seeks information that calls for an ultimate legal conclusion.

*Sixth*, Plaintiff objects to this interrogatory as disproportionate and unduly burdensome insofar as it would require Plaintiff to, among other things, identify evidence and repeat detailed findings by Judge Mehta that are publicly available from the DOJ search case or included in Google's re-production of materials from that case. As Plaintiffs explained in their Third Amended Complaint and in briefing on various motions, this case builds on the multi-year antitrust litigation brought by the United States Department of Justice and multiple states alleging that Google violated Section 2 of the Sherman Act through anticompetitive and illegal conduct in, among other things, the market for general search services where Google had monopoly power. While Plaintiffs are seeking additional discovery regarding Google's "monopoly power in the alleged market for 'general search services,'" Judge Mehta held a multi-month bench trial and issued liability and remedies opinions spanning hundreds of pages. *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024); *United States v. Google LLC*, 803 F. Supp. 3d 18 (D.D.C. 2025); *United States v. Google LLC*, No. 20-cv-3010 (APM), 2025 WL 3496448, at *1 (D.D.C. Dec. 5, 2025). In his liability opinion, Judge Mehta found the DOJ and states had "easily establishe[d] Google's monopoly power in search" because, for example, "Google makes product changes [to its search product] without concern that its users might go elsewhere," "Google enjoys an 89.2% share of the market for general search services," and there are "significant barriers that protect Google's market dominance in general search" including "high capital costs," "Google's near-complete control of the most efficient search distribution channels," "entrenched buyer preferences," and Google's efforts to "[s]ecur[e] users to generate scale, in order to then exploit the benefits of scale." *Google*, 747 F. Supp. 3d 1 at 118-21. Thus, this is not a case where the defendant can claim lack of clarity regarding its alleged monopoly power. Requiring Plaintiffs to repeat evidence and findings from that case in this interrogatory response, especially given that fact discovery is otherwise ongoing and expert

discovery will not occur until next year, serves no proper purpose and its therefore both disproportionate and unduly burdensome.

*Seventh*, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least three sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least three sub-parts here that count as individual interrogatories:

> If You contend that Google has or had monopoly power in the alleged market for "general search services" in the United States, as alleged in TAC ¶¶ 116-132, describe in full and complete detail the basis for Your contention, including without limitation [1] the date(s) on which You contend Google obtained a monopoly in said market; [2] if ever, the dates on which You contend Google's monopoly in said market ended and the reasons therefor; and [3] the reasons that Google supposedly has or had a monopoly.

Plaintiff therefore objects to this interrogatory on the grounds that it exceeds the 25 written interrogatory limit set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure. As explained above, Google's 25th interrogatory was the fourth sub-part to Interrogatory No. 10.

**INTERROGATORY NO. 15:**

If You contend that all content, features, and information displayed on Google's search engine results page in response to a user query—including, without limitation, organic links, general search text advertisements, product listing advertisements or other paid advertisements, AI Overviews and AI Mode outputs, vertical offerings, or any other content described in TAC ¶¶ 39-40, 43-49—are part of the product offered by Google in the alleged "general search services" market, describe in full and complete detail the basis for Your contention. If You do not so contend, identify

each piece of content, feature, or information displayed on Google's search engine results page in response to a user query that You contend is not part of the product offered in the alleged relevant market, and describe in full and complete detail the basis for Your contention.

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff objects to this interrogatory on multiple grounds.

*First*, Plaintiff objects to this interrogatory as a premature contention interrogatory. Fact discovery is currently scheduled to close on February 5, 2027 and the Court has ordered document production to be substantially complete by October 16, 2026. Google has been slowly producing the materials from the DOJ Search case, taking more than six months to produce materials that Judge Lin indicated should be produced quickly (suggested production by March 2026). Google has also delayed producing additional documents sought by Plaintiffs in *this* case, including for the period after productions in the DOJ search case. The parties are now negotiating search terms (after Magistrate Judge Kim resolved the parties' disputes regarding custodians) and Google's production of additional "go get" documents. The parties are also currently engaged in third-party discovery, and many of those third parties have not yet produced documents to either side. Plaintiffs anticipate depositions in the coming months based on the schedule set by Judge Lin.

This objection is consistent with the position taken by Google's counsel in other litigation. For example, Williams & Connolly successfully objected to contention interrogatories served in another case at an "early stage of discovery," with that court explaining that "Courts 'will look with considerable skepticism at sets of interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading.' ***This is particularly the case when the operative complaint is not facially deficient and 'presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories*** ....'" *Ritchie v. Sempra Energy*, No. 10cv1513-CAB(KSC), 2014 WL 12637955, at *3 (S.D. Cal. Aug. 4, 2014) (alteration in original) (emphasis added) (citation omitted) (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 335-39 (N.D. Cal. 1985)). In *Ritchie*, the district court agreed with the attorneys representing Google in this case that, "[u]nder these circumstances, ordering plaintiff to

provide more complete responses to Interrogatory Nos. 6 and 7, as written, would be overly burdensome and serve no useful purpose as it would not be helpful in clarifying the issues or narrowing the scope of the parties' dispute at this point in the litigation." *Id.* at *4. The same is true for this interrogatory.

In an antitrust case against eBay, then-Magistrate Judge Seeborg recognized that "courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete. One court in this district expressed its considerable skepticism about the use of contention interrogatories at the early stages of discovery and fashioned four guidelines under which to assess the propriety of such discovery requests." *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) (citations omitted) (citing *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992); and *In re Convergent*, 108 F.R.D. at 332-38). Judge Seeborg explained that "[a]pplying those guidelines here, as well as the limits set forth in Rule 26, eBay's contention interrogatories are premature at this stage of discovery." *Id.* at *2. In reaching this conclusion, Judge Seeborg observed that "***eBay's contention interrogatories seek answers to two of the major issues in the case: market definition and damages. It is not apparent how these broad interrogatories, particularly those that track plaintiffs' complaint, will serve to clarify the issues or narrow the scope of the litigation at this juncture.***" *Id*. (emphasis added). Judge Seeborg's guidance is especially apt here, where Google's contention interrogatory, although confusing, appears to be focused on the issue of market definition.

Similarly, Magistrate Judge James rejected contention interrogatories served by Defendant Facebook in a case pending in this District, explaining: "Nor has Facebook shown how responding to any of its other interrogatories before substantial discovery has been conducted will contribute meaningfully to clarifying the issues in the case or narrowing the scope of the dispute." *Campbell v. Facebook Inc.*, No. 13-cv-05996-PJH (MEJ), 2015 WL 3533221, at *5 (N.D. Cal. June 3, 2015). The court noted that "Facebook provides no argument or support that the information sought would help set up early settlement discussions or that such answers are likely to expose a substantial basis for a Rule 11 or Rule 56 motion." *Id*. The *Campbell* court also rejected contention interrogatories

relating to class certification, explaining that Facebook had better access to relevant information and that the contention interrogatory was "no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion":

> While Facebook's last interrogatory to Plaintiff Shadpour appears to seek information to expose a basis for opposing class certification under Rule 23 by requesting that Plaintiff "identify all facts that support ... that this ACTION is appropriate for class treatment," Jt. Ltr., Ex. C, Facebook does not show how it needs this information at this time, when substantial discovery is yet to be conducted. ***Such an interrogatory strikes the Court as no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion.*** In considering this interrogatory, the Court also finds significant *In re Convergent*'s concern over which party has better access to the information the propounding party seeks. ***The same is true of Facebook's interrogatory asking Plaintiff Shadpour to identify all facts that support that this action is appropriate for class treatment: Facebook seemingly would be in a better position to know what facts about its practices are common, etc., among proposed class members.*** In any case, as with the other interrogatories, the Court finds this interrogatory premature at this time.

*Id.* (alteration in original) (emphases added) (citations omitted) (citing *In re Convergent*, 108 F.R.D. at 338-39); *see also In re Convergent*, 108 F.R.D. at 349 ("It is not obvious why plaintiffs would have better access than defendants to evidence about how the information Convergent made public got into the market place. Convergent presumably knows what information it published and through which channels. Convergent thus would seem to be in a better position than plaintiffs to begin examining how, and to what extent, that information penetrated the marketplace.").

*Second*, Plaintiff objects to this interrogatory because Google cannot meet its burden to justify serving contention interrogatories at this early stage: "As a general rule, a party moving to compel responses to contention interrogatories at an early stage in litigation must show the responses would 'contribute meaningfully' to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56." *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS (JDEx), 2020 WL 12584277, at *5 (C.D. Cal. July 20, 2020) (citing *In re Convergent*, 108 F.R.D. at 337). The *Heredia* court explained:

> To meet this burden, a party seeking early answers must present "specific, plausible grounds for believing that securing early answers to its contention questions will

> materially advance the goals of the Federal Rules of Civil Procedure." ***In assessing whether a defendant has met that burden, "if a complaint presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories, an attempt to justify early use of contention interrogatories on the ground that answers would clarify the issues would not be especially persuasive.***" Similarly, courts also consider the parties' respective access to information: ***"at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail."***

*Id.* (alteration in original) (emphases added) (citations omitted). Here, there can be no dispute that Plaintiffs' Third Amended Complaint provides "a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories" and that Google has "access to most of the evidence about [its] own behavior." Judge Lin already considered and rejected Google's attacks on the adequacy of Plaintiffs' operative complaint. *See* Dkt. 66 at 2, 6. Thus, "it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail." *Heredia*, 2020 WL 12584277, at *5 (alteration in original).

In the *Campbell v. Facebook* case, Magistrate Judge James similarly recognized that a party seeking to use contention interrogatories before the completion of substantial documentary or testimonial discovery has a "burden of justification" that cannot be met "by vague or speculative statements about what might happen if the interrogatories were answered":

> Consequently, courts in this district have placed "a burden of justification" on a party who seeks answers to contention interrogatories before substantial documentary or testimonial discovery has been completed. ***"[S]uch a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56."*** "A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered." "Rather, ***the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure***." In the case where a defendant seeks responses to early contention interrogatories from a plaintiff, ***courts should be "especially vigilant" in evaluating the proffered justifications when the plaintiff's complaint is not 'facially infirm' and***

> ***the defendant appears to have control over or adequate access to much of the evidence relevant to its alleged misconduct***.

2015 WL 3533221, at *4 (alterations in original) (emphases added) (citations omitted) (citing *In re Convergent*, 108 F.R.D. at 338-39; *In re Wells Fargo Residential Mortg. Lending Discrimination Litig.*, No. C 08-1930 MMC (JL), 2009 WL 1771368, at *6 (N.D. Cal. June 19, 2009); and *United States v. Bazaarvoice, Inc.*, No. C 13-00133 EMC (LB), 2013 WL 1739472, at *3 (N.D. Cal. Apr. 22, 2013)). Like the complaint in *Campbell*, the Plaintiffs' Third Amended Complaint "is not the sort of 'infirm' complaint warned of in *In re Convergent.* It contains detailed factual allegations about the conduct Plaintiffs challenge as unlawful, and—from the Court's review—contains allegations that address Facebook's concern above." *Id*. The other stated purposes for early contention interrogatories are also not met here.

*Third*, in addition to its prematurity, Plaintiff objects to this contention interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case. As Judge Seeborg recognized, "pursuant to Rule 26, ***because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face***." *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2 (emphasis added). Similarly, Magistrate Judge Crawford in the Southern District of California accepted the argument advanced by one of the law firms representing Google in this case that "'contention interrogatories 'should not require the answering party to provide a narrative account of its case.' Courts 'will generally find [contention interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' [or 'all facts'] which support[] identified allegations or defenses.'" *Ritchie*, 2014 WL 12637955, at *3 (alterations in original) (citation omitted) (quoting *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998)).

Magistrate Judge Early in the Central District of California recognized the undue burden that contention interrogatories can impose on a responding party: "as with any other discovery device, contention interrogatories can, depending upon how they are used, become unduly burdensome and not proportional to the needs of the case under Rule 26(b)(1)." *Heredia*, 2020 WL 12584277, at *5; *see also Campbell*, 2015 WL 3533221, at *5 ("Facebook has not shown how this response is

insufficient or how a response to its next interrogatory, which asks Plaintiff to identify 'all facts' that support this response, is needed to clarify the issues in the case."). Here, Google's interrogatory demands Plaintiffs "describe in ***full and complete detail***" the basis for any contention "all content, features, and information displayed on Google's search engine results page in response to a user query—including, without limitation, organic links, general search text advertisements, product listing advertisements or other paid advertisements, AI Overviews and AI Mode outputs, vertical offerings, or any other content described in TAC ¶¶ 39-40, 43-49—are part of the product offered by Google in the alleged 'general search services.'"

*Fourth*, Plaintiff objects to this contention interrogatory because it seeks information that is more properly the subject of expert testimony. This interrogatory seeks an early "sneak peek" at the opinions of Plaintiff's experts on the issue of market definition—which are scheduled to be disclosed on March 22, 2027 (with expert discovery closing on June 30, 2027). In the recent *Rumble v. Google* case, where Google was represented by both the WilmerHale and Williams & Connolly firms, Magistrate Judge Cisneros explained: "***The parties do not dispute that contention interrogatories during fact discovery which call for expert opinions are improper***, but they 'are not improper to the extent they seek only facts, not how an expert would construe those facts.'" *Rumble v. Google LLC*, No. 21-cv-00229-HSG (LJC), 2024 WL 3225907, at *1 (N.D. Cal. June 28, 2024) (emphasis added) (citing *Amgen Inc. v. Sandoz Inc.*, No. 14-cv-04741-RS (MEJ), 2017 WL 1352052, at *2 (N.D. Cal. Apr. 13, 2017); and *Heredia*, 2020 WL 12584277, at *5). In reaching this decision, the *Rumble* court cited Magistrate Judge Early's holding that "contention interrogatories calling for expert opinions are improper." *Heredia*, 2020 WL 12584277, at *5. The *Heredia* court explained that—like here—"it is not apparent that any portion of the interrogatories can be answered without expert testimony." *Id.* at *7. Through this interrogatory, Google seeks early disclosure of expert opinions on topics such as what features are part of a relevant antitrust market.

In *Klein v. Meta*, Judge Donato refused to compel the plaintiffs to respond to similar contention interrogatories served by the same counsel representing Google here and rejected arguments that the interrogatories were only seeking facts and not expert opinions:

MR. TERUYA: Yeah. Your Honor, there's also a discovery dispute letter that we raised that is on the agenda as well.

THE COURT: All right. What is the Meta one? Is it Docket 365?

MS. MEHTA: Yes, Your Honor, there's Docket 365. Exactly.

THE COURT: ***That's denied. That's the subject of expert testimony. You can get it later, but not now. So that's for Interrogatory Number 5. That's expert testimony. That will come out in due course. They'll have to answer it, but not right now. It's for experts.***

MS. MEHTA: Your Honor, I just want to clarify --

THE COURT: For 13 and 14, I don't really understand. This looks like expert testimony to me as well.

But what is it you want for 13 and 14?

MS. MEHTA: Yes, Your Honor. So for 13 and 14, we're not asking for their expert opinions, but we are asking for the underlying factual basis.

So if they're saying, as a matter of fact, that something is part of their network or not part of the alleged market, then we'd like that information.

We're not -- in none of these contention interrogatories are we asking for the expert piece of this. Obviously, that will come at the appropriate time. But they are required to provide us with the factual basis for their contentions in this case. The case has been going on for two years.

THE COURT: I don't need -- I know discovery. I want the specifics.

MS. MEHTA: Yes, Your Honor.

***THE COURT: What is it are you asking for in 13 and 14?***

***MS. MEHTA: So --***

***THE COURT: I don't understand what you're asking for.***

***MS. MEHTA: Yes, Your Honor. So they have alleged a social network market, and we're asking them to say whether the features or activities that Meta puts out in its products fall within the alleged social network market or not.***

***They said they couldn't answer that because they didn't know what the features or activities are. We gave them a list and said: Okay, great. Take this list, and could you at least tell us whether that falls within the market or not so that we can proceed with fact discovery understanding what the contours are.***

***That's what we're asking for. Yes or no for the features that we've given them.***

MR. TERUYA: Your Honor, as to that interrogatory, those interrogatories --

THE COURT: This is just 13 and 14.

MR. TERUYA: Yes, as to 13 and 14.

If it's helpful to the Court, we could hand up the list that Ms. Mehta referred to just now that expands the interrogatory and makes it even more complicated.

They sent us a list of the features they'd like us to say that are in or out of the market. There's 320 of them.

They're very granular things that --

THE COURT: What are they? What are some examples?

MR. TERUYA: Like oEmbed; comments plug-in; embedded videos plug-in; conversions; API; app events via Facebook SDK. And the list goes on.

So there's 320 of those that they had given in a different case, and then they added 25 more on. This is after all the briefing is completed.

This is, as I think the Court's earlier questions reflect, very technical and complicated. I think it's -- we don't really understand what's the legal relevance of the question as it's articulated. It's hard to understand.

***But regardless, this is certainly expert and contention discovery. I mean, it requires a definition of the market, first, and then figuring out what products are in it and then, beyond that, what features are in it. We don't think that makes a lot of sense.***

THE COURT: ***I agree with that.*** Same ruling for 5, 13, and 14. I will defer --

MS. MEHTA: And 14 is mooted, Your Honor, because they've withdrawn their social media -- their alleged social media market. So 14 is --

THE COURT: Okay. I'm just going to use what I have. You all work out the nuances.

MS. MEHTA: Understood.

THE COURT: Okay?

All right. Interrogatories 9 and 12. The first one, with respect to which firms would have entered or been more competitive in each alleged market, that's perfectly fair in an exclusionary conduct case.

I don't get the rest of them.

MS. MEHTA: Your Honor, with respect to 12, one of their theories is that the way that Meta acquired the alleged monopoly was through material misstatements or omissions with respect to privacy. That's their theory.

> So we'd like to understand their theory, and that's what Interrogatory Number 12 is asking for, the factual basis for their contentions.
>
> MR. TERUYA: Your Honor, 9 through 12 are very similar in structure. They're basically asking about the but-for world, what would have happened in a world where certain conduct were different.
>
> We think that's quintessential contention and expert discovery in the sense that it's not asking questions about facts that happened in the real world; it's asking about what would have happened. You know, that's going to be the subject of expert testimony. Your Honor I'm sure is very familiar with the kinds of expert testimony that will go to that. And trying to put that together now is very premature.
>
> THE COURT: When is your expert report going to be --
>
> MR. TERUYA: Sorry?
>
> THE COURT: What is the expert deadline?
>
> MS. MEHTA: Yes, Your Honor. So merits expert disclosures are in January of 2024, and fact discovery closes this June.
>
> MR. TERUYA: And there's an expert report in connection with class certification.
>
> THE COURT: Oh, there's class in between. Okay.
>
> MS. MEHTA: But even that happens after the close of fact discovery.
>
> THE COURT: Not "even"; always in my courtroom.
>
> But I forgot. I was wondering why it was January, but we have the class thing in between.
>
> ***Okay. Those are all expert testimonies also. Those are all denied pending expert testimony.***
>
> Okay. Is there anything else?

Jan. 19, 2023 Hr'g Tr. at 38:8-42:24, *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-8570-JD, Dkt. No. 431 (N.D. Cal) (emphases added).

Google's interrogatory seems to be a carbon copy of those contention interrogatories that Judge Donato rejected as being the subject of expert testimony:

- Interrogatory No. 13 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Network Market,' state whether the feature or activity is or is not within your alleged 'Social Network Market.'" Ex. C to Disc. Letter Br. at 5, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-3 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 14 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Media Market,' state whether the feature or activity is or is not within your alleged 'Social Media Market.'" *Id*. In rejecting the defendant's motion to compel, Judge Donato agreed with the *Klein* plaintiffs that this interrogatory "***requires a definition of the market, first, and then figuring out what products are in it and then, beyond that, what features are in it. We don't think that makes a lot of sense.***" Jan. 19, 2023 Hr'g Tr. at 40:23-41:1, *Klein*, Dkt. No. 431 (emphasis added).

To the extent relevant, Plaintiff reproduces the other interrogatories at issue in the *Klein* case here:

- Interrogatory No. 5 in the *Klein* case stated: "If You contend that Facebook has monopoly power in any alleged relevant product market during the Relevant Time Period, describe in detail the evidentiary basis for your contention (including all documents or witnesses that support your contention), including, without limitation, Facebook's market share in each relevant product market at all times in the Relevant Time Period, how the shares were calculated, and any analyses or sources upon which You base your share calculations. To the extent you intend to rely on expert testimony to support your contention, your response should so state; but your response must include all facts You are presently aware of that support your contention." Ex. A to Disc. Letter Br. at 6-7, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-1 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 9 asked: "For each statement or omission You identified in Your response to Interrogatory No. 6, identify which firms would have entered or exerted increased competitive pressure in the alleged Social Media Market or alleged Social Network Market but did not because of (in full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." Ex. C to Disc. Letter Br. at 4, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-3 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 12 asked: "For each statement or omission You identified in Your response to Interrogatory No. 6, describe in full and complete detail each change in 'application quality,' User Complaint ¶ 226, that Meta and any other firms identified in Your responses to Interrogatory Nos. 1, 2, and 9 would have made in the alleged Social Media Market or alleged Social Network Market but did not because of (in full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." *Id.* at 5.

*Fifth*, Plaintiff further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, common interest privilege, or work product doctrine, or that is otherwise privileged or protected from discovery. Plaintiff further objects to this interrogatory to the extent it seeks information that calls for an ultimate legal conclusion.

*Sixth*, as Plaintiffs explained in their Third Amended Complaint and in briefing on various motions, this case builds on the multi-year antitrust litigation brought by the United States Department of Justice and multiple states alleging that Google violated Section 2 of the Sherman Act through anticompetitive and illegal conduct in, among other things, the market for general search services. While Plaintiffs are seeking additional discovery regarding the market definition of general search services, Judge Mehta held a multi-month bench trial and issued liability and remedies opinions spanning hundreds of pages. *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024); *United States v. Google LLC*, 803 F. Supp. 3d 18 (D.D.C. 2025). One of the focuses of that governmental antitrust action was successfully establishing "that general search services is a relevant product market and alternative sources for query information, like SVPs [Specialized Vertical Providers] and social media sites, are not adequate substitutes." *United States v. Google LLC*, 747 F. Supp. 3d 1, 109-10 (D.D.C. 2024). In reaching this decision, Judge Mehta found that "Google itself recognizes general search services as a distinct product and separate market." *Id.* at 112. Further, Judge Mehta noted that the "product delivered to consumers on a GSE differs significantly from what is produced by an SVP" because a query entered into a GSE results in a "search engine results page," which include "advertisements" and in some cases "vertical offerings." *Id.* at 110-11. Thus, this is not a case where the defendant can claim lack of clarity regarding these issues. Requiring Plaintiffs to repeat evidence and findings from that case in this interrogatory response, especially given that fact discovery is otherwise ongoing and expert discovery will not occur until next year, serves no proper purpose and its therefore both disproportionate and unduly burdensome.

*Seventh*, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least six sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has

decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least six sub-parts here that count as individual interrogatories:

> If You contend that all content, features, and information displayed on Google's search engine results page in response to a user query—including, without limitation, [1] organic links, [2] general search text advertisements, [3] product listing advertisements or other paid advertisements, [4] AI Overviews and AI Mode outputs, [5] vertical offerings, or [6] any other content described in TAC ¶¶ 39-40, 43-49—are part of the product offered by Google in the alleged "general search services" market, describe in full and complete detail the basis for Your contention. If You do not so contend, identify each piece of content, feature, or information displayed on Google's search engine results page in response to a user query that You contend is not part of the product offered in the alleged relevant market, and describe in full and complete detail the basis for Your contention.

Plaintiff therefore objects to this interrogatory on the grounds that it exceeds the 25 written interrogatory limit set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure. As explained above, Google's 25th interrogatory was the fourth sub-part to Interrogatory No. 10.

**INTERROGATORY NO. 16:**

Identify each statement or omission made by Google that You challenge as misleading, deceptive, or false with respect to Google's collection, retention, storage, use, sharing, monetization, or deletion of user data, as alleged in the TAC, including but not limited to the statements, omissions, disclosures, and privacy assurances referenced in the TAC, and including by identifying the speaker of each statement and when and where each statement was made.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff objects to this interrogatory on multiple grounds.

*First*, Plaintiff objects to this interrogatory as a premature contention interrogatory. Fact discovery is currently scheduled to close on February 5, 2027 and the Court has ordered document production to be substantially complete by October 16, 2026. Google been slowly producing the materials from the DOJ search case, taking more than six months to produce materials that Judge Lin indicated should be produced quickly (suggested production by March 2026). Google has also

delayed producing additional documents sought by Plaintiffs in *this* case, including for the period after productions in the DOJ search case. The parties have been negotiating search terms (after Magistrate Judge Kim resolved the parties' disputes regarding custodians) and also Google's production of additional "go get" documents. The parties are also currently engaged in third-party discovery, and many of those third parties have not yet produced documents to either side. Plaintiffs anticipate depositions in the coming months based on the schedule set by Judge Lin.

This objection is consistent with the position taken by Google's counsel in other litigation. For example, Williams & Connolly successfully objected to contention interrogatories served in another case at an "early stage of discovery," with that court explaining that "Courts 'will look with considerable skepticism at sets of interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading.' ***This is particularly the case when the operative complaint is not facially deficient and 'presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories*** ....'" *Ritchie v. Sempra Energy*, No. 10CV1513-CAB(KSC), 2014 WL 12637955, at *3 (S.D. Cal. Aug. 4, 2014) (alteration in original) (emphasis added) (citation omitted) (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 335-39 (N.D. Cal. 1985)). In *Ritchie*, the district court agreed with the attorneys representing Google in this case that, "[u]nder these circumstances, ordering plaintiff to provide more complete responses to Interrogatory Nos. 6 and 7, as written, would be overly burdensome and serve no useful purpose as it would not be helpful in clarifying the issues or narrowing the scope of the parties' dispute at this point in the litigation." *Id.* at *4. The same is true in this case with this interrogatory.

In an antitrust case against eBay, then-Magistrate Judge Seeborg recognized that "courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete. One court in this district expressed its considerable skepticism about the use of contention interrogatories at the early stages of discovery and fashioned four guidelines under which to assess the propriety of such discovery requests." *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) (citations

omitted) (citing *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992); and *In re Convergent*, 108 F.R.D. at 332-38). Judge Seeborg explained that "[a]pplying those guidelines here, as well as the limits set forth in Rule 26, eBay's contention interrogatories are premature at this stage of discovery." *Id.* at *2. Judge Seeborg's guidance is also instructive here.

Similarly, Magistrate Judge James rejected contention interrogatories served by Defendant Facebook in a case pending in this District, explaining: "Nor has Facebook shown how responding to any of its other interrogatories before substantial discovery has been conducted will contribute meaningfully to clarifying the issues in the case or narrowing the scope of the dispute." *Campbell v. Facebook Inc.*, No. 13-cv-05996-PJH (MEJ), 2015 WL 3533221, at *5 (N.D. Cal. June 3, 2015). The court noted that "Facebook provides no argument or support that the information sought would help set up early settlement discussions or that such answers are likely to expose a substantial basis for a Rule 11 or Rule 56 motion." *Id.* The *Campbell* court also rejected contention interrogatories relating to class certification, explaining that Facebook had better access to relevant information and that the contention interrogatory was "no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion":

> While Facebook's last interrogatory to Plaintiff Shadpour appears to seek information to expose a basis for opposing class certification under Rule 23 by requesting that Plaintiff "identify all facts that support ... that this ACTION is appropriate for class treatment," Jt. Ltr., Ex. C, Facebook does not show how it needs this information at this time, when substantial discovery is yet to be conducted. ***Such an interrogatory strikes the Court as no more than a thinly veiled attempt to sneak preview Plaintiffs' class certification motion.*** In considering this interrogatory, the Court also finds significant *In re Convergent*'s concern over which party has better access to the information the propounding party seeks. ***The same is true of Facebook's interrogatory asking Plaintiff Shadpour to identify all facts that support that this action is appropriate for class treatment: Facebook seemingly would be in a better position to know what facts about its practices are common, etc., among proposed class members.*** In any case, as with the other interrogatories, the Court finds this interrogatory premature at this time.

*Id.* (alteration in original) (emphases added) (citations omitted) (citing *In re Convergent*, 108 F.R.D. at 338-39); *see also In re Convergent*, 108 F.R.D. at 349 ("It is not obvious why plaintiffs would have better access than defendants to evidence about how the information Convergent made public

got into the market place. Convergent presumably knows what information it published and through which channels. Convergent thus would seem to be in a better position than plaintiffs to begin examining how, and to what extent, that information penetrated the marketplace.").

*Second*, Plaintiff objects to this interrogatory because Google cannot meet its burden to justify serving contention interrogatories at this early stage: "As a general rule, a party moving to compel responses to contention interrogatories at an early stage in litigation must show the responses would 'contribute meaningfully' to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56." *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS (JDEx), 2020 WL 12584277, at *5 (C.D. Cal. July 20, 2020) (citing *In re Convergent*, 108 F.R.D. at 337). The *Heredia* court explained:

> To meet this burden, a party seeking early answers must present "specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." ***In assessing whether a defendant has met that burden, "if a complaint presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories, an attempt to justify early use of contention interrogatories on the ground that answers would clarify the issues would not be especially persuasive.*** " Similarly, courts also consider the parties' respective access to information: ***"at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail."***

*Id.* (alteration in original) (emphases added) (citations omitted). Here, there can be no dispute that Plaintiffs' Third Amended Complaint provides "a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories" and that Google has "access to most of the evidence about [its] own behavior." Judge Lin already considered and rejected Google's attacks on the adequacy of Plaintiffs' operative complaint. *See* Dkt. 66 at 2, 6. Thus, "it is not at all clear that forcing plaintiffs to answer [contention interrogatories], early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail." *Heredia*, 2020 WL 12584277, at *5 (alteration in original).

In the *Campbell v. Facebook* case, Magistrate Judge James similarly recognized that a party seeking to use contention interrogatories before the completion of substantial documentary or testimonial discovery has a "burden of justification" that cannot be met "by vague or speculative statements about what might happen if the interrogatories were answered":

> Consequently, courts in this district have placed "a burden of justification" on a party who seeks answers to contention interrogatories before substantial documentary or testimonial discovery has been completed. ***"[S]uch a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56."*** "A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered." "Rather, ***the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure***." In the case where a defendant seeks responses to early contention interrogatories from a plaintiff, ***courts should be "especially vigilant" in evaluating the proffered justifications when the plaintiff's complaint is not 'facially infirm' and the defendant appears to have control over or adequate access to much of the evidence relevant to its alleged misconduct***.

2015 WL 3533221, at *4 (alterations in original) (emphases added) (citations omitted) (citing *In re Convergent*, 108 F.R.D. at 338-39; *In re Wells Fargo Residential Mortg. Lending Discrimination Litig.*, No. C 08-1930 MMC (JL), 2009 WL 1771368, at *6 (N.D. Cal. June 19, 2009); and *United States v. Bazaarvoice, Inc.*, No. C 13-00133 EMC (LB), 2013 WL 1739472, at *3 (N.D. Cal. Apr. 22, 2013)). Like the complaint in *Campbell*, Plaintiffs' Third Amended Complaint "is not the sort of 'infirm' complaint warned of in *In re Convergent.* It contains detailed factual allegations about the conduct Plaintiffs challenge as unlawful, and—from the Court's review—contains allegations that address Facebook's concern above." *Id.* The other stated purposes for early contention interrogatories are also not met here.

*Third*, in addition to its prematurity, Plaintiff objects to this contention interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case. As Judge Seeborg recognized, "pursuant to Rule 26, ***because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their***

***face***." *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2 (emphasis added). Similarly, Magistrate Judge Crawford in the Southern District of California accepted the argument advanced by one of the law firms representing Google in this case that "'contention interrogatories 'should not require the answering party to provide a narrative account of its case.' Courts 'will generally find [contention interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' [or 'all facts'] which support[] identified allegations or defenses.'" *Ritchie*, 2014 WL 12637955, at *3 (alterations in original) (citation omitted) (quoting *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998)).

Magistrate Judge Early in the Central District of California recognized the undue burden that contention interrogatories can impose on a responding party: "as with any other discovery device, contention interrogatories can, depending upon how they are used, become unduly burdensome and not proportional to the needs of the case under Rule 26(b)(1)." *Heredia*, 2020 WL 12584277, at *5; *see also Campbell*, 2015 WL 3533221, at *5 ("Facebook has not shown how this response is insufficient or how a response to its next interrogatory, which asks Plaintiff to identify 'all facts' that support this response, is needed to clarify the issues in the case."). Here, Google's interrogatory demands Plaintiffs identify "***each statement or omission*** by Google that You challenge" as well as "the speaker of each statement and when and where each statement was made." This is overly broad, unduly burdensome, and not proportional.

*Fourth*, Plaintiff objects to this contention interrogatory because it seeks information that is more properly the subject of expert testimony—especially to the extent that technical or expert testimony is needed to identify the statements by Google are "misleading, deceptive, or false." In *Klein v. Meta*, Judge Donato refused to compel the plaintiffs to respond to similar contention interrogatories served by the same counsel representing Google here:

> MR. TERUYA: Yeah. Your Honor, there's also a discovery dispute letter that we raised that is on the agenda as well.
>
> THE COURT: All right. What is the Meta one? Is it Docket 365?
>
> MS. MEHTA: Yes, Your Honor, there's Docket 365. Exactly.

THE COURT: That's denied. That's the subject of expert testimony. You can get it later, but not now. So that's for Interrogatory Number 5. That's expert testimony. That will come out in due course. They'll have to answer it, but not right now. It's for experts.

MS. MEHTA: Your Honor, I just want to clarify --

THE COURT: For 13 and 14, I don't really understand. This looks like expert testimony to me as well.

But what is it you want for 13 and 14?

MS. MEHTA: Yes, Your Honor. So for 13 and 14, we're not asking for their expert opinions, but we are asking for the underlying factual basis.

So if they're saying, as a matter of fact, that something is part of their network or not part of the alleged market, then we'd like that information.

We're not -- in none of these contention interrogatories are we asking for the expert piece of this. Obviously, that will come at the appropriate time. But they are required to provide us with the factual basis for their contentions in this case. The case has been going on for two years.

THE COURT: I don't need -- I know discovery. I want the specifics.

MS. MEHTA: Yes, Your Honor.

THE COURT: What is it are you asking for in 13 and 14?

MS. MEHTA: So --

THE COURT: I don't understand what you're asking for.

MS. MEHTA: Yes, Your Honor. So they have alleged a social network market, and we're asking them to say whether the features or activities that Meta puts out in its products fall within the alleged social network market or not.

They said they couldn't answer that because they didn't know what the features or activities are. We gave them a list and said: Okay, great. Take this list, and could you at least tell us whether that falls within the market or not so that we can proceed with fact discovery understanding what the contours are.

That's what we're asking for. Yes or no for the features that we've given them.

MR. TERUYA: Your Honor, as to that interrogatory, those interrogatories --

THE COURT: This is just 13 and 14.

MR. TERUYA: Yes, as to 13 and 14.

If it's helpful to the Court, we could hand up the list that Ms. Mehta referred to just now that expands the interrogatory and makes it even more complicated.

They sent us a list of the features they'd like us to say that are in or out of the market. There's 320 of them.

They're very granular things that --

THE COURT: What are they? What are some examples?

MR. TERUYA: Like oEmbed; comments plug-in; embedded videos plug-in; conversions; API; app events via Facebook SDK. And the list goes on.

So there's 320 of those that they had given in a different case, and then they added 25 more on. This is after all the briefing is completed.

This is, as I think the Court's earlier questions reflect, very technical and complicated. I think it's -- we don't really understand what's the legal relevance of the question as it's articulated. It's hard to understand.

But regardless, this is certainly expert and contention discovery. I mean, it requires a definition of the market, first, and then figuring out what products are in it and then, beyond that, what features are in it. We don't think that makes a lot of sense.

THE COURT: I agree with that. Same ruling for 5, 13, and 14. I will defer --

MS. MEHTA: And 14 is mooted, Your Honor, because they've withdrawn their social media -- their alleged social media market. So 14 is --

THE COURT: Okay. I'm just going to use what I have. You all work out the nuances.

MS. MEHTA: Understood.

THE COURT: Okay?

All right. Interrogatories 9 and 12. The first one, with respect to which firms would have entered or been more competitive in each alleged market, that's perfectly fair in an exclusionary conduct case.

I don't get the rest of them.

MS. MEHTA: Your Honor, with respect to 12, one of their theories is that the way that Meta acquired the alleged monopoly was through material misstatements or omissions with respect to privacy. That's their theory.

So we'd like to understand their theory, and that's what Interrogatory Number 12 is asking for, the factual basis for their contentions.

> MR. TERUYA: ***Your Honor, 9 through 12 are very similar in structure. They're basically asking about the but-for world, what would have happened in a world where certain conduct were different.***
>
> ***We think that's quintessential contention and expert discovery in the sense that it's not asking questions about facts that happened in the real world; it's asking about what would have happened.*** You know, that's going to be the subject of expert testimony. Your Honor I'm sure is very familiar with the kinds of expert testimony that will go to that. And trying to put that together now is very premature.
>
> THE COURT: When is your expert report going to be --
>
> MR. TERUYA: Sorry?
>
> THE COURT: What is the expert deadline?
>
> MS. MEHTA: Yes, Your Honor. So merits expert disclosures are in January of 2024, and fact discovery closes this June.
>
> MR. TERUYA: And there's an expert report in connection with class certification.
>
> THE COURT: Oh, there's class in between. Okay.
>
> MS. MEHTA: But even that happens after the close of fact discovery.
>
> THE COURT: Not "even"; always in my courtroom.
>
> But I forgot. I was wondering why it was January, but we have the class thing in between.
>
> ***Okay. Those are all expert testimonies also. Those are all denied pending expert testimony.***
>
> Okay. Is there anything else?

Jan. 19, 2023 Hr'g Tr. at 38:8-42:24, *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-8570-JD, Dkt. No. 431 (N.D. Cal) (emphases added).

Like here, some of the contention interrogatories served in *Klein* focused on requiring the plaintiffs to identify "each statement or omission" and then providing more information:

- Interrogatory No. 9 asked: "***For each statement or omission You identified*** in Your response to Interrogatory No. 6, identify which firms would have entered or exerted increased competitive pressure in the alleged Social Media Market or alleged Social Network Market but did not because of (in full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." Ex. C to Disc. Letter Br. at 4, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-3 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 12 asked: "For each statement or omission You identified in Your response to Interrogatory No. 6, describe in full and complete detail each change in 'application quality,' User Complaint ¶ 226, that Meta and any other firms identified in Your responses to Interrogatory Nos. 1, 2, and 9 would have made in the alleged Social Media Market or alleged Social Network Market but did not because of (in full or in part) the statement or omission, either alone or in combination with other statements or omissions identified in Your response to Interrogatory No. 6." *Id.* at 5.

To the extent relevant, Plaintiff reproduces the other interrogatories at issue in the *Klein* case here:

- Interrogatory No. 5 in the *Klein* case asked: "If You contend that Facebook has monopoly power in any alleged relevant product market during the Relevant Time Period, describe in detail the evidentiary basis for your contention (including all documents or witnesses that support your contention), including, without limitation, Facebook's market share in each relevant product market at all times in the Relevant Time Period, how the shares were calculated, and any analyses or sources upon which You base your share calculations. To the extent you intend to rely on expert testimony to support your contention, your response should so state; but your response must include all facts You are presently aware of that support your contention." Ex. A to Disc. Letter Br. at 6-7, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-1 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 13 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Network Market,' state whether the feature or activity is or is not within your alleged 'Social Network Market.'" Ex. C to Disc. Letter Br. at 5, *Klein*, No. 3:20-cv-8570-JD, Dkt. No. 365-3 (N.D. Cal. Oct. 19, 2022).

- Interrogatory No. 14 asked: "For each feature or activity available to users on each Meta Product that is a Participant in your alleged 'Social Media Market,' state whether the feature or activity is or is not within your alleged 'Social Media Market.'" *Id*.

*Fifth*, Plaintiff further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, common interest privilege, or work product doctrine, or that is otherwise privileged or protected from discovery. Plaintiff further objects to this interrogatory to the extent it seeks information that calls for an ultimate legal conclusion.

*Sixth*, Plaintiff objects to this interrogatory as disproportionate and unduly burdensome insofar as it would require Plaintiff to identify statements and omissions within Google's possession and cited by Plaintiffs in their Third Amended Complaint (which is referenced in Google's interrogatory). Thus, this is not a case where the defendant can claim lack of clarity regarding the

allegations against it. Requiring Plaintiffs to repeat allegations from the Third Amended Complaint in this interrogatory response, especially given that fact discovery is otherwise ongoing and expert discovery will not occur until next year, serves no proper purpose and its therefore both disproportionate and unduly burdensome.

*Seventh*, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least five sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at five three sub-parts here that count as individual interrogatories:

> For each act by Google that You contend is exclusionary or an exercise of monopoly power and caused antitrust injury to users of Google Search, describe in full and complete detail the basis for Your contention, including by [1] identifying each act; [2] the date or dates of each act; [3] the specific way in which You contend each act harmed competition; [4] any actual or potential competitors You contend were excluded or foreclosed by each act; and [5] how You contend each act caused antitrust injury to Google Search users, including specifically each named Plaintiff.

Plaintiff therefore objects to this interrogatory on the grounds that it exceeds the 25 written interrogatory limit set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure. As explained above, Google's 25th interrogatory was the fourth sub-part to Interrogatory No. 10.

**INTERROGATORY NO. 17:**

For each statement or omission identified in Your response to Interrogatory No. 16, describe in full and complete detail when You heard, read, saw, or obtained personal knowledge of the statement or omission; describe and provide all contemporaneous evidence and facts that establish when You heard, read, saw, or otherwise obtained personal knowledge of the statement or omission;

describe whether and how You relied on the statement or omission in deciding to use Google Search or any other Google product or service, or in taking or refraining from taking any action with respect to Your data or privacy settings; and describe each act You took or refrained from taking in reliance on the statement or omission. If You neither heard, read, saw, nor obtained personal knowledge of the statement or omission, please so state.

**RESPONSE TO INTERROGATORY NO. 17:**

Plaintiff incorporates his objections to Google's Interrogatory No. 16 as if fully stated herein.

Plaintiff also notes that, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least four sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least four sub-parts here that count as individual interrogatories:

> For each statement or omission identified in Your response to Interrogatory No. 16, describe in full and complete detail [1] when You heard, read, saw, or obtained personal knowledge of the statement or omission; [2] describe and provide all contemporaneous evidence and facts that establish when You heard, read, saw, or otherwise obtained personal knowledge of the statement or omission; [3] describe whether and how You relied on the statement or omission in deciding to use Google Search or any other Google product or service, or in taking or refraining from taking any action with respect to Your data or privacy settings; and [4] describe each act You took or refrained from taking in reliance on the statement or omission. If You neither heard, read, saw, nor obtained personal knowledge of the statement or omission, please so state.

Plaintiff additionally objects to this interrogatory on the grounds that it exceeds the 25 written interrogatory limit set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure. As described above, Google's 25th interrogatory was the fourth sub-part to Interrogatory No. 10.

**INTERROGATORY NO. 18:**

For each statement or omission identified in Your response to Interrogatory No. 16, describe in full and complete detail why each statement or omission was misleading, deceptive, or false, including a full and complete description of the information necessary to render the statement or omission not misleading, deceptive, or false; and the basis for any duty, if any, Google had to provide that information.

**RESPONSE TO INTERROGATORY NO. 18:**

Plaintiff incorporates his objections to Google's Interrogatory No. 16 as if fully stated herein.

Plaintiff also notes that, based in part on how Google has improperly counted the interrogatories served by Plaintiffs, this interrogatory has at least three sub-parts that count as separate interrogatories under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs explained in correspondence with Google's counsel that Google's First Set of Interrogatories constituted at least 11 of Google's 25 interrogatories pursuant to Rule 33(a)(1) (because Interrogatory No. 1 had five sub-parts and therefore counted as five interrogatories and Interrogatory No. 2 had three sub-parts and therefore counted as three interrogatories). It appears that, for its Second Set of Interrogatories, Google has decided not to separate sub-parts using letters as it did for its First Set of Interrogatories. Regardless of how Google writes its interrogatories, Google has included at least three sub-parts here that count as individual interrogatories:

> For each statement or omission identified in Your response to Interrogatory No. 16, [1] describe in full and complete detail why each statement or omission was misleading, deceptive, or false, including [2] a full and complete description of the information necessary to render the statement or omission not misleading, deceptive, or false; and [3] the basis for any duty, if any, Google had to provide that information.

Plaintiff additionally objects to this interrogatory on the grounds that it exceeds the 25 written interrogatory limit set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure. As described above, Google's 25th interrogatory was the fourth sub-part to Interrogatory No. 10.

Dated: August 31, 2026

By: */s/ John M. Lyons*
John M. Lyons

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
Alexander Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Hirsa Amin, CA Bar No. 349993
Owen D. Ward, CA Bar No. 365817
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
brichardson@bsfllp.com
hamin@bsfllp.com
oward@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
John M. Lyons (*pro hac vice*)
James Keyte (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: (212) 446-2332
jlyons@bsfllp.com
jkeyte@bsfllp.com

**LAW OFFICES OF LINGEL H. WINTERS**
Lingel H. Winters, CA Bar No. 37759
A Professional Corporation
2900 Shasta Rd.
Berkeley, California 94708
sawmill2@aol.com

*Counsel for Plaintiffs*